# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ROBERT BLESS,** | )<br>) |
| Plaintiff, | )<br>)     13-cv-4271 |
| v. | )<br>)     Hon. John Z. Lee |
| **COOK COUNTY SHERIFF'S OFFICE; TOM DART,** in his individual capacity; **DEWATNE HOLBROOK,** in his individual capacity; **JOSEPH WAYS, SR.,** in his individual capacity; **ZELDA WHITTLER** in her individual capacity; **SHERYL COLLINS,** in her individual capacity; **EDWARD DYNER,** in his individual capacity; **ROSEMARIE NOLAN,** in her individual capacity; and the **COOK COUNTY SHERRIF'S MERIT BOARD; JAMES P. NALLY,** Chairman; **BYRON BRAZIER,** Vice Chairman; **ROBERT F. HOGAN,** Secretary; **KIM R. WIDUP,** Board Member; **BRIAN J. RIORDAN,** Board Member; **JOHN J. DALICANDRO,** Board Member; **LANCE C. TYSON,** Board Member; **JOHN R. ROSALES,** Board Member; **VINCENT T. WINTERS,** Board Member, in their individual capacities; and **COOK COUNTY,** a unit of local government, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Bless was terminated from his position as a police officer for the Cook County Sheriff's Office ("CCSO") on May 3, 2013. He subsequently sued the CCSO, seven individual CCSO employees ("Sheriff Defendants"), Sheriff Thomas Dart in his official capacity, Cook County, the Cook County Sheriff's Merit Board ("Merit Board"), and members of the Merit Board in their individual capacity ("Merit Board

1

Defendants"). Bless alleges his termination was unlawful due to racial discrimination (Count I and Count II) and political retaliation on the basis of his affiliation with the Republican Party (Count III). He also seeks administrative review of the Merit Board's final decision pursuant to Illinois law (Count IV).

Defendants move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Bless opposes dismissal and also seeks leave to file a Third Amended Complaint. For the reasons provided herein, Counts I and III are dismissed without prejudice as to the government entities and individuals sued in their official capacities. Counts I and III are dismissed with prejudice as to the Merit Board members to the extent they are sued in their individual capacities. The Court grants the motion to dismiss Count II against all parties with prejudice. The Court denies the motion to dismiss Counts I and III with regard to the Sheriff Defendants in their individual capacity. Finally, the Court denies without prejudice Bless's motion to file a Third Amended Complaint.

**I. Factual Background**

Bless is a white male and a registered Republican. 2d Am. Compl ¶¶ 5, 38. Around 1996, Bless started working for the CCSO, and he became a sworn police officer for the CCSO in 1997. *Id.* ¶¶ 37–38. Bless is also an attorney licensed to practice law in Illinois, and he practiced while serving as a police officer. *Id.* ¶ 39. In 2008, he became Commissioner for McHenry County on the Republican ticket and served in that capacity until 2012. *Id.* ¶ 40. Bless asserts that he submitted secondary employment requests to the Sheriff's Office for both his law practice and as County Commissioner, and these requests were approved by the CCSO. *Id.* ¶¶ 41–42.

In September 2008, Bless was injured on duty and took "injury on duty" status. *Id.* ¶ 43. He filed a workers compensation claim as a result of this injury. *See id.* In April 2009, while Bless was on medical leave, Defendant Rosemarie Nolan initiated a complaint against him. Nolan requested an investigation, alleging that Bless was working for McHenry County without a secondary employment application on file. *Id.* ¶ 44. In May 2009, the Sheriff Defendants attempted to bring felony charges against Bless. *Id.* ¶ 45. When the felony charges were not approved by the State's Attorney, Sheriff Defendants initiated administrative charges against Bless, seeking his termination from the CCSO. *Id.* ¶ 46. Defendant Sheryl Collins investigated the allegations against Bless around July 20, 2011, and recommended that Bless be terminated from the CCSO. *Id.* ¶ 47.

That same day, Defendants Edward Dyner and Joseph Ways approved the investigation and affirmed Collins' recommendation. *Id.* 48. On or around July 22, 25, and 26 of that year, Defendants Dewayne Holbrook, Ways, and Zelda Whittler also approved and concurred with the recommendation for Bless's termination. *Id.* ¶ 49.

In October 2011, Defendant Dart filed charges before the Merit Board, seeking Bless's termination. *Id.* ¶ 50. Dart sought termination based on allegations that Bless did not have a secondary employment request on file at the CCSO and did not have the proper authority to work as McHenry County Commissioner. *Id.* ¶ 51. Dart further alleged that Bless did not have approval for secondary employment from 2009 through November 2010, that Bless had held unauthorized secondary employment while receiving temporary checks from the Cook County Insurance Benefit Fund, and that

Bless falsely reported to investigators from the Office of Professional Review that he had a secondary employment request on file. *Id.* ¶ 51.

On May 6, 2013, the Merit Board terminated Bless. *Id.* ¶ 52. The Merit Board found that Bless was not authorized to engage in secondary employment, that he had not been given approval from 2009 through November 2010 to engage in secondary employment, and that he had falsely reported to investigator of having a secondary employment request on file. *Id.* ¶ 54.

Bless asserts that he was treated differently from other similar-situated comparators. According to Bless, two non-white officers at the CCSO were given warnings for unauthorized secondary employment but were promoted rather than terminated. *Id.* ¶ 56. One additional officer at the CCSO was found guilty of engaging in secondary employment for over nine years, but he was suspended rather than terminated. *Id.* ¶ 58. According to Bless, this officer politically supports Sheriff Dart. See *Id.* ¶ 57–58.

Bless also asserts that the CCSO has a history of political retaliation. He alleges that, because of this practice, a federal court previously appointed monitors in *Shakman v. Democratic Organization of Cook County*, No. 69 C 1343 (N.D. Ill.), otherwise known as "the *Shakman* decree," to oversee the CCSO's employment practices. *Id.* ¶ 63. Additionally, he asserts that in *Burruss v. Cook Cnty. Sheriff's Office*, No. 08 C 6621, 2013 WL 3754006 (N.D. Ill. July 15, 2013), a jury found the CCSO and one its top-ranking officials guilty of political retaliation against twenty-one plaintiffs in August 2012. *Id.* ¶¶ 64–65. Following this jury decision, the CCSO never disciplined the top-ranking official for his retaliatory acts. *Id.* ¶¶ 67. Despite this, according to Bless, none

of the Defendants have initiated investigations into political retaliation and no top officers at CCSO have been disciplined, despite the fact the CCSO claims to have a "zero tolerance" policy against political retaliation. *Id.* ¶¶ 66–69.

## II. Legal Standard

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), federal courts must accept as true all well-pleaded facts alleged in the complaint and construe all reasonable inferences in favor of the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2009) (citing *Savory v. Lyons*, 469 F. 3d 667, 670 (7th Cir. 2006)). In order to state a valid claim, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to allege "detailed factual allegations," but must plead facts that, when "'accepted as true . . . state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To determine whether a complaint meets the *Twombly* plausibility standard, the "reviewing court draw[s] on its judicial experience and common sense." *Id*. at 678. Where the factual allegations are well-pleaded, the Court assumes them to be true and determines whether those facts give rise to a plausible entitlement to relief. *Id.* at 679. A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the actions alleged. *Id.* at 678. Plausibility however "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

### III. Analysis

**A. The Merit Board Defendants Are Entitled To Absolute Immunity**

The Merit Board Defendants, sued in their individual capacity, argue that all claims against them should be dismissed pursuant to their quasi-judicial immunity from lawsuit. The Seventh Circuit applies a "functional approach" to determinations of quasi-judicial immunity. *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996). A court "look[s] to the nature of the function performed, not the identity of the actor who performed it." *Id.* "Absolute immunity protects members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge or prosecutor." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (concluding that members of an Illinois county's Board of Review, which hears complaints from taxpayers challenging their property assessments, are entitled to judicial immunity for their decisions resolving appeals) (citing *Butz v. Economou*, 438 U.S. 478, 512–13 (1978)); *see also Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) (upholding grant of judicial immunity to mayor for actions as local liquor control commissioner in closing bar).

In *Butz*, the Supreme Court identified "several characteristics of quasi-judicial functions that courts should consider when determining whether a public official is entitled to absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal." *Heyde*, 633 F.3d at

517 (citing *Butz*, 438 U.S. at 512). The Court's task is to determine whether, absent the cloak of immunity, a government decisionmaker would be compelled to "act with an excess of caution or otherwise . . . skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct." *Forrester v. White*, 484 U.S. 219, 223 (1988).

Here, when assessed against the *Butz* factors, the Court concludes that the duties performed by the members of the Merit Board are sufficiently quasi-judicial in nature to warrant absolute immunity. First, employment disputes, like other disputes that Illinois has delegated to administrative boards, are "inherently controversial and likely to result in disappointed parties and, unless checked, a multitude of lawsuits." *Heyde*, 633 F.3d at 519. It is imperative that members of the Merit Board feel free to adjudicate employment disputes within the CCSO without fear of litigation.

Second, Merit Board members are constrained by procedural safeguards controlling unconstitutional conduct. Their decisions are subject to judicial review under the provisions of the Illinois Administrative Review Law, *see* 55 Ill. Comp. Stat. § 5/3-7012, and individuals before the Merit Board are afforded a "full opportunity to be heard in his or her own defense and to produce proof in his or her defense." *Id*.

Third, the Merit Board is insulated from political influence through statutory provisions preventing one political party to claim more than three Board positions. 55 Ill. Comp. Stat. § 5/3-7002. In retort, Bless argues that the Merit Board's political safeguards are ineffective because the Sheriff appoints the Board Members. In essence, Bless's argument is that the Board functions merely as a pretext to mask the Sheriff's unlawful employment decision. But political appointment is not synonymous with

political influence. *See Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 526 (7th Cir 2001) (holding that a state election board was entitled to quasi-judicial immunity, even though the members of that board were political appointees). The salient inquiry is not how Merit Board member are appointed, but whether the appointment process renders their deliberations captive to the political process. *See id.* ("[I]f the rule were otherwise, state judges who are elected would not be entitled to absolute immunity.").

As for the fourth *Butz* factor, Bless contends that the Merit Board does not consider its own precedents. But he provides no facts to support this contention, and even if he had, the argument would fail, because judicial review of the Board's decisions provides a sufficient safeguard against such risks. *See, e.g.*, *Piecuch v. Cook County Sheriff Merit Board*, 726 N.E.2d 22, 26–27 (Ill. App. Ct. 2001) (Illinois state court applying precedent on an appeal from Merit Board decision).

Lastly, the fifth and the sixth *Butz* factors also point towards immunity. Bless was represented by counsel before the Merit Board, and the Board's decision can be appealed pursuant to 735 Ill. Comp. Stat. § 5/3-102.

For these reasons, the Court concludes that the individual members of the Merit Board fall within the zone of quasi-judicial immunity as outlined by the Supreme Court in *Butz*. Accordingly, they are protected from Plaintiff's claims under the doctrine of absolute immunity, and Defendants' motion to dismiss Counts I, II and III against the Merit Board members in their individual capacities is granted.

### B. Count I - Reverse Discrimination Under § 1983

Defendants additionally argue that Plaintiff's race discrimination allegations are insufficient to state a claim under 28 U.S.C. § 1983. "When the plaintiff alleges intentional discrimination, as here, it is clear that the same standards in general govern liability under sections 1981, 1983, and Title VII." *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987). In order to prevail on an equal protection claim under § 1983, a plaintiff must allege that "(1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009).

Defendants argue that, because this is a reverse discrimination case, the "plaintiff must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something fishy about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820–21 (7th Cir. 2006) (internal quotations omitted). But *Hague* addressed a decision on a motion for summary judgment and did not create a new pleading standard. *See Wyss v. Compact Industries, Inc.*, No. 13 C 05135, 2014 WL 960846, at *22 (N.D. Ill. Mar. 12, 2012); *Pope v. Clerk of the Circuit Court of Cook Cnty.*, No. 10 C 5115, 2011 WL 1004640, at *4 (N.D. Ill. Mar. 17, 2011). This is important, because the Supreme Court has stated that the pleading standard for employment discrimination is different from the evidentiary burden a plaintiff must meet at summary judgment or trial. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (holding that requirements for establishing prima facie claim in discrimination case does not apply at pleading stage).

The Seventh Circuit echoed this sentiment in *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008), decided in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), holding that, in an employment discrimination case, "the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1085. "Neither *Iqbal* nor *Twombly* overruled *Swierkiewicz*, and it is our duty to apply the Supreme Court's precedents unless and until the Supreme Court itself overrules them." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). With these standards in mind, the Court turns to an examination of Defendants' motions to dismiss Count I.

**1. The Individual Sheriff Defendants**

Bless has met the minimal pleading standard required to state a § 1983 claim of racial discrimination against the Sheriff Defendants. He has alleged that he suffered an adverse employment action — his termination. He also has alleged that similarly situated non-white employees did not suffer this action. These facts make his reverse discrimination claim plausible. In response, Defendants argue that Bless has merely recited a bare-bones recitation of the elements of a race discrimination claim. But Bless has provided the names of the allegedly similarly situated employees, going beyond the Seventh Circuit's pleading standard. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (Plaintiffs alleging discrimination typically are "not required to identify similarly situated comparators at the pleading stage.").

In addition, Defendants argue that Bless has not sufficiently alleged that each of the Sheriff's Defendants was personally involved in his termination. But the Second

Amended Complaint clearly asserts that Defendant Nolan initiated an investigation against Bless; Defendant Collins investigated the allegations; Defendants Dyner and Ways affirmed Collins's recommendation for termination; Defendants Holbrook, Ways, and Whittler signed off on a review of the allegations; and Defendant Dart filed the charges for termination. Bless has explained how each of the individual Sheriff's Defendants participated in a process allegedly tainted by discriminatory motives. While Bless has not alleged particular facts about the motivations of each of the Sheriff's Defendants, a plaintiff "cannot be faulted for not pleading on the basis of personal knowledge." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005).

Defendants also argue that Bless has not alleged background circumstances that demonstrate that an employer has a reason or inclination to discriminate or evidence that indicates something "fishy" about the facts of the case. *See Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). It is true that Bless will have to show something more than his single instance of racial discrimination to establish a motivation for racial hostility within the CCSO. *See, e.g.*, *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009); *Hague*, 436 F.3d at, 822 (7th Cir. 2006); *Ballance v. City of Springfield*, 424 F.3d 614, 618 (7th Cir. 2005); *Mills v. Health Care Service Corp.*, 171 F.3d 450, 455 (7th Cir. 1999). But, as noted, such a deficiency does not doom his case at the pleading stage. *Wyss*, 2014 WL 960846 at *2.

Bless has sufficiently stated a plausible reverse discrimination claim against the individual Sheriff Defendants. Consequently, Defendants' motion to dismiss Count I against the Sheriff Defendants is denied.

### 2. The Government Entities

Bless also brings his reverse discrimination claim against various government entities, alleging that Sheriff Dart in his official capacity, the CCSO, the Merit Board, and Cook County all are liable for race discrimination. To allege that a government entity is liable for unconstitutional conduct under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), "a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [public entity], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2010). Here, Bless does not allege that an express policy of reverse discrimination existed at the CCSO and instead tries to base a *Monell* claim on the latter two theories.

With respect to the existence of a "widespread custom or practice," the Seventh Circuit has not adopted any bright line rules in defining that term, except that the allegedly unconstitutional conduct "must be more than one instance." *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010). Bless has not met this minimal standard. Bless does not put forth any instance of racial discrimination other than his own termination. Any additional allegations of race discrimination in his Second Amended Complaint are vague and conclusory. "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

The only option remaining for Bless to allege municipal liability is to argue that a person with "final policymaking authority" has caused his constitutional injury. "In order

to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Killinger*, 389 F.3d at 771. Courts identify those officials with final policymaking authority by "[r]eviewing the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'" *Id.*

Under Illinois law, the Cook County Merit Board has final policymaking authority with respect to employment decisions in the CCSO. *See* 55 Ill. Comp. Stat. § 5/3-7012. Unless Bless can point to a state or municipal law that has delegated this authority to one of the other governmental defendants, no other individual within the CCSO would qualify. *See Graham v. Vill. of Dolton*, No. 10 C 1562, 2011 WL 43026, at *7 (N.D. Ill. Jan. 6, 2011).

This leaves only the Merit Board as a potential policymaker liable for Bless's constitutional deprivation. However, Bless has not explained how the Merit Board, as an adjudicatory board and not his employer, could be liable for his employment deprivation. *See Averhart v. Sheriff of Cook Cty.*, 752 F.3d 1104, 1106 (7th Cir. 2014) (affirming a district court conclusion that Cook County jail guard did not have a discrimination claim against Merit Board because "it was an adjudicatory body rather than her employer"). It should be noted that dismissing the *Monell* claim against the Merit Board does not leave Bless without legal recourse; he can seek review of its decisions under state law. *See, e.g.*, *Walsh v. Board of Fire & Police Commissioners*, 449 N.E.2d 115 (Ill. 1983).

Because Bless has failed to allege facts allowing the Court to infer an official policy of race discrimination, an unofficial practice of race discrimination, or a decision by a policymaker to engage in race discrimination, he has failed to state a *Monell* claim

13

against the governmental defendants. As such, the Court grants the Defendants' motion to dismiss Count I against Sheriff Dart in his official capacity, the CCSO, the Merit Board, and Cook County.

### C. Count II - Reverse Discrimination Under § 1981

Defendants argue that Count II should be dismissed because the Seventh Circuit recently held that § 1981 does not create a private right of action against state actors. Defendants are correct. Allegations of §1981 violations must be brought against state actors through § 1983. *Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 667 (7th Cir. 2014). Because Bless has only sued state actors and §1981 does not create a private right of action against them, the Court grants Defendants' motion to dismiss Count II.

### D. Count III – First Amendment Retaliation Under § 1983

Turning to Bless's § 1983 claim predicated upon the First Amendment, Bless alleges that Defendants targeted him due to his role as a Republican County Commissioner. To state a First Amendment retaliation claim, the plaintiff must plausibly allege that "(1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to retaliate." *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 622 (7th Cir. 2012).

#### 1. The Individual Sheriff Defendants

First, Bless alleges that he was terminated because he was holding office as a Republican. Generally a "plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection" *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977). But,

14

construing the allegations in Plaintiff's favor, Bless is not claiming that he was fired because he merely held a public office, but because he was a *Republican* holding a public office. First Amendment protection is triggered if "a state official wish[es] to discourage [a] candidacy in particular." *Id.* It was Bless's viewpoint as a *Republican* Commissioner that is at the core of his retaliation claim. A person's interest in running for office and "thereby expressing his political views without interference from government officials who wished to discourage the expression of those views lies at the core of the values protected by the First Amendment." *Id.* at 829. Thus Bless has satisfied the first prong of a political retaliation claim.

Bless clearly has met the second prong: his termination constitutes an adverse action. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) ("[B]ecause both plaintiffs were terminated, it is undisputed that each suffered a deprivation likely to deter the exercise of free expression.").

Turning to the third prong, the burden of establishing motivation on retaliation claims is "divided between the parties." *See Surita v. Hyde*, 665 F.3d 860, 874 (7th Cir. 2011). First, the plaintiff must demonstrate that the protected speech was a motivating factor, or sufficient condition, of the dismissal. *See Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) ("A 'motivating factor,' as the term is used in the cases, is a sufficient condition, but never a necessary one[.]"). Next, the burden shifts to the defendant to show that it would have taken the same action whether or not the plaintiff had engaged in the speech, in other words, that the speech was not a necessary condition or but-for cause of the dismissal. *Id.* at 979. Here, at the pleading stage, the Court need only determine

whether the plaintiff has alleged enough facts to meet his burden. *See Santana,* 679 F.3d at 622.

Bless's Second Amended Complaint does just that. Bless alleges that he held public office and that he submitted a secondary employment form informing the Sheriff's Office about his position. He also alleges that a similarly situated employee with political views that aligned with Sheriff Dart was not terminated. For their part, Defendants argue that Bless must specifically allege that the Defendants had knowledge that he was a Republican. It is quite possible that the Defendants knew nothing of Bless's secondary employment, or if they did, that they did not know that he was a Republican. But it also is possible that the employment form revealed Bless's affiliation with the Republican Party or that Bless's position was widely known throughout the office. At this stage, it is not clear, and Bless receives the benefit of the inference. The particulars regarding who knew what and when are "better left for decision at the summary judgment stage on a more developed factual record." *Zimny v. Cook Cnty. Sheriff's Office*, 2014 WL 4555302, at *4 (N.D. Ill. Sept. 15, 2014) (finding the court could infer knowledge of political expression from allegations that an employee engaged in political campaigning) (reconsidered on other grounds).

For now, Bless needs only to give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010). Bless has presented a plausible story—that his public position as a Republican prompted retaliation by individuals in a government office headed by a member of the opposing political party. Bless has supported this story by pointing to a similarly situated employee of a different political persuasion who was not terminated.

16

Thus, he has stated a political retaliation claim under § 1983, and the Defendants' motion to dismiss Count III against the Sheriff Defendants is denied.

### 2. The Government Entities

Bless also alleges that Sheriff Dart in his official capacity, the CCSO, the Merit Board, and Cook County are liable for political retaliation. Here again, Bless must allege, under *Monell*, that the political retaliation was the result of an express policy, a widespread practice, or a final decision of a person with policymaking authority. *Wragg,* 604 F.3d at 467–68. Bless has not alleged that the CCSO has an express policy of political retaliation. Just as in the context of race discrimination, a plaintiff must allege "more than one instance" to establish a widespread practice of political retaliation. *See Thomas*, 604 F.3d at 303. The plaintiff must demonstrate that there is a policy at issue rather than just a random event. *Id.* "This may take the form of an implicit policy or a gap in expressed policies or a series of violations[.]" *Id.* (internal citations omitted).

There are two avenues by which Bless tries to allege a widespread practice. The first is by alleging multiple instances of retaliation. In addition to comparing his own termination with one another similarly situated employee, Bless points to the *Shakman* and *Burruss* cases to establish the existence of widespread retaliation within the CCSO. But the Court cannot infer solely from the existence of the *Shakman* decree that the CCSO violated the terms of that decree for the purpose of this case. Additional allegations are necessary. *See Coleman v. Cook Cnty.*, No. 10 C 2388, 2011 WL 2647891, *15 (N.D. Ill. June 22, 2011) (finding the plaintiff did not "offer any facts that support the conclusion that the wrongdoing he has alleged is the product of County custom or practice" even when the office in question was under a *Shakman* decree.)

Plaintiff's reliance on *Burress* is similarly misplaced. In that case, one employee was found liable for retaliation based on his decision to disband a unit of the Cook County Jail that had supported Dart's election opponent. *Burruss v. Cook Cnty. Sheriff's Office*, No. 08 C 6621, 2013 WL 3754006, at *1 (N.D. Ill. July 15, 2013). But the actions of a single employee in a separate division of the CCSO cannot give rise to an inference of a widespread practice. *See Thomas*, 604 F.3d at 303 (noting that an "isolated act of an individual employee . . . would be insufficient to establish a widespread custom or practice"). These few isolated incidents of retaliation alone do not reach the level of an implicit policy, practice, or usage necessary under *Monell*.

The second avenue by which Bless attempts to establish a widespread practice is by arguing that there is a gap in expressed policies at the CCSO. The express policy at issue is the CCSO's "zero tolerance" policy for political retaliation. Bless has alleged that the office has failed to reprimand the employee found liable in *Burruss* in violation of this zero tolerance policy. But, again, a single deviation from a policy does not constitute a large enough gap to impose *Monell* liability. The particular way the CCSO chose to approach the fallout from the *Burruss* decision does not imply that retaliation is "permanent" at the CCSO or is "well settled as to constitute a custom or usage with the force of law." *Wragg,* 604 F.3d at 467–68.

This leaves only the "final policymaker" route towards municipal liability. Here too the analysis discussed above in the context of racial discrimination claims controls. The Illinois legislature has delegated final policymaking authority over employment decisions in the CCSO to the Merit Board. *See* 55 Ill. Comp. Stat. § 5/3-7012. The proper avenue for a legal remedy against that Board is a state law administrative review

claim. Bless cannot sue the Merit Board for retaliation because he was never its employee. *Averhart*, 752 F.3d at 1106. Thus Bless has failed to sufficiently alleged that a government entity is liable for his constitutional deprivation under *Monell*.

In sum, the Court dismisses without prejudice Count III against Sheriff Dart in his official capacity, the CCSO, and the Merit Board. Because Bless has not put forth a viable claim against any governmental body, Cook County is not a necessary party, and all counts against it also are dismissed. *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 847–48 (7th Cir. 2003).

### E. Plaintiff's Motion to File a Third Amended Complaint

Bless seeks leave to file a Third Amended Complaint to add a new count based on a Title VII race discrimination claim. Given that the scope of any amended complaint would be limited by this order, the Court denies Bless' motion to file a Third Amendment Complaint without prejudice. Bless may file a renewed motion for leave to file a third amended complaint consistent with this order within 21 days of the entry of this order. He may seek to add the Title VII claim in the renewed motion.

## IV. Conclusion

For the reasons provided herein, the Court grants the Merit Board Defendants' motion to dismiss [84]. The Court grants the Merit Board Defendants' motion to dismiss the Amended Complaint against the individual Merit Board Defendants with prejudice. Defendants Nally, Brazier, Hogan, Widup, Rirodan, Dalicandro, Tyson, Rosales, and Winters are hereby terminated as defendants in this case. The Court grants the motion to dismiss Count II against the Merit Board with prejudice. The Court grants the motion to dismiss Counts I and III against the Merit Board without prejudice.

The Court grants in part and denies in part Sheriff Defendants' motions to dismiss [91]. The Court grants the Sheriff Defendants' motion to dismiss Count II against all parties with prejudice. The Court also grants the Sheriff Defendants' motion to dismiss Counts I and III against the government entities and Sheriff Dart in his official capacity without prejudice. The Court denies the Sheriff Defendants' motion to dismiss Counts I and III against the individual Sheriff Defendants.

Counts I and III against the Sheriff Defendants sued in their individual capacity and Count IV for administrative review of the Merit Board's decision remain.

The Court denies Plaintiff's motion to file a Third Amended Complaint [98] without prejudice. Plaintiff may file a renewed motion for leave to file a third amended complaint consistent with this order within 21 days of its entry.

**SO ORDERED**                    **ENTER:** 2/27/15

_____
**JOHN Z. LEE**
**United States District Judge**