IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BLESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 13-cv-4271 |
| v. | ) |
| | ) Hon. John Z. Lee |
| COOK COUNTY SHERIFF'S OFFICE, | ) |
| TOM DART in his official and individual | ) |
| capacity; DEWAYNE HOLBROOK; | ) |
| JOSEPH WAYS, SR.; ZELDA WITTLER, | ) |
| SHERYL COLLINS; EDWARD DYNER; | ) |
| HENRY HEMPHILL; ROSEMARIE | ) |
| NOLAN; COOK COUNTY SHERIFF'S | ) |
| MERIT COMMISSION; COOK COUNTY, | ) |
| a unit of local government, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Bless alleges that he was fired from his job as a Cook County police officer because he is white and because he is a Republican. In his Third Amended Complaint, he brings claims against Cook County Sheriff Tom Dart in his individual and official capacity, several employees of the Sheriff's Office, the Sheriff's Office itself,[1] and the Sheriff's Merit Board for violations of the First and Fourteenth Amendments to the Constitution and Title VII of the Civil Rights Act of 1964. He also brings a state law claim for review of the administrative proceeding that permitted his dismissal. The Sheriff's Office, Defendant Henry Hemphill, and the Merit Board have moved to dismiss some of the counts in Bless's complaint for failure to state a claim upon which relief can

---

[1] Suing the Sheriff in his official capacity is the same as suing the Sheriff's Office, so suing both is generally considered redundant. But the parties do not raise this technical issue at this time.

1

be granted. For the reasons given below, the Court grants the Merit Board's motion but denies the motion of the Sheriff's Office and Hemphill.

## I. Factual & Procedural Background

The Court presumes familiarity with its order of February 27, 2015, and will provide only a truncated factual and procedural summary here. Additional details are provided in the analysis section where necessary.

Bless, a white male, became a sworn police officer in the Cook County Sheriff's Office in 1997. 3d. Am. Compl. ¶¶ 2, 29–30. He is also an attorney, and he practiced law while serving as a police officer. *Id.* ¶ 31, 33. Additionally, he served as a Commissioner for McHenry County from 2008 to 2012, an office he held as a Republican. *Id.* ¶ 32. Bless asserts that he submitted secondary employment requests to the Sheriff's Office for both his law practice and his position as County Commissioner and that these requests were approved by the CCSO. *Id.* ¶¶ 33–34.

Bless was injured while on duty as a police officer in September 2008. *Id.* ¶ 35. He took "injury on duty" status and filed a workers' compensation claim. *See id.* While he was on medical leave, the Cook County Sheriff's Office began the process of terminating Bless's employment as a police officer. An investigation into issues surrounding his secondary employment and receipt of disability checks was initiated, and ultimately Sheriff Tom Dart asked the Cook County State's Attorney to bring unspecified felony charges against Bless.

The State's Attorney declined to charge Bless, and in October 2011, Dart filed administrative charges against him with the Cook County Sheriff's Merit Board, requesting termination of his employment. Among other charges, Bless was accused of

not having proper permission to engage in secondary employment during certain periods of time, not having permission to do so while receiving disability checks, and lying to investigators by saying that he had submitted all necessary requests to engage in secondary employment. *Id.* ¶ 43. In May 2013, the Merit Board sustained the charges against him, and Bless was fired. *Id.* ¶ 44.

According to Bless, the charges against him were unfounded. All of the defendants acted against him, he asserts, because of his race and political affiliation. He also asserts that the Sheriff's Office and the Merit Board have a policy and practice of firing people for these reasons.

Following his firing, Bless filed this lawsuit. In his second amended complaint, he brought claims under 42 U.S.C. § 1983 against the Sheriff's Office, individuals working in the Sheriff's Office, members of the Merit Board, and the Merit Board itself for race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and for political retaliation in violation of the First Amendment, as incorporated by the Fourteenth. He also brought a claim under 42 U.S.C. § 1981 and a supplemental state-law claim for administrative review of the Merit Board's decision.

In response, Defendants asked the Court to dismiss certain counts in Bless's second amended complaint, and the Court granted their motions in part. *See Bless v. Cook Cnty. Sheriff's Office*, No. 13-CV-4271, 2015 WL 890370, at *1 (N.D. Ill. Feb. 27, 2015) The Court dismissed Bless's § 1981 claim with prejudice because none of the defendants could be liable under that statute and dismissed the claims against the individual members of the Merit Board with prejudice because they are entitled to absolute quasi-judicial immunity. *Id.* at **3–4, 6. The Court also dismissed without

prejudice the § 1983 claims against the Merit Board itself and the Sheriff's Office on the basis that Bless's allegations were insufficient to show a policy of discrimination or retaliation as required for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). *Id.* *5–*6. But the Court declined to dismiss Bless's § 1983 claims against the individual Sheriff's Office defendants, concluding that he had plausibly alleged that each individual played a role in his termination and was motivated by his race and political affiliation. *Id.* at *5.

In his third amended complaint, Bless has added a new individual Sheriff's Office defendant to his § 1983 claims and a race discrimination claim under Title VII against the Sheriff's Office itself. He has also repleaded *Monell* claims against the Sheriff's Office and the Merit Board.

## II. Legal Standard

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), federal courts must accept as true all well-pleaded facts alleged in the complaint and give all reasonable inferences to the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2009) (citing *Savory v. Lyons*, 469 F. 3d 667, 670 (7th Cir. 2006)). In order to state a valid claim, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to allege "detailed factual allegations," but must plead facts that, when "'accepted as true . . . state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To determine whether a complaint meets the *Twombly* plausibility standard, the "reviewing court draw[s] on its judicial experience and common sense." *Id.* at 678. Where the factual allegations are well-pleaded, the Court assumes them to be true and determines whether those facts give rise to a plausible entitlement to relief. *Id.* at 679. A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the actions alleged. *Id.* at 678. Plausibility, however, "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

### III. Analysis

Defendants move to dismiss Bless's § 1983 claims against Hemphill and his Title VII claim against the Sheriff's Office as being untimely. The Sheriff's Office also moves to dismiss Bless's *Monell* claims against it for failure to state a claim, and the Merit Board, in a separate motion, moves to dismiss Bless's *Monell* claims on the same ground.

**A. Section 1983 Claims Against Hemphill**

Bless alleges for the first time in his third amended complaint that Hemphill, an investigator for the Sheriff's Office (in the Office of Professional Regulation), was involved in the purportedly discriminatory investigation that led to his firing. 3d. Am. Compl. ¶ 39. He claims that Hemphill, like the other individual Sheriff's Office defendants, violated his Fourteenth Amendment right to equal protection of the laws and his First Amendment right to be free from retaliation for his political views.

The Court concluded in the order of February 27, 2015, that Bless's allegations against the individual Sheriff's Office defendants then named—including Hemphill's

fellow investigator, Collins—are sufficient to state claims under § 1983 for violations of the Fourteenth and First Amendments. *See Bless v. Cook Cty. Sheriff's Office*, No. 13-CV-4271, 2015 WL 890370, at *5, *6–*7 (N.D. Ill. Feb. 27, 2015). The allegations against Hemphill fall into the same category, and Hemphill does not challenge the allegations' sufficiency at this time.

Hemphill instead argues that the claims against him are untimely. The statute of limitations for claims brought under § 1983 is taken from state law, and in Illinois the limitations period is two years. *O'Gorman v. City of Chi.*, 777 F.3d 885, 889 (7th Cir. 2015). Although Bless added Hemphill as a defendant on April 4, 2015—which was within two years of the date he was fired—Hemphill contends that Bless needed to sue him within two years of the conclusion of Hemphill's investigation on October 6, 2011 (which is also the day Sheriff Dart brought charges against Bless before the Merit Board). *See* Sheriff's Mem. Supp. at 7. In support of his argument, Hemphill relies primarily on *Nance v. Rothwell*, No. 09 C 7733, 2011 WL 1770306, at *5 (N.D. Ill. May 9, 2011), a case in which the district court dismissed § 1983 claims against certain defendants because the claims against those defendants accrued more than two years before the plaintiff filed suit.

In response, Bless correctly points out that his race-discrimination claim could not have accrued before he had suffered an "adverse employment action" and that, similarly, his retaliation claim could not accrue until he suffered an act of retaliation likely to deter the exercise of his First Amendment rights. *See Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004) (intentional discrimination claims brought under § 1983 are subject to the same analysis as courts apply to discrimination claims brought under Title VII);

6

*Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (plaintiff must identify a specific "adverse employment action" that was taken for discriminatory reasons to state a Title VII claim); *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 622 (7th Cir. 2012) (retaliation claims require plausible allegations that the plaintiff "engaged in activity protected by the First Amendment" and "suffered an adverse action that would likely deter future First Amendment activity" and that "the First Amendment activity was at least a motivating factor in the defendants' decision to retaliate" (internal quotation marks omitted)). According to Bless, his firing was the adverse/retaliatory act that caused his claims to accrue, starting the limitations period. Resp. Br. 9–13. Indeed, wrongful discharge claims accrue on the date the plaintiff learns of a *final* decision to terminate his employment. *See Draper v. Martin*, 664 F.3d 1110, 1115 (7th Cir. 2011); *Sellars v. Perry*, 80 F.3d 243, 246 (7th Cir. 1996).

Hemphill—changing course—replies that the relevant adverse/retaliatory act that started the limitations clock was actually Bless's being "de-deputized" pending his hearing before the Merit Board. *See* Sheriff's Reply Br. at 10. In support, Hemphill attaches to his reply brief a document that shows Bless was de-deputized and relieved of his law enforcement powers on August 2, 2011, which is even earlier than Hemphill's investigation is supposed to have concluded. *See* Sheriff's Reply Br., Ex. A. Hemphill points out that the Seventh Circuit has found actions short of firing to be sufficiently adverse to satisfy the adverse-action element of a discrimination claim, *see, e.g.*, *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (transfer to night shift was adverse action), and reasons that any adverse action taken against Bless triggered the limitations period. Hemphill also points out that the limitations period does not begin to

run when the consequences of an adverse action "become painful," citing *Kuemmerlein v. Bd. of Educ. of Madison Metro. Sch. Dist.*, 894 F.2d 257, 260 (7th Cir. 1990), in which the Seventh Circuit concluded that teachers' wrongful discharge claims accrued when they received layoff notices, not when the next school year actually began.

The Court is unpersuaded by Hemphill's arguments. Dismissal at the pleadings stage on grounds of untimeliness is appropriate only if the complaint and attached documents leave no doubt that the claim is untimely. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Here, the adverse/retaliatory act that Bless relies upon is his firing. His complaint does not even mention his demotion from deputy status.

Even if the Court were to consider the document Hemphill attached to his brief—which it cannot do at the pleading stage, *see Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996)—Bless's claim still would not be clearly untimely. His firing was a discrete adverse action regardless of the earlier de-deputization, and his firing was no less an act of retaliation because it be subsequent to other retaliatory acts. Nor can his firing be considered a mere downstream effect of the earlier decision to de-deputize him à la *Kuemmerlein*. Whether Hemphill can ultimately be held responsible for Bless's firing is uncertain, but that question raises factual issues of intent and causation that are more appropriately addressed after discovery.

**B. Title VII Claim**

The Sheriff's Office argues that Bless's Title VII claim is untimely because he did not file a charge with the Equal Employment Opportunity Commission within 300 days of the adverse employment action the Office believes started the limitations period running. *See* 42 U.S.C. § 2000e–5(e)(1) (requiring that EEOC charges be filed "within

three hundred days after the alleged unlawful employment practice occurred"). Bless disagrees, and the disagreement lies in the triggering event. The Sheriffs' Office starts counting on the day that the Sheriff filed administrative charges against Bless. *See* Sheriff's MTD at 9–11. On the other hand, Bless starts counting on the day that he was fired. *See* 3d. Am. Compl. ¶22; Resp. Br. at 13.

The argument advanced by the Sheriff's Office suffers from the same deficiency as Hemphill's. The adverse employment action that forms the basis of Bless's claim is his termination. Thus the claim appears timely at this point and survives the motion to dismiss.[2]

### C. *Monell* Claims

As explained, Bless has stated viable claims under § 1983 against the individual Sheriff's Office defendants for race discrimination and political retaliation in violation of Fourteenth and First Amendments. In his third amended complaint, as in his second, Bless seeks also to hold two government entities liable for the alleged discrimination and retaliation. To hold a government entity liable for a constitutional violation, it is not enough that an individual acting for the entity acted unconstitutionally. Rather, under *Monell*, "a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [public entity], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2010).

---

[2] At times, the Sheriff's Office seems to be arguing that the Merit Board's determination to fire Bless was an intervening cause that cuts off any potential liability for the Sheriff's Office, *see* Sheriff's Mem. Supp. at 9, but this is not at all clear based upon the allegations in Bless's complaint.

Bless does not allege that an express policy of race discrimination or political retaliation was in place at the Sheriff's Office or within the Merit Board. He instead contends that both entities have a "widespread practice" of race discrimination and political retaliation and that his firing was the act of final policymakers who were motivated to violate his rights.

**1. The Merit Board**

The Court previously dismissed Bless's *Monell* claims against the Merit Board on the ground that the Board, because it was not his employer, could not be liable for his firing. *Bless v. Cook Cnty. Sheriff's Office*, No. 13-CV-4271, 2015 WL 890370, at *6, *8 (N.D. Ill. Feb. 27, 2015). This statement requires some clarification because, as the Merit Board itself acknowledges, claims under § 1983 do not require an employer/employee relationship. *See* Board's Reply Br. at 1. A more precise explanation is that a plaintiff who brings a § 1983 claim concerning loss of employment against a defendant other than the plaintiff's former employer bears the additional burden of explaining how the non-employer caused the loss of employment. And when that § 1983 claim is a *Monell* claim, the plaintiff must also explain how the non-employer defendant acted pursuant to an unconstitutional policy.

In his third amended complaint, Bless alleges generally that Merit Board did not terminate the employment of other officers who Bless contends were similarly situated to him but outside his protected class. 3d. Am. Compl. ¶¶ 86–87. He also alleges generally that the Board has a pattern or practice of firing people because of their race or political affiliation. *Id.* ¶¶ 90–91. (Bless makes more specific allegations of being treated

differently than others, *see id.* ¶¶ 48–53, 85, but those allegations do not seem to involve the Merit Board.)

The Merit Board argues that Bless's *Monell* claims against it should be dismissed once more because (1) the Board's role in his firing was merely as an adjudicative body considering the evidence before it; (2) the Board is a separate entity from the Sheriff's Office that cannot be held liable for the Sheriff's policies; and (3) Bless's allegations of discrimination and retaliation are not plausible. Board's Mem. Supp. at 3–5.

Whether the Merit Board—which formally goes by the name "Cook County Sheriff's Merit Board"—is as separate from the Sheriff's Office as it contends is far from certain. Although the Board was created by statute and not by the Sheriff's Office, the Sheriff appoints its members (subject to approval by the "county board"). *See* 55 Ill. Comp. Stat. 5/3-7002. Moreover, the Board's only apparent purpose is to create employment policies and make employment decisions *for* the Sheriff's Office, *see id., et seq.*, and some of this authority is shared with the Sheriff, *see id.* §§ 5/3-7008–09 (Sheriff decides who is hired and promoted from among candidates previously approved by the Board), § 5/3-7011 (Sheriff can suspend employees for up to 30 days without Board approval); § 5/3-7012 (Sheriff brings charges for termination to the Board). At times the Merit Board has even denied that it is a suable separate legal entity (though it does not do so in this case). *See, e.g., Tate v. Cook Cnty. Sheriff's Merit Bd.*, No. 06 C 4620, 2007 WL 2962785, at *1–*2 (N.D. Ill. Oct. 4, 2007); *Shannon v. Cook Cnty. Sheriff's Merit Bd.*, No. 97 C 6910, 1998 WL 171782, at *4 (N.D. Ill. Apr. 10, 1998); *Mayes v. Elrod*, 470 F.Supp. 1188, 1192 (N.D. Ill. 1979). And at least one Illinois court has declared that the Merit Board "is an agency of a unit of local government, specifically of the Cook

County Sheriff." *See Roman v. Cook Cty. Sheriff's Merit Bd.*, 17 N.E.3d 130, 155 (Ill. App. Ct. 2014).

The Court concludes, however, that whether the Merit Board is a unit of the Sheriff's Office does not determine whether the Board itself can be liable to Bless under *Monell*. The reason for this conclusion is that *Monell* claims are about policies, and the policies relevant to Bless's claims are the employment policies of the Sheriff's Office. This is not to say that the Board is irrelevant to Bless's *Monell* claims; to the contrary, if the Merit Board is the final policymaker for the Sheriff's Office on employment issues, those employment policies belong to the Sheriff's Office regardless of whether the Merit Board has a separate legal existence. And if those policies established by the Merit Board are unconstitutional, the Sheriff's Office is potentially liable under *Monell*. The Merit Board itself would not be liable for those policies under *Monell* because a *Monell* claim is directed at the entity with the unconstitutional policy—here, the Sheriff's Office.

Because the Court concludes that the policies relevant to Bless's *Monell* claims are the employment policies of the Sheriff's Office, the Merit Board's motion to dismiss is granted. The Board remains a defendant for Bless's administrative review claim, and the policymaking activities of the Board remain relevant to Bless's *Monell* claims against the Sheriff's Office.

### 2. The Sheriff's Office

Before analyzing each of Bless's two *Monell* claims against the Sheriff's Office, the Court will briefly address an argument that applies equally to both claims (and in fact applies to Bless's non-*Monell* claims as well). Defendants contend that Bless's allegations of discrimination and retaliation are implausible under *Iqbal* because,

according to the Sheriff's Office, Bless's purportedly unauthorized secondary employment is an "obvious legal alternative explanation" for his firing, the sort of alternative explanation described in *McCauley v. City of Chicago*, 671 F.3d 611, 619 (7th Cir. 2011). In *McCauley*, the Seventh Circuit held that Chicago's alleged failure to create a special policy for police protection for domestic violence victims did not state a *Monell* sex-discrimination claim because the lack of such a policy, without more, suggested only that the city has limited police resources. 671 F.3d at 619.

Here, the Sheriff's Office's argument is a nonstarter. Even if the Court were permitted at the pleading stage to consider evidence that the Sheriff's Office attaches to its brief—a transcript of Hemphill's testimony before the Merit Board about Bless's unauthorized secondary employment—the Court could not assume that Hemphill's testimony was accurate and the true reason Bless was fired. Almost no claim from a fired employee would survive the pleading stage if *Iqbal* meant that courts were to assume the truth of defendants' explanations for the employee's firing. The novel claim at issue in *McCauley* is not analogous to Bless's claims, which are "straightforward" claims of the sort distinguished by *McCauley. See id.* at 616–19.

### a. Race Discrimination Claim

Turning to the individual claims, Bless first attempts to state a *Monell* race-discrimination claim by contending that the Sheriff's Office has a "widespread practice" of race discrimination that amounts to a policy. The Sheriff's Office seeks dismissal, arguing that Bless identifies too few instances of race discrimination to plausibly allege a widespread practice. The Seventh Circuit has not adopted any "bright-line rules" about how frequently unconstitutional conduct must occur in order to constitute a widespread

13

practice, but it has held that "even three" instances are not enough. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

The Court agrees that Bless's attempt to premise his race-discrimination claim on a widespread practice must be rejected. Just as was true of his previous complaint, his current complaint does "not put forth any instance of racial discrimination other than his own termination." *Bless v. Cook Cty. Sheriff's Office*, No. 13-CV-4271, 2015 WL 890370, at *5 (N.D. Ill. Feb. 27, 2015). He gives examples of non-white employees who engaged in secondary employment but were not fired, *see* 3d. Am. Compl. ¶¶ 84–86, but those allegations serve only to bolster the claim that he faced race discrimination himself; they do not indicate a widespread practice.

Bless's remaining path for stating a *Monell* claim is to plausibly allege that someone with "final policymaking authority" for the Sheriff's Office caused his constitutional injury. This is because even a single unconstitutional act by a final policymaker can be enough for *Monell* liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly"); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009).

Whether an official is a final policymaker is a question of state law, and courts rather than juries are tasked with making the determination. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2724, 105 L. Ed. 2d 598 (1989) ("As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit

is itself a legal question to be resolved by the trial judge before the case is submitted to the jury."); *McGee v. Bauer*, 956 F.2d 730, 733 (7th Cir. 1992) ("[W]hether a local official is a policymaker is a question of law to be decided by the trial judge before the case is submitted to a jury."). To identify final policymakers, courts review "the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'" *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (quoting *Jett*, 491 U.S. at 737).

Final policymakers "possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992). For a policymaker's single unconstitutional act to create liability under *Monell*, the unconstitutional act must have been taken within the realm of the policymaker's actual policymaking authority. *Valentino*, 575 F.3d at 675. As explained, the relevant realm of authority in this case is the power to make policies governing the termination of Sheriff's Office employees.

In his third amended complaint, Bless labels most of the individual defendants from the Sheriff's Office as final policymakers, generally without explanation. *See* 3d. Am. Compl. ¶¶ 10, 12, 14, 16, 18, 22, 25. In retort, the Sheriff's Office argues that the Merit Board is the final policymaker for the Sheriff's Office on employment issues and contends that the Sheriff's Office cannot be liable for policies set by the Merit Board. Sheriff's Mem. Supp. at 12–13.

Previously, the Court concluded that the Merit Board was the relevant final policymaker for the Sheriff's Office. *See Bless v. Cook Cnty. Sheriff's Office*, No. 13-CV-

4271, 2015 WL 890370, at *6 (N.D. Ill. Feb. 27, 2015). The Court remains persuaded that this is the case. The Board has final say over who is fired. *See* 55 Ill. Comp. Stat. § 5/3-7012. And, although being "the *decisionmaker* on hiring/firing decisions . . . does not necessarily make [that official] the *policymaker* on those issues," *see Valentino*, 575 F.3d at 675 (emphasis in original), the Merit Board also has the authority to set employment policies for the Sheriff's Office, *see* 55 Ill. Comp. Stat. § 5/3-7006.

It does not follow, however, that the Merit Board's status as final policymaker for the Sheriff's Office shields the Office from liability for those policies. Rather, the Court sees no reason why the Office would not be liable under *Monell* for any unconstitutional policy the Board establishes for it.

Accordingly, the Court concludes that Bless has stated a race-discrimination claim under *Monell* against the Sheriff's Office. He has attributed his firing to a final policymaker for the Sheriff's Office—the Sheriff's Merit Board—and he has plausibly alleged that this policymaker fired him because of his race.[3] The evidence ultimately may show that Bless's firing did not have an unconstitutional motivation, but his *Monell* race

---

[3] Bless's allegations that the Board treated him less favorably because of his race are not extensive. He gives the circumstances of his firing and alleges simply that the Board "did not terminate similarly situated non-White officers." 3d Am. Compl. ¶ 86. But a plaintiff need not say even this much in his complaint to state a claim of employment discrimination. *See Carlson v. CSX Transp.*, Inc., 758 F.3d 819, 827 (7th Cir. 2014) (explaining that plaintiffs in employment discrimination cases are not even "required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination"). And if the Board is indeed the relevant final policymaker for the Sheriff's Office, a single instance of the Board unconstitutionally discriminating could give rise to *Monell* liability for the Office. *See Pembaur*, 475 at 480–81 (explaining that a municipality can be liable for a final policymaker's action even if "taken only once."

discrimination claim can proceed on the theory that a final policymaker decided to terminate his employment because of his race.[4]

### b. Retaliation Claim

The Court concluded in the February 27, 2015, order that Bless had not stated a *Monell* political-retaliation claim based on a widespread policy or practice because he had not identified a sufficient number of recent examples of political retaliation. *See Bless v. Cook Cnty. Sheriff's Office*, No. 13-CV-4271, 2015 WL 890370, at *8 (N.D. Ill. Feb. 27, 2015). As already explained, no precise number of unconstitutional acts is needed to establish a widespread practice, but even three is not enough. *Thomas*, 604 F.3d at 303. In his third amended complaint, Bless has added allegations about at least six specific, recent examples of employees who faced adverse employment actions that Bless contends were politically motivated. *See* 3d. Am. Compl. ¶¶ 59–60 (Elleo Greene, Marlon Jones, Luis Santoyo in 2010), ¶¶ 61–63 (Robert Maxwell in 2008); ¶¶ 64–66 (Percy Taylor in 2011); ¶¶ 67–68 (Tamara Wuerffel in 2013). The Court concludes that these examples, combined with Bless's allegations that also appeared in his second amended complaint, are sufficient at the pleading stage to plausibly allege a widespread practice.

---

[4] Discovery could reveal that Sheriff Dart himself is the relevant final policymaker for the purposes of this claim. Dart decides which employees to bring charges against, *see* 55 Ill. Comp. Stat. § 5/3–7012, and Bless alleges that Dart actually controls the Board's decisions by abusing his authority to appoint Board members. 3d. Am. Compl. ¶¶ 73–75. The Sheriff also plays a role in setting policy by issuing "General Orders," the violation of which can be grounds for termination. *See Austin v. Dart*, 2012 IL App (1st) 113684-U, **3–4 (Ill. App. Ct. Nov. 27, 2012). However, considering the Board's statutory authority as well as the allegations in the complaint (which must be accepted as true), it appears that the Board is the relevant final policymaker for the Sheriff's Office for the reasons discussed.

## IV. Conclusion

For the reasons provided herein, the Court grants the Merit Board's motion to dismiss [131]. The Court denies the motion to dismiss of the Sheriff's Office and Hemphill [149]. Because the motion of the Sheriff's Office is denied, Cook County remains a necessary party and is not dismissed from the case. The claims remaining in this case are Count I (race discrimination claim under § 1983) against the individual Sheriff's Office defendants and the Sheriff's Office itself, Count III (political retaliation claim under § 1983) against the individual Sheriff's Office defendants and the Sheriff's Office itself, Count IV (state administrative review claim) against the Merit Board, and Count V (Title VII claim) against the Sheriff's Office.

**SO ORDERED**　　　　　　　　　　ENTER: 3/8/16

_____
**JOHN Z. LEE**
**United States District Judge**