# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BLESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 4271 |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE, | ) | Judge John Z. Lee |
| TOM DART in his official and individual | ) | |
| capacity; DEWAYNE HOLBROOK; | ) | |
| JOSEPH WAYS, SR.; ZELDA WITTLER, | ) | |
| SHERYL COLLINS; EDWARD DYNER; | ) | |
| HENRY HEMPHILL; ROSEMARIE | ) | |
| NOLAN; COOK COUNTY SHERIFF'S | ) | |
| MERIT COMMISSION; COOK COUNTY, | ) | |
| a unit of local government, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The *de facto* officer doctrine has existed for over a century in common law, but its development in Illinois has not been without controversy. Recent decisions by the Illinois Appellate Court require us to revisit that history here.

This Court previously entered summary judgment in favor of Plaintiff Robert Bless as to his claim seeking review of an administrative decision by the Cook County Sheriff's Merit Commission ("Merit Board") that terminated his employment as a police officer with the Cook County Sheriff's Office ("CCSO"). The Court vacated and remanded the Merit Board's decision because it concluded, pursuant to *Taylor v. Dart*, 81 N.E.3d 1 (Ill. App. Ct. 2017), that the Merit Board had been illegally constituted when it issued its decision terminating Bless.

Defendants have moved to reconsider the Court's opinion, arguing that recent developments in Illinois law compel the Court to uphold the Merit Board's decision as having been made with *de facto* authority. For the reasons that follow, Defendants' motion to reconsider [400] is granted.

## Background

The Court assumes the reader's familiarity with its prior opinions in this case, particularly with its decision entering summary judgment in favor of Bless on Count IV, his administrative-review claim. *See* 7/19/18 Mem. Op. & Order, ECF No. 352. In brief, this case arises from Bless's employment as an officer for the CCSO from 1997 until the Merit Board voted to terminate him in May 2013. The basis for the termination was that Bless had received workers' compensation benefits and salary while simultaneously working unauthorized second jobs from December 2008 through 2010. R. 18–28.[1]

The Merit Board is an administrative body created by Illinois statute, and its members are appointed by the Cook County Sheriff and approved by the Cook County Board of Commissioners ("County Board"). 55 Ill. Comp. Stat. 5/3–7002 (West 2012). At the time of the decision in Bless's case, the Merit Board consisted of seven members appointed for six-year terms "and until their successors are appointed and qualified for a like term." *Id.*

---

[1] The court cites to the Administrative Review Record, filed as ECF Nos. 26–29, using its original pagination. ECF Nos. 26-2 through 26-4 encompass pages 1–302 of the record; ECF Nos. 27-1 through 27-3 encompass pages 303–672; ECF Nos. 28-1 through 28-3 encompass pages 673–932; and ECF Nos. 29-1 and 29-2 encompass pages 933 through 1091.

In May 2011, Cook County Sheriff Thomas Dart requested approval from the County Board to appoint John R. Rosales to the Merit Board on an interim basis to fill the vacancy of Commissioner Daniel Lynch, whose term was set to expire on March 19, 2012. *Taylor*, 81 N.E.3d at 4. The County Board approved Rosales's appointment on June 1, 2011. *Id*. After Commissioner Lynch's term expired, Sheriff Dart did not reappoint Rosales to the Merit Board, yet Rosales continued to serve until at least May 2017. *Id*.

In Bless's case, proceedings began in October 2011, when Sheriff Dart filed formal charges with the Merit Board. R. 18–23. The Merit Board—including Rosales—issued a written decision on May 6, 2013, terminating Bless's employment with the CCSO. R. 24–28. Bless filed suit in this Court soon thereafter seeking, among other things, review of the Merit Board's decision pursuant to Illinois's Administrative Review Law, 735 Ill. Comp. Stat. 5/3–110. *See* Compl., ECF No. 1.

In May 2017, the Illinois Appellate Court concluded in *Taylor* that Rosales's appointment did not comply with 55 Ill. Comp. Stat. 5/3–7002 because the statute required appointment to a six-year term, yet Rosales was appointed only on an interim basis. 81 N.E.3d at 4–6. Accordingly, the Illinois Appellate Court concluded that the decision then under review—the termination of plaintiff Percy Taylor—was void due to Rosales's continued tenure and participation. *Id*. at 10. The court "vacated and remanded for a hearing before a legally constituted Merit Board." *Id*.

By that time, Bless's administrative-review claim was ripe for a decision by this Court. In his summary-judgment briefing as to that claim, Bless argued for the

first time that, under *Taylor*, Rosales's appointment rendered the Merit Board's decision void. *See* Pl.'s Mem. Supp. Admin. Review Claim at 11, ECF No. 291.

At the time of the Court's decision, no other court had passed on the effect of *Taylor* on subsequent challenges to Rosales's appointment. Accordingly, the Court accepted *Taylor* as a statement of the law in Illinois and ruled in favor of Bless as to his administrative-review claim. *See* 7/19/18 Mem. Op. & Order at 8. In accordance with *Taylor* and other precedent, the Court vacated the Merit Board's decision and remanded for a hearing before a lawfully constituted Merit Board. *Id.*

Meanwhile, the parties completed briefing on Bless's remaining claims for discrimination and retaliation pursuant to Title VII and 42 U.S.C. § 1983. After a discussion with the parties, the Court concluded that Bless's race-discrimination claims were likely to be affected by the remanded Merit Board proceedings and, therefore, stayed briefing on those claims until the conclusion of that process. *See* 9/20/18 Minute Entry, ECF No. 365. The Court allowed re-briefing, however, as to Bless's claim for retaliation under the First Amendment and § 1983. *Id.*

Since then—nearly a year later—the parties have informed the Court that proceedings have not resumed before the Merit Board, with each side blaming the other for its failure to move for a "new trial," and the Merit Board seeking "guidance" on whether to "place Plaintiff's case back on its docket." *See* Joint Status Report, ECF No. 412. Additionally, although the parties have completed briefing as to Bless's retaliation claim, Defendants have also moved to reconsider the Court's

administrative-review opinion. Because the validity of the Merit Board proceedings affects nearly every claim in this case, the Court considers Defendants' motion [400].

## **Legal Standard**

District courts have discretion to entertain motions to reconsider prior decisions. *See Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015); Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."). But while motions for reconsideration are permitted, "they are disfavored," *Patrick*, 103 F. Supp. 3d at 911, and serve a very limited purpose: correcting manifest errors of law or fact and presenting newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

This is a heavy burden for the moving party and makes a motion for reconsideration an inappropriate medium to "rehash" past arguments, *Patrick*, 103 F. Supp. 3d at 912 (citations omitted), or revisit improvident strategic decisions made earlier, *Birdo v. Gomez*, No. 13 C 6864, 2016 WL 6070173, at *1 (N.D. Ill. Oct. 17, 2016) (citation omitted). Accordingly, motions for reconsideration will be granted only where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). One such instance is when there has

been "a change in, or clarification of, law that makes clear that the earlier ruling was erroneous," *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006)). Given these exacting standards, issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191 (citation omitted).

## Analysis

In their motion to reconsider, Defendants contend that *Taylor* no longer controls the outcome of Bless's Merit Board proceedings. Instead, they point out, the Illinois Appellate Court has since confined *Taylor* to its facts. In *Lopez v. Dart*, 118 N.E.3d 580 (Ill. App. Ct. 2018), the Illinois Appellate Court held that the "*de facto* officer doctrine" prevents the invalidation of any Merit Board decisions involving Rosales, except as to the "first challenger of the improper appointment," namely, Percy Taylor. *Id.* at 594–95. Bless, however, contends that this Court should not reconsider its earlier decision because Defendants have waived reliance on the *de facto* officer doctrine, *Lopez* is not controlling, and the doctrine is inapplicable to the facts of this case.

## I. Waiver

As an initial matter, Bless contends that Defendants cannot rely on the *de facto* officer doctrine because they failed to raise it in response to his administrative-review claim in the first instance. The Court disagrees. First, although the *de facto* officer doctrine predates the *Taylor* and *Lopez* decisions, *Lopez* was the first case to apply it to the situation at hand. *See id*. Before that, the court in *Taylor* had held clearly that

the *de facto* officer doctrine did not apply, at least on the facts of that case.  *See* 81

N.E.3d at 10.  Accordingly, Defendants' failure to raise the *de facto* officer doctrine at

a time when *Taylor* was the only relevant precedent was at least understandable.

Not only that, but even if the Court were to hold that Defendants waived

reliance on the *de facto* officer doctrine, it would be appropriate in this situation to

overlook the waiver.  Indeed, the Illinois Appellate Court has disregarded waiver or

forfeiture in two of its cases on this very issue, explaining that "forfeiture serves as a

limit on the parties, not on the court."  *Cruz v. Dart*, 127 N.E.3d 921, 930 (Ill. App.

Ct. 2019); *see Lopez*, 118 N.E.3d at 589 ("[T]he waiver rule may be relaxed in order to

maintain a uniform body of precedent or where the interests of justice so require.").

In those cases, the appellate court found it appropriate to reach the improper

appointments and the *de facto* officer doctrine, because those issues went to "the

validity of the [Merit Board's] decision."  *Cruz*, 127 N.E.3d at 930.  The same is true

here—in order to avoid vacating a possibly valid Merit Board order, the Court will

take this opportunity to address all the relevant legal issues impacting the board's

authority to issue that order.  *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th

Cir. 2012) (explaining that a waiver is enforced "unless the interests of justice require

otherwise").

## II.    *De Facto* Officer Doctrine

The Court thus turns to the application of *Lopez* and the *de facto* officer

doctrine on the validity of the Merit Board's decision in this case.  As described in

*Lopez*, "[t]he *de facto* officer doctrine is a common law equitable doctrine that 'confers

validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient.'" 118 N.E.3d at 590 (quoting *Ryder v. United States*, 515 U.S. 177, 180 (1995)). Because the doctrine has evolved significantly from its origins to the present, some discussion of the doctrine's history and treatment by Illinois courts is necessary.

## A. Development of the *De Facto* Officer Doctrine

As the *Lopez* court explained, the *de facto* officer doctrine has "feudal origins" and has been widely accepted by a variety of courts for at least a century. 118 N.E.3d at 590–91; *see, e.g.*, *Glidden Co. v. Zdanok*, 370 U.S. 530, 535 (1962) (citing *McDowell v. United States*, 159 U.S. 596, 601–02 (1895)); *U.S. ex rel. Doss v. Lindsley*, 148 F.2d 22, 23 (7th Cir. 1945); *People v. O'Neill*, 210 N.E.2d 526, 528–29 (Ill. 1965); *People ex rel. Chillicothe Twp. v. Bd. of Review of Peoria Cty.*, 167 N.E.2d 553, 554 (Ill. 1960); *Lavin v. Bd. of Comm'rs*, 92 N.E. 291, 295 (Ill. 1910). The basic doctrine holds that "[a] person actually performing the duties of an office under color of title is an officer *de facto*, and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned." *Chillicothe Twp.*, 167 N.E.2d at 554. This doctrine developed essentially as a matter of practicality:

> The *de facto* doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.

*Ryder*, 515 U.S. at 180 (citation omitted).

In its earliest form, the *de facto* officer doctrine permitted only "direct" attacks—that is, challenges to the qualifications of an officer—which, in Illinois, could be brought only in a separate action for a writ of *quo warranto*.[2] *See Lopez*, 118 N.E.3d at 591 (citing *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015); *Andrade v. Lauer*, 729 F.2d 1475, 1496 (D.C. Cir. 1984)). These "direct" attacks were distinct from impermissible "collateral" attacks, which sought to challenge government *action* on the basis of an official's improper qualifications. *Id.*; *see Chillicothe Twp.*, 167 N.E.2d at 554 ("[A] writ of *quo warranto* . . . may be employed to try the validity of the organization and title of the officers of public bodies, but it is not a proper proceeding to test the legality of the official acts of public officers.").

Accordingly, throughout most of the twentieth century, challenges to governmental actions on the basis of an official's improper qualifications were categorically barred. Common examples included challenges to wartime drafts based upon the composition of the draft board, *e.g.*, *Wright v. Ingold*, 445 F.2d 109, 113 (7th Cir. 1971); the authority of malapportioned legislatures to reapportion themselves, *e.g.*, *Maryland v. Comm. for Fair Rep. v. Tawes*, 377 U.S. 656, 675 (1964); *People ex rel. Engle v. Kerner*, 205 N.E.2d 33, 39 (Ill. 1965); and tax assessments made by unlawfully elected county boards, *e.g.*, *O'Neill*, 210 N.E.2d at 528; *Chillicothe*, 167 N.E.2d at 554–55.

---

[2]     In present-day Illinois, a writ of *quo warranto* must be brought on behalf of the people of the State of Illinois by the Attorney General or the State's Attorney or, if the State refuses to pursue the action, by an interested party with leave of the Court. *See* 735 Ill. Comp. Stat. 5/18-101; *id.* 5/18-102.

In recent times, however, the *de facto* officer doctrine has been relaxed in many jurisdictions. For instance, the United States Supreme Court has eschewed the doctrine in the face of challenges to violations of the Appointments Clause and Article III power, concluding that the *de facto* officer doctrine does not apply where the error "relates to basic constitutional protections designed in part for the benefit of litigants," *Glidden Co.*, 370 U.S. at 536, or "violations of . . . statutory provision[s] that 'embod[y] a strong policy concerning the proper administration of judicial business.'" *Nguyen v. United States*, 539 U.S. 69, 78 (2003). And courts like the D.C. Circuit, focusing more on timing, have dispensed with the *de facto* officer doctrine when (1) the plaintiff brought the action "at or around the time that the challenged government action is taken" and (2) "the agency or department involved has had reasonable notice under all the circumstances of the claimed defect in the official's title to office." *Andrade*, 729 F.2d at 1499.

## B. The *De Facto* Officer Doctrine in the Illinois Supreme Court

The most recent discussion of the *de facto* officer doctrine by the Illinois Supreme Court arose in a trio of cases decided nearly twenty years ago. These decisions—*Daniels v. Industrial Commission*, 775 N.E.2d 936 (Ill. 2002), *Baggett v. Industrial Commission*, 775 N.E.2d 908 (Ill. 2002), and *Vuagniaux v. Dep't of Prof' Regulation*, 802 N.E.2d 1156 (Ill. 2003)—form the basis of the rule the Illinois Appellate Court articulated in *Lopez*. Each decision is worth examining in some depth.

## 1. *Daniels*

In *Daniels*, the Illinois Supreme Court was confronted with a situation not unlike that which occurred in *Taylor*. The claimant, Pervis Daniels, filed for an adjustment of his workers' compensation claim, and his case was reviewed by a panel of the state Industrial Commission. 775 N.E.2d at 938. Two members of the panel vacated their posts before Daniels's case was heard, and the acting chairman of the Commission appointed a succession of arbitrators to temporarily fill the vacated posts—in violation of the Workers' Compensation Act. *Id.* A majority of the Illinois Supreme Court (four justices) agreed that this procedure violated the Act and, thus, vacated and remanded the decision for a hearing before a properly appointed Commission. *Id.* at 940, 946–47. The court was split, however, on the reasons for its decision and the application of the *de facto* officer doctrine. *Id.*

In an opinion announcing the decision of the court,[3] Chief Justice Harrison wrote that "[w]here an administrative agency acts outside its specific statutory authority, as the Commission did . . . it acts without jurisdiction. Its actions are void, a nullity from their inception." *Id.* at 940. As for the *de facto* officer doctrine, all Chief Justice Harrison had to say was that "[n]o considerations of public policy militate in favor of preventing workers' compensation claimants from challenging the legal status of the commissioners . . . where, as here, the challenge is raised on direct

---

[3]     Subsequent opinions have assumed that, in order to reach the four justices needed to form a majority, Justice Kilbride must have joined Chief Justice Harrison in this opinion. *See Lopez*, 118 N.E.3d at 593.

review . . . and the commissioners were appointed in a manner that threatens the Act's basic objectives." *Id.*

In a special concurrence joined by Justice Freeman, Justice McMorrow explained her disagreement with Chief Justice Harrison's view of the *de facto* officer doctrine. *See id.* at 944 (McMorrow, J., specially concurring). Citing precedent from the United States Supreme Court, Justice McMorrow explained the *de facto* officer doctrine's role in serving the "public's interest in promoting the orderly functioning" of government. *Id.* at 945. Still, she went on, that interest may in some cases be counterbalanced by a competing public interest in "uncovering illegal appointment procedures, thereby ensuring that administrative agencies comply with the statutory mandates which govern them." *Id.* Accordingly, Justice McMorrow advocated a novel approach (which the Court will call the "first-challenger principle"): the "claimant who brought the illegal appointments to light" should receive a new hearing, but the *de facto* officer doctrine should be applied "to maintain the validity of the decisions rendered by the illegally composed commission" in subsequent cases. *Id.* at 945–46.

Justice Fitzgerald, dissenting, agreed with Justice McMorrow that the *de facto* officer doctrine applied, but disagreed with her novel first-challenger principle. *Id.* at 947–48 (Fitzgerald, J., dissenting). Instead, drawing on Illinois Supreme Court cases like *Chillicothe Township*, *O'Neill*, and *Engle*, Justice Fitzgerald emphasized that Daniels's challenge "amount[ed] to an improper collateral attack" on the office of the unlawfully appointed commissioners. *Id.* at 948. Thus, "[e]ven assuming that

[the commissioners] were not appointed in accordance with the governing statute, they were at least *de facto* commissioners with authority to act." *Id.*[4]

### 2. *Baggett*

The next discussion by the Illinois Supreme Court of the *de facto* officer doctrine arose under more atypical circumstances. The court issued its original opinion in *Baggett*—another workers' compensation case—shortly before its opinion in *Daniels*. The initial opinion did not discuss the *de facto* officer doctrine or, for that matter, any problem with the officers appointed to the Industrial Commission. After *Daniels*, however, the employer (the Marion school district) petitioned for rehearing based on the same unlawful appointment issue. 775 N.E.2d at 917–18.

The court denied rehearing. *Id.* at 917. But Justices Fitzgerald, Thomas, and Garman dissented from the denial of rehearing based on concerns about the *de facto* officer doctrine. Justice Thomas, in an opinion that Justices Fitzgerald and Garman joined, voiced his suspicion that, in denying rehearing, the court implicitly was applying Justice McMorrow's first-challenger approach—an approach with which he vigorously disagreed. *Id.* at 919–21 (Thomas, J., dissenting). In Justice Thomas's view,

> [t]he bottom line is that there are only two legitimate means of addressing the issue raised both by Daniels' appeal and the District's petition for rehearing. Either the decisions rendered by [the commissioners] are *de facto* valid, in which case no one gets a new hearing, or those decisions are void, in which case everyone gets a new hearing. There is no middle ground, and in attempting to forge one, this

---

[4]    The two remaining justices—Justices Thomas and Garman—joined a separate dissent that did not discuss the *de facto* officer doctrine. *See* 776 N.E.2d at 948–51 (Thomas, J., dissenting).

court breaches its fundamental duty to ensure that the law is administered fairly and equally.

*Id.* at 921. Justice Fitzgerald wrote a separate dissent expounding similar concerns and reiterating his belief that all collateral challenges to administrative authority are barred by the *de facto* officer doctrine. *Id.* at 918 (Fitzgerald, J., dissenting).

### 3. *Vuagniaux*

The next (and most recent) Illinois Supreme Court discussion of the *de facto* officer doctrine arose in *Vuagniaux*, which this Court addressed to some extent in its ruling on Bless's administrative-review claim. *See* 7/19/18 Mem. Op. & Order at 7–8. In *Vuagniaux*, the court evaluated another unlawful appointment that occurred during proceedings before the Medical Disciplinary Board, a division of the Department of Professional Regulation. 802 N.E.2d at 1160, 1162. There, Thad Vuagniaux—a chiropractic physician who was facing disciplinary proceedings— moved for exclusion of a member of the Medical Disciplinary Board. *Id.* An administrative law judge granted the motion, and the Medical Disciplinary Board named a new member to serve in the proceedings. *Id.* Vuagniaux challenged this appointment directly before the board as violating the Medical Practice Act's appointment scheme, which required members to be appointed by the Governor with the advice and consent of the Senate. *Id.* Ultimately, the Illinois Supreme Court agreed that the appointment violated the Act and set aside the Medical Disciplinary Board's decision. *Id.* at 1166.

Although a majority of the court concurred in this result, the opinion (written by Justice Rarick, who joined the court after *Daniels* and *Baggett*) spent little time on

the *de facto* officer doctrine.  As to this point, the court noted that "the Department makes no claim that its decision can be legitimized on the grounds that [the board member] was a *de facto* officer."  802 N.E.2d at 1165.  Still, the court went on to add this gloss:

> The case before us does not involve the effects of an officer's acts on a member of the public or a third party, and the officer's qualifications to act are not being contested in a collateral proceeding.  The challenge to [the officer's] authority to act as a member of the Board was raised in the proceeding in which [he] was appointed, at the time the appointment was made, by a doctor whose case was directly affected by the appointment, to the tribunal responsible for considering the disciplinary charges against the doctor, and before the tribunal considered the doctor's case on the merits or made its recommendations.  The *de facto* officer doctrine is therefore inapplicable.

*Id.*  Although Justices McMorrow, Freeman, and Garman dissented from the court's opinion, they did not take issue with this aspect of the court's analysis.  *See id.* at 1172–74 (McMorrow, J., dissenting).

### C.  Illinois Appellate Court Analysis of the *De Facto* Officer Doctrine as Applied to the Merit Board

*Daniels*, *Baggett*, and *Vuagniaux* have been applied in varying ways by the Illinois Appellate Court in cases involving improper appointments to the Merit Board.  First, in *Taylor*, the Appellate Court concluded that the doctrine did not apply.  81 N.E.3d at 9–10.  Citing *Vuagniaux*, the *Taylor* court stated: "even if the Merit Board's decision was voidable, the *de facto* officer doctrine would not apply in this case because the plaintiff raised the illegality of Mr. Rosales's appointment to the Merit Board on direct review, not in a collateral proceeding."  *Id.* at 10.

In *Lopez*, the Illinois Appellate Court held otherwise, concluding that even if Taylor was able to benefit from his challenge to Rosales's appointment, no later challengers could do so. 118 N.E.3d at 594–95. On the way to reaching that conclusion, the court acknowledged that the *de facto* officer doctrine has continuing force in Illinois, correctly noting that five justices (McMorrow, Freeman, and Fitzgerald in *Daniels*; Thomas and Garman in *Baggett*) had agreed that the doctrine bars some challenges to official action based on improper qualifications. *Id.* But, going further, the Appellate Court "agree[d] with the sound reasoning of Justice McMorrow in *Daniels* . . . . that in a collateral proceeding, it is best to draw a line and permit only the first challenger of the improper appointment to invalidate the agency's decision, but no others." *Id.* Based upon this rationale, the court barred Lopez's challenge to Rosales's appointment, distinguishing *Taylor* on the basis that Percy Taylor was "the first to bring to light the improper appointment of Rosales and . . . public interest was better served by permitting that improper appointment to be brought to light." *Id.* at 595.

Since *Lopez*, the Illinois Appellate Court has adopted the first-challenger rule, *see Acevedo v. Cook County Sheriff's Merit Board*, ___ N.E.3d ___, No. 1-18-1128, 2019 WL 2041270, at *6–9 (Ill. App. Ct. May 7, 2019); *Cruz*, 127 N.E.3d at 930–32; but it has struggled  to apply it in particular circumstances, both expanding and limiting its reach. For example, in *Cruz*, the plaintiff tried to distinguish *Lopez* by arguing that he was not contesting the validity of Rosales's appointment, but that of other Merit Board members. The *Cruz* court disagreed, expanding the first-challenger rule

to include cases where the plaintiff challenged "the same problem with the appointment procedure" that had been the subject of prior litigation, even where the suit involved different officers. 127 N.E.3d at 931; *see also Pietryla v. Dart*, ___ N.E.3d ___, No. 1-18-2143, 2019 WL 3416670, at *2–3 (Ill. App. Ct. July 26, 2019).

By contrast, in *Goral v. Dart*, ___ N.E.3d ___, No. 1-18-1646, 2019 WL 2716196, at *11–14 (Ill. App. Ct. June 19, 2019), the plaintiffs had been charged by an invalid Merit Board (based on the appointment problem identified in *Taylor*) and then subjected to "amended" charges after the Sheriff appointed a new Merit Board. *Id.* at *2. The plaintiffs contended that the Merit Board's previous lack of authority could not be cured by the Sheriff's filing of "amended" charges. *Id.* The court of appeals went on to reach the plaintiffs' challenge, concluding that the situation was distinguishable from *Lopez*, *Cruz*, and *Acevedo* because "[i]n each of those decisions, the Sheriff's employee did not challenge the Board's authority until *after* the Board's final decision was issued." *Id.* at *12. In *Goral*, by contrast, "[p]laintiffs have been raising statutory-authorization arguments before the Board since their cases began, they continue to raise them, and they raised them in this separate lawsuit . . . *before* a final administrative [decision] was rendered." *Id.*

Based upon this reasoning, the *Goral* court announced a new twist in the *Lopez* rule:

> Once *Taylor* was decided, any Sheriff's employee whose case was then-pending before the Board, or who was charged in a new case post-*Taylor*, had every right to challenge the Board's composition for the same reasons as in *Taylor* (or for different reasons). Old cases already finally decided, no, but pending or new administrative cases, yes. Plaintiffs' cases were pending at the time of the *Taylor* [decision], and the "*de facto*

officer" doctrine did not prevent them from challenging the Board's composition.

*Id.* at \*13.

This limitation to the first-challenger principle was necessary, the court explained, because if the *de facto* officer doctrine barred challenges to pending Merit Board proceedings, the doctrine would be "inflate[d] . . . from a practical doctrine that avoids chaos and promotes finality of old administrative decisions into a doctrine that provides a board with *carte blanche* immunity to *continue* violating the law, going forward, and perhaps forever, brushing aside the *Taylor* decision like a piece of lint on a suit coat." *Id.* Thus, the court said, its new rule was consistent with the twin public interests discussed in Justice McMorrow's *Daniels* concurrence. *See id.*

### D.    Application of the *De Facto* Officer Doctrine

It is clear that, at this point, *Taylor* no longer controls the outcome of challenges to the Merit Board's composition. Accordingly, the Court turns to *Lopez* and its progeny—as well as the Illinois Supreme Court cases discussed therein.

Ordinarily, the Court must apply state law the way it believes the Illinois Supreme Court would apply it. *Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 89 (7th Cir. 1993). In accordance with this principle, decisions of the Illinois Appellate Court are typically considered persuasive, rather than binding, on the federal courts. *See AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). Still, "[w]here the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. Co.*

*v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015); *see also AAR Aircraft & Engine Grp.*, 272 F.3d at 470 (explaining that state intermediate court decisions are "authoritative" unless a federal court has a "compelling reason to doubt that they have stated the law correctly").

Although this Court has some misgivings about the *Lopez* court's adoption of the first-challenger rule (as will be explained below), it concludes that following the rule established in *Lopez* is the most appropriate approach. The Appellate Court decisions addressing the various challenges to the Merit Board provide the most recent discussion of the *de facto* officer doctrine in the state courts by a margin of nearly twenty years. These decisions are directly on point, as they address not only the specific agency at issue in this case, but also the same procedural challenge. Furthermore, although the Illinois Supreme Court discussed the *de facto* officer doctrine in *Daniels*, *Vuagniaux*, and *Baggett*, those opinions do not set forth clear contours for the doctrine or its exceptions. Rather, it is *Lopez*, and the cases following it, that have crystallized the Supreme Court's analysis into generally applicable principles.

Applying these principles then, the Court must grant Defendants' motion to reconsider. In *Lopez*, the Illinois Appellate Court ruled that "the first plaintiff who raise[s] the issue of the validity of [a board's] decision should be granted a new hearing, but, in other cases, the *de facto* officer doctrine should apply to maintain the validity of the decisions rendered by [the board] in which the . . . illegally appointed panel members participated." 118 N.E.3d at 593–94. Accordingly, Bless's challenge

to Rosales's confirmation cannot proceed, since he raised it for the first time after *Taylor* was decided. Bless argues that his case is distinguishable from *Lopez*, *Cruz*, and *Acevedo*, because the lawsuits in those cases were filed after *Taylor*; by contrast, he argues, he had already initiated his administrative-review claim in this Court when *Taylor* was issued. But *Goral* confirms that this distinction makes no difference. There, the Illinois Appellate Court explained that, in addition to Taylor himself, the only litigants who may raise *Taylor* challenges to the Merit Board's composition are those whose cases were pending before the board when *Taylor* was decided "or who [were] charged in a new case post-*Taylor*." 2019 WL 2716196, at *13. Bless's Merit Board proceedings had already concluded when he raised his *Taylor* challenge, so he does not fit into this narrow exception to the first-challenger rule.

Although the Court finds the Illinois Appellate Court's analysis of the *de facto* officer doctrine to be authoritative, the Court notes that there is reason to question whether the Illinois Supreme Court will ultimately adopt the same approach. First, the Court is not entirely convinced of the soundness of the first-challenger principle enunciated by Justice McMorrow in *Daniels*. Only two justices—McMorrow and Freeman—signed on to that concept in *Daniels* itself. Furthermore, despite the fears expressed by Justice Thomas's dissent in *Baggett*, the Court does not believe that the Supreme Court's denial of rehearing in that case necessarily compels the conclusion that the *Baggett* court adopted the first-challenger rule. Like denials of petitions for leave to appeal, the Court thinks it inadvisable to glean too much from a mere denial of rehearing. *See, e.g.*, *In re Leona W.*, 888 N.E.2d 72, 81 (Ill. 2008) ("Denials of

petitions for leave to appeal are not decisions on the merits."); *People v. Ortiz*, 752 N.E.2d 410, 424 (explaining that denials of petitions for leave to appeal "carry no connotation of approval or disapproval of the appellate court action, and signify only that four members of this court, for reasons satisfactory to them, have not voted to grant leave"). In the end, there is little indication that Justice McMorrow's first-challenger principle has been accepted by more than two Justices on the Illinois Supreme Court.

Furthermore, Justice Thomas's dissent in *Baggett* (with which Justices Fitzgerald and Garman agreed) raises some valid concerns about the first-challenger approach. 775 N.E.2d at 918–21 (Thomas, J., dissenting). Posing the hypothetical of 100 litigants who all filed lawsuits on the same day following an exposé of an unlawful appointment, he posited:

> Assuming the challenged decisions are *de facto* valid, only one of those litigants will receive undeserved relief. This means that 99 other litigants, all of whom invested a great deal of time, grief, and expense *at the invitation of this court*, will have done so in vain. . . . Litigation is not a raffle, and appellate relief should not be a door prize. For that matter . . . how will this court decide who the lucky recipient of undeserved appellate relief will be? . . . Will the door prize go to the first to have his or her challenge adjudicated by the trial court? . . . The first case to be decided by [the] appellate court? . . . The first petition for leave to appeal filed in this court? . . . The first petition for leave to appeal allowed by this court? . . . The answer, of course, is that there is no answer, because courts should not be in the business of singling out and conferring upon isolated litigants relief that the law clearly prohibits.

*Id.* at 920. Justice Thomas's concerns about the rule's unintended consequences help explain the Appellate Court's recent struggles to fashion a consistent and equitable rule.

That said, even if the Illinois Supreme Court were not inclined to follow Justice McMorrow's approach today, the Court thinks it likely that it would adopt some version of the principles announced in *Lopez*, *Cruz*, *Acevedo*, and *Goral*. As the *Lopez* court noted, the Supreme Court in *Vuagniaux* appeared to affirm the existence of the *de facto* officer doctrine, and may have provided certain guiding principles for its application. *See* 118 N.E.3d at 595.

There, the court permitted the plaintiff to challenge the appointment at issue, noting that the challenge arose "in the proceeding in which the [appointee] was appointed, at the time the appointment was made, by a doctor whose case was directly affected by the appointment, to the tribunal responsible for considering the disciplinary charges against the doctor, and before the tribunal considered the doctor's case on the merits or made its recommendations." *Vuagniaux*, 802 N.E.2d at 1165. Here, as was the case in *Lopez*, Bless did not raise his challenge to Rosales's appointment before the Merit Board or even close to the time of the appointment itself. *See Lopez*, 118 N.E.3d at 595; *cf. Goral*, 2019 WL 2716196, at *13.

Whatever reservations this Court may have about the first-challenger rule, federalism is one of the cornerstones of our system of government, and the Court believes that it is best left to the Illinois Supreme Court to determine whether it will adopt the exceptions to the *de facto* officer doctrine currently being forged in the Illinois Appellate Court; clarify its understanding of the doctrine as described in *Vuagniaux*; or announce a different rule altogether. *See Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Federal courts are loathe to fiddle around with

state law."); *A.W. Huss Co. v. Cont'l Cas. Co.*, 735 F.2d 246, 253 (7th Cir. 1984) (noting federal courts' "limited discretion . . . with respect to untested legal theories brought under the rubric of state law"); *see also Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2188–89 (2019) ("[F]ederal courts should refrain whenever possible from deciding novel or difficult state-law questions.") (Kagan, J., dissenting) (citing cases). At this point, the most directly applicable standards are found in the Illinois Appellate Court's cases following *Lopez*, and the Court cannot find a "compelling" reason to deviate from them. *See AAR Aircraft & Engine Grp.*, 272 F.3d at 470. What is more, the outcome of Defendants' motion would still be the same even if the Court were to apply the general guidelines provided in *Vuagniaux*, rather than strictly following the Illinois Appellate Court's approach.

In the end, under either approach, Bless's claim challenging Rosales's appointment simply came too late to present a meaningful challenge to the Merit Board's authority to adjudicate his case. Rather than raising Rosales's unlawful appointment at a time the Merit Board could have addressed it, Bless waited until the Merit Board issued a decision on the merits and then sought to benefit from the relief won by Percy Taylor. As a final note, remanding to the Merit Board at this point would require it to start from scratch—a possible exercise in futility given the fact that the board has already issued a decision on the merits that this Court can substantively review.

## Conclusion

For the reasons stated, the Court grants Defendants' motion to reconsider and vacates its previous summary judgment opinion.

**IT IS SO ORDERED.**          **ENTERED: 9/12/19**

_____
**JOHN Z. LEE**
**United States District Judge**