**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BLESS**, | ) | No. 13 C 4271 |
| | ) | |
| Plaintiff**,** | ) | Judge John Z. Lee |
| | ) | |
| v. | ) | |
| | ) | |
| **COOK COUNTY SHERIFF'S OFFICE**, *et al.*, | ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANTS' RULE 56 STATEMENT**
**AND STATEMENT OF ADDITIONAL FACTS REQUIRING**
**DENIAL OF SUMMARY JUDGMENT**

Jeffrey R. Kulwin
Rachel A. Katz
KULWIN, MASCIOPINTO & KULWIN, LLP.
161 North Clark Street, Suite 2500
Chicago, IL 60601
(312) 641-0300

# TABLE OF CONTENTS

## No. 13 C 4271

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... iii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

        A.  BACKGROUND ........................................................................................2

        B.  THE CSSO'S INVESTIGATION ..............................................................3

        C.  THE MERIT BOARD HEARING AND DECISION ................................4

III.    LEGAL STANDARDS .........................................................................................7

IV.     LAW AND ARGUMENT .....................................................................................8

        A.  THE MERIT BOARD DECISION IS PER SE UNREASONABLE...........8

        B.  FURTHER REVIEW OF THE MERIT BOARD'S DECISION SHOULD BE
            STAYED PENDING TRIAL ......................................................................9

        C.  THE MERIT BOARD'S ERRORS REQUIRE REVERSAL ...................10

            1.  Refusing to Admit Material and Highly Relevant Evidence .................11

            2.  The Merit Board's Vague Decision Precludes Meaningful Review....................13

        D.  THE FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF
            THE EVIDENCE .....................................................................................17

            1.  Alleged Unauthorized Secondary Employment....................................17

            2.  Alleged Deliberate Conduct..................................................................19

            3.  Alleged False Statement to OPR ...........................................................19

            4.  Alleged Violations of Other General Orders .........................................20

            5.  Alleged Driving Contrary to Medical Restrictions................................20

i

E. THE DECISION TO UPHOLD TERMINATION WAS ARBITRARY AND CAPRICIOUS………....................................................................................21

   1. Arbitrary & Capricious: Lesser Penalties Given to Other Employees .................22

   2. Arbitrary & Capricious: Excessive and Unrelated to Service Requirements ........23

V.   CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

## No. 13 C 4271

<u>**Cases**</u>

*Abrahamson v. Illinois Dep't of Prof. Reg.*,
153 Ill.2d 76 (1992) ........................................................................................................... 9

*Austin v. Civil Serv. Comm'n*,
247 Ill. App. 3d 399 (1st Dist. 1993) ............................................................................... 21

*Barth v. State Farm Fire & Casualty Co.*,
228 Ill.2d 163 (2008) ........................................................................................................ 10

*Beggs v. Bd. of Educ. of Murphysboro Cmty.*,
2016 IL 120236 ............................................................................................................... 2, 7

*Bell v. Civil Serv. Comm'n*,
161 Ill.App.3d 644 (1st Dist. 1987) ................................................................................. 22

*Bless v. CCSO*,
No. 13 C 4271, 2016 WL 958554 (N.D. Ill. Mar. 8, 2016) ............................................. 1

*Bowlin v. Murphysboro Firefighters Bd*,
368 Ill. App. 3d 205 (5th Dist. 2006) ................................................................................ 7

*Brokaw v. Boeing Co.*,
137 F. Supp. 3d 1082 (N.D. Ill. 2015) ............................................................................. 13

*Burgett v. Collinsville Bd. of Fire and Police Comm'rs*,
149 Ill. App. 3d 420 (5th Dist. 1986) ............................................................................... 22

*Caliendo v. Goodrich*,
34 Ill. App. 3d 1072 (1st Dist. 1975) ............................................................................... 21

*Christenson v. Bd. of Fire & Police Comm'rs of City of Oak Forest*,
83 Ill. App. 3d 472 (1st Dist. 1980) ................................................................................. 24

*Fantozzi v. Bd. of Fire and Police Comm'rs*,
27 Ill.2d 357 (1963) ............................................................................................... 21, 23, 24

*Fornuto v. Police Bd.*,
38 Ill. App. 3d 950 (1st Dist. 1976) ................................................................................. 23

iii

*Fox v. Ill. Civ. Serv. Comm'n,*
66 Ill. App. 3d 381 (1st Dist. 1978) ............................................................. 11, 12, 23

*Hernandez v. CCSO et al.,*
Case: 07 C 855 ............................................................................................................. 1

*Holden v. Police Bd. of the City of Chicago,*
324 Ill. App. 3d 862 (1st Dist. 2001) ...................................................................... 8, 22

*In re Murchison,*
349 U.S. 133 (1955) ....................................................................................................... 9

*Jones v. Civil Serv. Comm'n,*
80 Ill. App. 3d 74 (5th Dist. 1979) .............................................................................. 23

*Kloss v. Bd. of Fire and Police Comm'rs of Vill. of Mundelein,*
96 Ill.2d 252 (1983) ....................................................................................................... 8

*Kozsdiy v. O'Fallon Bd. of Fire & Police Comm'rs,*
31 Ill. App. 3d 173 (5th Dist. 1975) ............................................................................ 17

*Kreiser v. Police Bd. of the City of Chicago,*
40 Ill. App. 3d 436 (1st Dist. 1976) ............................................................................ 23

*Launius v. Bd. of Fire & Police Comm'rs,*
151 Ill.2d 419 (1992) ................................................................................................... 23

*Magett v. Cook Cnty Sheriff's Merit Bd.,*
282 Ill. App. 3d 282 (1st Dist. 1996) ............................................................................ 9

*Malinowski v. Cook Cty Sheriff's Merit Bd.,*
395 Ill. App. 3d 317 (1st Dist. 2009) .......................................................................... 21

*Medina Nursing Ctr., Inc. v. Health Facilities & Servs. Review Bd.,*
2013 IL App (4th) 120554 ...................................................................................... 13, 17

*Muller v. Zollar,*
267 Ill. App. 3d 339 (3d Dist. 1994) .............................................................................. 2

*People v. Buck,*
361 Ill.App.3d 923 (2d Dist. 2005) .............................................................................. 10

*Reinhardt v. Bd. of Educ. of Alton Comm. Unit School Dist.*,
61 Ill.2d 101 (1975) ............................................................................................................ 13

*Roman v. Cook Cnty. Sheriff's Merit Bd.*,
2014 IL App (1st) 12330 .......................................................... 1, 2, 6, 8, 9, 10, 12, 13, 15, 17, 22

*Sutton v. Civil Serv. Comm'n*,
91 Ill.2d 404 (1982) ............................................................................................................ 22

*Vulcan Golf L.L.C. v. Google Inc.*,
No. 07 C 3371, 2010 WL 2363620 (N.D. Ill. June 9, 2010) ........................................................ 12

*Walker v. Dart*,
2015 IL App (1st) 140087 ................................................................................................ 1, 8, 17, 20

*Walsh v. Bd. of Fire and Police Comm'rs*,
96 Ill.2d.101 (1983) ........................................................................................................ 8, 22

Plaintiff Robert Bless (Plaintiff) respectfully submits this memorandum in support of his administrative review claim in Count IV (Dkt. No. 140) to reverse the decision of the Cook County Sheriff's Merit Board (Merit Board) to uphold charges for termination.

## I.    INTRODUCTION

Plaintiff alleged the Cook County Sherriff's Office (CCSO) terminated his employment as a police officer for unlawful reasons including his Republican political activity which is the opposite of the Cook County Sheriff, Democrat Thomas J. Dart (Sheriff Dart).  (Dkt. No. 140.) Plaintiff's administrative review claim seeks reversal of the Merit Board decision the CCSO used to terminate him.[1]  As discussed below, the Merit Board's decision should be reversed.

The Merit Board's decision should be reversed under *Roman v. Cook Cnty. Sheriff's Merit Bd.*, 2014 IL App (1st) 12330.  *Roman* holds that terminating CCSO employees for the same reasons Plaintiff was terminated is arbitrary, capricious and unreasonable because it is grossly disproportionate to the CCSO's standard punishment for such conduct.

The Merit Board's decision should also be reversed as arbitrary, capricious and against the manifest weight of the evidence.  *Walker v. Dart*, 2015 IL App (1st) 140087, ¶¶ 40-60.  The premise for the Merit Board's decision—that Plaintiff allegedly deliberately broke the CCSO's secondary employment rules to improperly get disability benefits—is unsupported by the record. The Court can and should take judicial notice of the fact that the CCSO has now admitted that the Merit Board's premise is not accurate because Plaintiff's secondary employment did <u>not</u> impact the disability benefits Plaintiff was entitled to receive and Plaintiff requested and received <u>only</u> the

---

[1] The Merit Board is under Sheriff Dart's control.  *See Hernandez v CCSO et al.*, Case: 07 C 855, Dkt. No. 485 at 8-9; *Bless v. CCSO*, No. 13 C 4271, 2016 WL 958554, at *5 (N.D. Ill. Mar. 8, 2016).

disability benefits he was entitled to receive.  *See* Dkt. No. 398 ¶ 118; *Muller  v. Zollar*, 267 Ill. App. 3d 339, 341 (3d Dist. 1994).

At most, the CCSO proved that Plaintiff in unclear circumstances committed an immaterial technical violation of secondary employment rules that in no way impacted the requirements of service.  Even if Plaintiff did commit a technical violation of the secondary employment rules, the decision to discharge Plaintiff for his conduct produces the definite and firm conviction that a mistake was committed.  *See Beggs v. Bd. of Educ. of Murphysboro Cmty.*, 2016 IL 120236, ¶ 72. Accordingly, the Merit Board's decision should be reversed.

## II.  STATEMENT OF FACTS[2]

### A. Background

In 1996, Plaintiff began working for the CCSO.  (AR 18.)  In 1997, Plaintiff became a police officer. (*Id.*)  Plaintiff had a successful 16-year career with no discipline.  (AR 687.)

The CCSO has a policy for employees who want to work second jobs while also working for the CCSO, called "secondary employment."  (AR 1083-91.)  To work a second job, employees must submit a form to their immediate supervisor who is required to send the forms through the chain of command for review and approval.  (AR 1085 (¶ D).)  CCSO retains the right to "continual and regular" review of secondary employment and to revoke permission.  (AR 1085-86.)  The policy states employees will be notified in writing regarding any action taken on secondary employment forms.  (*Id.*)  The typical punishment for unauthorized secondary employment is a suspension for 3-5 days.  *Roman*, 2014 IL App (1st) 123308, ¶ 146.

---

[2] Citations to the administrative record are citations to the Administrative Record filed by the Merit Board and stamped each page with "Ad. Rev." followed by a specific page number.  (Dkt. Nos. 26-29.)  The Administrative Record is cited here as "AR" followed by the Merit Board's page number, *e.g.*, "AR__."

Between 1996 and 2001, Plaintiff submitted secondary employment forms that were all approved. (AR 294, 934-49.) In 2004, Plaintiff graduated from law school and hoped to build, on a part-time basis, a small practice representing clients in residential closings and small business transactions. (AR 488.) Between 2004 and 2008, Plaintiff submitted secondary employment forms that were approved for his law practice. (AR 292-93, 295, 297-98.)

In 2008, Plaintiff was seriously injured in a car accident while he was on duty. As a result of his injuries and work restrictions, Plaintiff filed a workers' compensation claim and applied for the temporary total disability benefits he was entitled to receive. On September 8, 2008, the Cook County Department of Risk Management (Risk Management) placed Plaintiff in an injured on duty (IOD) status and began paying Plaintiff disability benefits. (AR 435.) On September 12, 2008, the CCSO reviewed Plaintiff's IOD Packet and determined it was complete and accurate. (AR 1162.) Plaintiff was never informed the permission he received to work secondary employment was revoked or denied going forward. The CCSO had no rule that precludes employees from working secondary employment while on IOD. (AR 437-38.)

In November 2008, Plaintiff was elected as a Republican to serve as a McHenry County Board Commissioner. (AR 496-97.) In January 2009, while he was on IOD, Plaintiff submitted to his supervisor, Sergeant Larry King (Sgt. King), two secondary employment forms, one for his law practice and one for his service on the McHenry County Board. (AR 449-500, 506-07.)

**B. The CCSO's Investigation**

On April 9, 2009, while Plaintiff was on IOD, Risk Management sent a memo to Director of Personnel Rosemarie Nolan (Nolan) about Plaintiff working as a McHenry County Commissioner while on IOD. (AR 426-27, 437-38.) Nolan notified the CCSO Office of Professional Review (OPR) to investigate. (*Id*.)

Initially, OPR's investigation involved Plaintiff's purported wrongful receipt of IOD benefits while engaged in secondary employment. (AR 455.) In May 2009, OPR tried to get the State's Attorney to bring felony charges against Plaintiff for the fraudulent receipt of IOD benefits, but charges were declined. (AR 454.)[3]

In Spring 2009, Plaintiff was cleared to return to work light duty, but the CCSO claimed that there were no light duty positions for him. (AR 590) In November 2010, Plaintiff was cleared to work full duty. (AR 475.) Plaintiff submitted two secondary employment forms that were approved for his law practice and service on the McHenry County Board. (AR 299.)

Two years later, in May 2011, OPR first signed "administrative charges" against Plaintiff. (AR 693, 695, 1110-11, 1262-63.) On May 18, 2011, for the first time, Plaintiff was notified he was being investigated by OPR. (*Id.*) On October 6, 2011, Sheriff Dart filed charges with the Merit Board seeking to terminate Plaintiff. (AR 18-23.)

**C. The Merit Board Hearing and Decision**

Between November 2012 and January 2013, the Merit Board received evidence over three days on the charges filed against Plaintiff. (AR 303-672.)

Nolan testified she was responsible for maintaining secondary employment forms; she conducted a search for all secondary employment forms for Plaintiff; and she was only able to locate three forms: one from 2008 and the two from 2010. (AR 409-10, 415-19.) Nolan testified Plaintiff had no secondary employment forms on file prior to 2008. (AR 429.) Based on the documents she claimed to find, Nolan testified Plaintiff never requested nor received approval to work secondary employment between January 31, 2009 and December 9, 2010. (AR 420.)

---

[3] There is no law, rule, regulation or policy prohibits employees from receiving IOD benefits based on secondary employment. (*See* AR 437.) Risk Management never revoked Plaintiff's IOD status nor identified any benefits he was not entitled to receive.

OPR Investigator Henry Hemphill (Hemphill) testified he investigated Plaintiff. (AR 449.) Hemphill said he was told by Nolan's office and the CCSO that they could not locate secondary employment forms for Plaintiff other than the three forms Nolan claimed to find. (AR 449-50). Hemphill stated OPR's investigation was originally a criminal matter and then an administrative case, which was unusual. (AR 454.) Hemphill stated that OPR's initial case did not involve alleged violations of the secondary employment rules. (AR 455.) Hemphill testified about his interview of Plaintiff. (AR 442). According to Hemphill, Plaintiff stated he submitted secondary employment forms for his law practice each year—a statement that Hemphill believed was "false" based on the information he was given by Nolan. (AR 451.)

Plaintiff testified that, in January 2009, he submitted directly to his supervisor, Sgt. King, two secondary employment forms, one for his law practice and one for his service on the McHenry County Board. (AR 449-500, 506-07.) Plaintiff testified he called Sgt. King on his cell phone specifically to submit his secondary employment forms. (AR 507.) Sgt. King directed Plaintiff to meet at the Dunkin Donuts on Dundee Road in Palatine. (*Id*.). Plaintiff testified that, as directed by his supervisor, he went to the Dunkin Donuts and handed to Sgt. King two secondary employment forms to submit through the chain of command. (AR507-08.)

Four separate witnesses—current or retired CCSO police officer employees—corroborated Plaintiff's testimony. Officer Christopher Garcia (Ofc. Garcia) testified that he was present at the Dunkin Donuts with Sgt. King, Officer Jose Del Valle (Ofc. Del Valle) and Officer Francisco Ruiz (Ofc. Ruiz). (AR 372-73.) Ofc. Garcia testified he observed Plaintiff walk into the Dunkin Donuts and hand Sgt. King documents, and he heard Plaintiff tell Sgt. King that he was turning in his secondary employment forms. (AR 374.) Sgt. King accepted the forms and told Plaintiff he would forward them through the chain of command. (*Id*.). Ofc. Del Valle and Ofc. Ruiz testified

consistent with Ofc. Garcia's testimony. (AR 379-83 & 387-90). Sgt. King signed an affidavit and testified that Plaintiff provided him with secondary employment forms for his part-time work for his law practice and as a McHenry County Board Commissioner. (AR 570-72, 933). Sgt. King confirmed that he "signed the forms and forwarded them through the chain of command." (*Id*. & AR 580-81).

Plaintiff admitted into evidence the 10+ years of secondary employment forms he submitted and that were all approved. (AR 292-302, 934-49, 957-58.) Plaintiff attempted to admit evidence of the discipline imposed on employees for breaking secondary employment rules. (AR 85-87, 276.) The evidence showed, among other things, that employees had received, at most, suspensions for far more egregious secondary employment rule violations and deliberate false statements about secondary employment than Plaintiff was accused of committing.[4] (*Id*.) Plaintiff wanted to introduce the evidence, among other reasons, to corroborate that he would have no reason to deliberately provide untrue statements about secondary employment under the circumstances and to establish termination was an unreasonable and excessive punishment. However, the Merit Board sustained the CCSO's objection and excluded the evidence on foundation and hearsay grounds. (*Id*.)

The CCSO presented no evidence that Plaintiff was faking his injuries, or that Plaintiff was able to return to full duty work sooner than he did, or that Plaintiff's secondary employment affected or delayed his ability to return to work, or that Plaintiff asked for or received any IOD benefits he was not entitled to receive based on his on-duty work injury.

---

[4] Since the Merit Board issued its decision in this case, the First District Illinois Appellate Court vacated the terminations employees for such conduct as arbitrary and unreasonable and reduced the suspensions imposed on other employees, in part, because on average, CCSO employees received suspensions lasting 3-5 days for such conduct. *Roman*, 2014 IL App (1st) 123308, ¶149.

On May 3, 2013, the Merit Board issued a written decision finding against Plaintiff. (AR 24-28.) The Merit Board found that Plaintiff: (1) was not authorized to engage in secondary employment while receiving IOD benefits; (2) did not receive authorization to engage in secondary employment in 2009 or 2010; and (3) falsely told OPR investigators he had secondary employment requests on file for his part-time law practice. (*Id.*)

## III. LEGAL STANDARDS

Plaintiff is entitled to judicial review of the Merit Board's decision on all questions of law and fact presented by the entire record. 735 ILCS 5/3–110. The Illinois Supreme Court recently stated the standards for reviewing the Merit Board's decision:

> An administrative agency's findings and conclusions on questions of fact are considered prima facie true and correct. As such, an agency's factual findings are not to be reweighed by a reviewing court and are to be reversed only if they are against the manifest weight of the evidence. Factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. Questions of law are reviewed under a *de novo* standard, and mixed questions of law and fact are reviewed under the clearly erroneous standard. A mixed question of fact and law examines the legal effect of a given set of facts. Put another way, a mixed question asks whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated. An administrative decision is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Beggs*, 2016 IL 120236, ¶ 50 (internal citations and quotations omitted).

Although the Merit Board's factual findings are afforded considerable weight, the deference afforded is not boundless. *Id.* As the Illinois Appellate Court stated:

> [O]ur review cannot amount to a rubber stamp of the proceedings below merely because the Board heard witnesses, reviewed records, and made the requisite findings. Even when the decision is supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight.

*Bowlin v. Murphysboro Firefighters Bd*, 368 Ill. App. 3d 205, 211–12 (5th Dist. 2006).

Review of the Merit Board's decision requires a two-stage analysis. *Walsh v. Bd. of Fire and Police Comm'rs*, 96 Ill.2d. 101, 105 (1983). The first step is to determine whether the Merit Board's findings of fact are contrary to the manifest weight of the evidence. The second step is to determine if the Merit Board's findings of fact provide a sufficient basis to conclude that just cause for discharge exists. *Id*. A finding of cause for discharging an employee should be overturned if it is arbitrary and unreasonable and "unrelated to the requirements of service." *Id.* Courts will not hesitate to grant relief when the record does not support an agency's findings. *Kloss v. Bd. of Fire and Police Comm'rs of Vill. of Mundelein*, 96 Ill.2d 252, 258 (1983).

The CCSO has the burden of proof before the Merit Board. *Roman*, 2014 IL App (1st) 123308, ¶¶ 66-70. The Merit Board's findings "must rest upon competent evidence and be supported by substantial proof." *Walker*, 2015 IL App (1st) 140087, ¶ 37. Although the Merit Board has broad discretion in determining what constitutes a proper cause for discharge, the discharge must be based upon substantial misconduct or incapacity which "does not include conduct which is so trivial as to be unreasonable and arbitrary." *Holden v. Police Bd. of the City of Chicago*, 324 Ill. App. 3d 862, 868 (1st Dist. 2001).

## IV. LAW AND ARGUMENT

As shown below, the Merit Board's decision should be reversed.

### A. The Merit Board's Decision is *Per Se* Unreasonable

The Merit Board decision is unreasonable under *Roman*, 2014 IL App (1st) 123308. In *Roman*, the First District reversed as unreasonable and arbitrary Merit Board decisions to uphold charges to terminate CCSO employees for far more egregious unauthorized secondary employment and deliberate false statements about secondary employment. *Id.* The terminations

were reversed because the punishment was grossly disproportionate to the typical discipline imposed for similar conduct. *Id.* Under *Roman*, the Merit Board's decision must be reversed.

### B. Further Review of the Merit Board's Decision Should Be Stayed Pending Trial

Alternatively, in light of Plaintiff's pending civil rights claims and the substantial evidence of unlawful employment actions and pretextual termination reasons (*see* Dkt. No. 392), further review of the Merit Board's decision should be stayed pending trial.

Hearings before the Merit Board are governed by the fundamental principles and requirements of due process of law. *Magett v. Cook Cnty Sheriff's Merit Bd.*, 282 Ill. App. 3d 282 (1st Dist. 1996). Due process requires a fair and impartial hearing before a fair and impartial tribunal. *In re Murchison,* 349 U.S. 133, 136 (1955); *Abrahamson v. Illinois Dep't of Prof. Reg.*, 153 Ill.2d 76, 92, 95 (1992). A fair hearing includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence. *Id*. In this case, under the circumstances, there is substantial evidence that Plaintiff did not and could not possibly receive a fair and impartial hearing or decision from this Merit Board.[5]

Further, there is substantial evidence the Merit Board was not a disinterested and impartial tribunal but, instead, was influenced by and acted for unlawful reasons. Parties in administrative hearings are entitled to a fair hearing before a disinterested tribunal. *Williams*, 398 Ill. App. 3d at 691. With respect to judicial proceedings, Illinois Supreme Court Rule 63(C)(l) mandates disqualification of the judge when a reasonable person might question the judge's ability to rule

---

[5] For example, the Merit Board's written decision itself contains compelling evidence supporting Plaintiff's claims, including unlawful reverse race discrimination (*e.g.,* excluding evidence of employees outside of the protected class not terminated for egregious secondary employment violations), political animus (*e.g.,* going out of its way to state specifically that Plaintiff purportedly "maliciously breached" the public trust of the *taxpayers of McHenry County*) and retaliatory intent (*e.g.,* upholding severe penalty of termination contrary to typical discipline that only involves suspensions and refusal to even consider evidence of typical discipline imposed). (AR 26-28.)

impartially. *Barth v. State Farm Fire & Casualty Co.,* 228 Ill.2d 163, 175-76 (2008). Supreme Court Rule 63(C)(l) requires recusal of a judge when "participation might reasonably give rise to questions regarding his impartiality, including situations involving the appearance of impropriety." *People v. Buck*, 361 Ill.App.3d 923, 931 (2d Dist. 2005).

The same standards should also govern hearings before the Merit Board.  The Merit Board is an agency under the control of the CCSO.  *See* n. 1, *supra; Roman*, 2014 IL App (1st) 123308, ¶ 78.  The Court can and should take judicial notice of the Illinois State Board of Elections public records showing that several Merit Board members responsible for the decision against Plaintiff, including the illegally serving Merit Board member John Rosales, were each political and financial supporters of Sheriff Dart.[6]

The evidence underlying the circumstances that led to Plaintiff's hearing, viewed as true and in the requisite light most favorable to Plaintiff as required at this point in the case, show that Plaintiff was denied his right to a fair and impartial hearing before the Merit Board.  As such, any ruling on the fairness of the Merit Board hearing should be taken with and/or decided after the jury has decided the facts.  Plaintiff respectfully submits that it cannot be fully fairly decided whether Plaintiff received a fair hearing before a disinterested tribunal where, as here, there are material facts regarding discriminatory and retaliatory conduct and pretextual termination reasons underlying the challenged employment actions.

### C.  The Merit Board's Errors Require Reversal

As shown below, the Merit Board's decision should be reversed because serious errors deprived Plaintiff of a fair hearing and/or meaningful judicial review.

---

[6] For the Court's convenience, attached as Exhibit 1 are some publicly available records from the Illinois Board of Elections showing that at least four Merit Board members both contributed to Sheriff Dart's campaigns and signed off on the Merit Board's decision. (AR 28.)

1.    Refusing to Admit Material and Highly Relevant Evidence

The Merit Board erred in preventing Plaintiff from presenting highly relevant exculpatory evidence. Plaintiff was barred from presenting evidence of disciplinary actions taken against other employees for engaging in the same conduct, *e.g.,* unauthorized secondary employment and false statements about secondary employment. (AR 85-87). This evidence was relevant because, as a matter of due process, the Merit Board must take into consideration penalties imposed on other employees in similar situations process. *Fox v. Ill. Civ. Serv. Comm'n*, 66 Ill. App. 3d 381, 392 (1st Dist. 1978).

The evidence Plaintiff sought to admit established, among other things, that during the relevant time-period: (1) one employee received only a 30-day suspension for engaging in unauthorized secondary employment for a period of 9 years (!) which caused him to miss court appearances he was required to attend and for making false statements about secondary employment (AR 85-87); (2) CCSO officials determined that the punishment imposed—a 30-day suspension with options, meaning he could use benefit time to make up for lost pay—was "consistent with past practices" (AR 95); and (3) four employees received 40 and 45 day suspensions for engaging in off-duty misconduct, unauthorized secondary employment and falsifying reports. (*Id.*; AR 276.)[7] The evidence showed that employees in similar situations received much lesser penalties for far worse conduct and that the CCSO knew that seeking Plaintiff's termination was excessive and unjustified. (AR 95.)

---

[7] *Roman* was not decided at the time of Plaintiff's hearing, but its findings fully support and corroborate the evidence Plaintiff wanted to introduce to prove that termination was excessive based, in part, on the discipline other employees received. *Roman*, 2014 IL App (1st) 123308, ¶149.

The Merit Board sustained the CCSO's objections and excluded the evidence on meritless foundation and hearsay grounds.[8] (AR 654-59.) However, there is no legitimate foundation objection to admission of the evidence. Plaintiff obtained the evidence from the CCSO in discovery during the Merit Board proceedings. (AR 88.) The documents included the Merit Board's summary report showing cases before the Merit Board between January 1, 2007 and August 21, 2012, and OPR's investigation files and CCSO findings. (AR 93-291.) There is no legitimate foundation objection the CCSO could make to admission of the CCSO's own documents—the Merit Board's own report and CCSO's own investigation files and findings—that Plaintiff received in discovery from the CCSO. *See* Fed. R. Evid. 901; *Vulcan Golf L.L.C. v. Google Inc.*, No. 07 C 3371, 2010 WL 2363620, at *2 (N.D. Ill. June 9, 2010) (the "very act of production [is] implicit authentication."). There was no dispute the documents were what Plaintiff contended and showed what Plaintiff claimed.

Likewise, there was no basis to exclude the evidence as hearsay. The public record exception to the hearsay rule expressly permits the admission of this evidence as a record or statement of a public office if it sets out "the office's activities," "a matter observed while under a legal duty to report…" or "in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(8). Here, the documents Plaintiff sought to admit met these requirements. They reflected CCSO

---

[8] The evidence was material and highly relevant. Notably, the CCSO did not object to this evidence on relevance grounds, only on foundation and hearsay grounds. (AR 654.) Selective enforcement and disparate application of work rules and punishments are mitigating factors to be considered in determining whether discharge is supported by just and sufficient cause. *Fox*, 66 Ill. App. 3d at 392. In *Fox*, the Appellate Court considered that disciplinary action was not typically taken against employees for similar conduct. *Id*. The court asked, "[i]f it is not clear that the Department views [this conduct] as warranting discipline, how can this court arrive at that conclusion?" *Id*. Ultimately, the termination was overturned. *Id*. The Appellate Court reached a similar result for similar reasons in *Roman*.

"activities" and "factual findings from a legally authorized investigation." Further, the CCSO did not, and more importantly could not, show that the source of the information or other circumstances indicated a lack of trustworthiness of the documents because the CCSO generated them and produced them in discovery. (AR 88). As such, they should have been admitted and considered by the Merit Board. Fed. R. Evid. 803(8); *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1093 (N.D. Ill. 2015).

2.    The Merit Board's Vague Decision Precludes Meaningful Review

The Merit Board's decision should be reversed because it is so vague it precludes meaningful judicial review. Under state law and principles of due process, the Merit Board's decision "must contain findings to make possible a judicial review of the agency's decision." *Reinhardt v. Bd. of Educ. of Alton Comm. Unit School Dist.*, 61 Ill.2d 101, 103 (1975). The decision should contain a reasoned opinion containing basic findings and ultimate conclusions linked together by a coherent rationale. *Medina Nursing Ctr., Inc. v. Health Facilities & Servs. Review Bd.*, 2013 IL App (4th) 120554, ¶¶ 20, 24. The necessity of providing a sufficient statement of reasons is a "fundamental principle of administrative law." *Id*. Any inadequacy in the decision must be held against the Merit Board. *Roman*, 2014 IL App (1st) 123308, ¶¶ 81-82.

The Merit Board's decision is sufficiently vague to preclude meaningful judicial review in at least two ways. First, the Merit Board provided no factual support for the central premise of its decision that Plaintiff allegedly deliberately did not report his secondary employment when he was on IOD to receive both full disability benefits and secondary employment income. The Merit Board justified its decision based on what it said was the purported "egregiousness" of Plaintiff's conduct in receiving IOD benefits while maintaining secondary employment. (AR 27.) However, the Merit Board pointed to literally nothing to justify this finding. The evidence in the record contradicted the finding. Nolan testified that there was no rule precluding secondary employment

while on IOD.  (AR 437.)  No evidence was presented that Risk Management ever took action to change Plaintiff's IOD status or benefits based on his secondary employment, and Risk Management allegedly was the first to know about Plaintiff's employment while on IOD.  The mere fact that Plaintiff's medical work restrictions permitted sedentary desk work (like a small law practice or attending monthly board meetings), but not full-duty police work, is unsurprising given the physical requirements necessary for CCSO officers.  No facts or law was cited to show that Plaintiff's secondary employment impacted his eligibility for IOD benefits or the amount of IOD benefits he could receive (which it did not). The Merit Board's decision pointed to nothing for the vague conclusion that Plaintiff received IOD benefits he was not entitled to receive (which he did not).

The Merit Board concluded that Plaintiff deliberately disregarded the rules so he could collect IOD benefits and secondary employment income but pointed to nothing to support the conclusion that Plaintiff knew or should have known he needed to disregard secondary employment rules to collect IOD benefits.  Plaintiff cannot be lawfully terminated for receiving IOD benefits he was entitled to receive.

The fact of the matter is that Plaintiff's secondary employment made no difference in his eligibility to receive IOD benefits or the amount of benefits Plaintiff was entitled to receive (as the CCSO has now conceded (*see* Dkt. No. 398 ¶ 118), so Plaintiff had no reason to deliberately disregard secondary employment rules and, in any case,  he did not receive any IOD benefits he was not entitled to receive, which is the reason why: (a) Risk Management did not change Plaintiff's IOD status or benefits even after purportedly being the first to know that Plaintiff had secondary employment (AR 426-27); (b) the State's Attorney refused to file criminal charges against Plaintiff as the CCSO first requested; and (c) the CCSO presented no evidence to show

that Plaintiff received IOD benefits he was not entitled to receive or that his secondary employment impacted his eligibility for IOD benefits.

Nevertheless, the vague nature of the Merit Board's "egregiousness" conclusion precludes meaningful judicial review because this unsupported conclusion—the central premise upon which the whole decision rests—makes it impossible to show how the Merit Board erred as a matter of law (because the decision cites no law) or that its factual conclusion that Plaintiff deliberately broke secondary employment rules to receive benefits he was not entitled to receive is against the manifest weight of the evidence (because the decision points to no facts). The Merit Board's failure to articulate the bases for its opinion precludes meaningful review, requiring reversal of the decision. *Roman*, 2014 IL App (1st) 123308, ¶¶ 81-82.

Second, the Merit Board sustained charges that Plaintiff violated six CCSO Rules and Regulations without providing any basis for its findings.[9] How the Merit Board determined that Plaintiff violated these rules is entirely unclear as its written decision does not adequately assert what evidence it relied on, considered or rejected in making its findings.[10]

For example, the Merit Board found Plaintiff to have violated ROC 00-01-A.2 and ROC 00-01-A.12, which provide:

> Members will thoroughly familiarize themselves with the rules and procedures of the Department and the orders issued applicable to them. They will, upon return from any absence of any duration, familiarize themselves with all changes that may have taken place during such absence.

---

[9] The Merit Board found Plaintiff violated six rules: (1) ROC 00-01-A.2 "Knowledge of Rules, Orders, Procedures and Bulletins"; (2) ROC 00-01-A.4 "Communications and Correspondence"; ROC 00-01-A.11 "Absence Due to Injuries Received While on Duty"; (3) ROC 01-01-A.12 "Conduct Regarding the Performance of Duty"; (4) ROC 11-01-A.13 "Standard of Conduct"; (5) General Order 07-2 "Secondary Employment"; and (6) Merit Board Rules and Regulations, Article X, Paragraph B, which the Merit Board collectively referred to as "Board Rules." (AR 18-25.)

[10] To the extent the Merit Board did make any findings of fact or conclusions of law with respect to Plaintiff's alleged violations of specific Board Rules, such findings and conclusions were against the manifest weight of the evidence. *See* § p. 16-18, *infra*.

> Officers will read all General Orders issued to them. They will also read the special orders and training bulletins issued, paying particular attention to items having direct application to their assignments.

* * * * *

> It will be the responsibility of every member of the Department to familiarize themselves with the Rules, Regulations, Orders and Policies of the Department and to conform and abide by the same. Each officer must have a working knowledge of all laws and ordinances in force. Officers will observe all such laws and ordinances and render service to the County with courage, discretion and loyalty.

(AR 20-21.) Nowhere in the Merit Board's decision, however, is there any mention of any facts, evidence, or findings that relate to the violation of these rules or Plaintiff's knowledge of rules, orders, procedures and bulletins to discern a rational connection between the evidence and the Merit Board's decision. (AR 24-28).

Similarly, the Merit Board concluded that Plaintiff violated ROC 11-01-A.13, which provides, in relevant part:

> Members will conduct themselves on or off-duty in such a manner as to reflect favorably on the Department. Members will not engage in conduct which discredits the integrity of the Department or its employees or which impairs the operation of the Department.

(AR 21). The Merit Board does not articulate what evidence it considered to justify determining that Plaintiff engaged in such acts that reflected unfavorably on the CCSO, discredited the integrity of the CCSO and/or impaired the operation of the CCSO to violate the rule. (AR 24-28.) The Merit Board does not say how it reached this decision.

The Merit Board found that Plaintiff violated ROC 00-01-A.11 which states "absence because of injury received while on-duty will be treated individually according to the procedure adopted by the Cook County Board of Commissioners." (AR 20, 25.) The Merit Board's decision contains no mention of any evidence submitted or findings of facts regarding if or how Plaintiff

16

failed to comply with the "procedure adopted" let alone what specific procedure Plaintiff allegedly violated with respect to his absence from work at the CCSO because of his on-duty injury. (AR 24-28).

The Merit Board's decision leaves Plaintiff (and the Court) in the position of guessing what the Merit Board deemed relevant in deciding Plaintiff's case. *See Kozsdiy v. O'Fallon Bd. of Fire & Police Comm'rs,* 31 Ill. App. 3d 173, 177 (5th Dist. 1975). Here, the Merit Board failed to comply with its legal obligation to "articulate the bases of their action, showing a rational connection between the facts found and the choice made" to permit meaningful judicial review, and its decision must be reversed. *Roman*, 2014 IL App (1st) 123308, ¶ 81; *Medina*, 2013 IL App (4th) 120554 ¶ 27.

**D. The Findings of Fact are Against the Manifest Weight of the Evidence**

Any finding that Plaintiff violated CCSO rules is against the manifest weight of the evidence. *Walker,* 2015 IL App (1st) 140087, ¶ 37. "Even when the decision is supported by some evidence which, if undisputed, would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight." *Roman,* 2014 IL App (1st) 123308, ¶ 68.

1.  Alleged Unauthorized Secondary Employment

The Merit Board erroneously found that Plaintiff was not authorized to engage in secondary employment while receiving IOD benefits. (AR 27.)

Specifically, the evidence is that: (1) Plaintiff submitted secondary employment forms that were approved since 1997 when he first started working for the CCSO; (2) five separate witnesses (Plaintiff, Sgt. King, Ofc. Ruiz, Ofc. Garcia and Ofc. DeValle) testified that, in January 2009, while Plaintiff was on IOD recovering from his work injuries, Plaintiff specifically sought out and gave to his supervisor secondary employment forms for his part-time law practice and his public

service on the McHenry County Board and that those forms were signed and submitted through the chain of command; (3) Plaintiff was never informed that his ability to engage in secondary employment was not approved or revoked; and (4) in November, 2010, when Plaintiff was finally cleared to return to work and before he was informed of OPR's alleged "investigation," Plaintiff (again) submitted secondary employment forms for his part-time work as a lawyer and McHenry County Commissioner that were approved.[11]

The only evidence the CCSO presented to try to meet its burden of proof was the testimony of Nolan and Hemphill, but neither one was credible on the issue. For example, Nolan testified that she is responsible for maintaining secondary employment forms and that Plaintiff did not have any forms on file other than ones in 2008 and 2010, which obviously was false based on records Plaintiff obtained from the CCSO. Hemphill testified that Plaintiff had no secondary employment forms on file based on what he was told from Nolan's office (unsurprising based on Nolan's testimony, but still untrue information) and the CCSO police department (which Plaintiff's secondary employment forms signed by his supervisors, plus Sgt. King's testimony, show was also untrue information). Based on the record, this finding is clearly against the manifest weight of the evidence.

---

[11] While it is true that for a short period of time in 2010 while he was on IOD Plaintiff did not have a secondary employment form on file, this is the very type of trivial infraction that could never justify termination given evidence that: (a) Plaintiff submitted secondary employment forms in prior and subsequent years that were approved for the same work so he would have no reason believe they would not be approved; (b) Plaintiff's secondary employment would not impact his IOD status or his entitlement to benefits so he would have no reason to violate the rules; (c) Plaintiff did not receive any benefit he was not entitled to receive based on his secondary employment; and (d) the typical discipline for this conduct was, at most, a suspension. Moreover, given that the CCSO had the burden of proof, the evidence here is equally that Plaintiff reasonably believed he, in fact, had complied with CCSO rules because: (a) he turned in his forms in 2009 and reasonably believed were approved by Sgt. King; (b) he heard nothing further from the CCSO stating that his permission to work secondary employment was denied or revoked as is required by the rule; and (c) he was regularly interacting with Risk Management about his IOD claim and no issue was raised about his secondary employment, even after Risk Management learned about it.

### 2. Alleged Deliberate Conduct

The central premise of the Merit Board's decision and justification for upholding charges for termination is its vague conclusion that Plaintiff deliberately broke the rules so that he could improperly collect IOD benefits and secondary employment income. (AR 27.) To the extent this conclusion is not too vague to permit meaningful review (which it is, as discussed p. 13-17 *supra*), the evidence is entirely to the contrary. In particular, there was no evidence to show that Plaintiff believed he needed to disregard CCSO rules to collect full IOD benefits or that, in fact, Plaintiff's right to IOD benefits was impacted in any way by secondary employment.

The contention that Plaintiff was trying to sneak one past the CCSO by collecting IOD benefits while hiding his secondary employment is ludicrous. Plaintiff was not secretly working second jobs hidden from view—his law practice was open for business; he had a website for his law firm; he was elected to serve in public office; and he was attending public board meetings. The idea that Plaintiff would jeopardize his entire law enforcement, legal and political career by trying to keep his public secondary employment hidden only from the CCSO when, as the evidence showed, unauthorized secondary employment typically resulted in, at most, a suspension for a few days, defies common sense. The undisputed fact that in 2010 Plaintiff voluntarily submitted secondary employment forms (that were approved) *before* he knew he was being investigated by OPR, and while his workers' compensation case was still open and pending, shows conclusively that Plaintiff in no way deliberately trying to hide his secondary employment and had no intent to deceive the CCSO. As a result, this finding is also against the manifest weight of the evidence.

### 3. Alleged False Statement to OPR

The Merit Board found that Plaintiff falsely told OPR investigators that he had secondary employment requests on file for his part-time law practice. (AR 27.) As discussed above, the evidence is that this statement was not false or, at the very least, not intentionally untrue. *See* p.

2, 5-6, *supra*. The undisputed evidence proved that Plaintiff had secondary employment forms for his law practice on file in 2004, 2005, 2006, 2007, 2008 and 2010. Plaintiff introduced substantial, corroborated and unrebutted evidence that he had secondary employment forms on file for 2009 or, at the very least, reasonably believed he had secondary employment forms on file for 2009 and reasonably believed he had complied with CCSO rules. *See* n. 11, *supra*. Indeed, as stated above, the evidence is that Plaintiff had no reason to provide false information about secondary employment, *e.g.,* he had no reason to believe his requests would be denied, he had no reason to believe his IOD benefits would be changed, and he had no reason to think he would face harsh punishment. The Court can and should take judicial notice of the troubling questions raised about the conduct of the CCSO who conducted Plaintiff's interview, which further corroborates Plaintiff's evidence. *Walker*, 2015 IL App (1st) 140087, ¶ 22. As a result, for these reasons, this finding is against the manifest weight of the evidence.

### 4. Alleged Violations of Other General Orders

As noted above, the Merit Board decided that Plaintiff violated rules without providing any specific bases for its conclusions. *See* p. 15-17, *supra*. For the same reasons stated above, these findings were against the manifest weight of the evidence.

### 5. Alleged Driving Contrary to Medical Restrictions

The Merit Board claimed Plaintiff engaged in misconduct by obtaining mileage reimbursement from McHenry County for the few board meetings he attended while on IOD. The Merit Board claimed this was improper because Plaintiff was under medical driving restrictions, but the record clearly establishes that there were no such driving restrictions imposed on Plaintiff, which is perhaps why the CCSO did not bring charges against Plaintiff for non-compliance with

his medical restrictions while on medical leave.[12]  Even if he did, being able to drive is not equivalent to being cleared for police work, and there is no dispute that Plaintiff was not medically cleared for full-duty police work until November 2010.

### E. The Decision to Uphold Termination was Arbitrary and Capricious

The Merit Board's decision to uphold termination was arbitrary, capricious, based on trivial allegations, excessive, and unrelated to the requirements of service.

As noted above, "while the findings of an administrative agency on questions of facts are *prima facie* true and correct, this is not so as to its findings of cause." *Caliendo v. Goodrich*, 34 Ill. App. 3d 1072, 1075 (1st Dist. 1975); *Austin v. Civil Serv. Comm'n*, 247 Ill. App. 3d 399, 404 (1st Dist. 1993). In order for discharge to be "for cause," an employee must commit "some substantial shortcoming which renders continuance in employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his no longer occupying the position." *Fantozzi v. Bd. of Fire and Police Comm'rs*, 27 Ill.2d 357, 360 (1963); *Malinowski v. Cook Cty Sheriff's Merit Bd.*, 395 Ill. App. 3d 317, 322 (1st Dist. 2009). "The question is whether, in view of the circumstances presented, this court can say that the [agency], in opting for discharge, acted unreasonably or

---

[12] At the hearing, the CCSO tried but failed to prove that Plaintiff was driving improperly while on IOD because Plaintiff had no driving restrictions that he violated.  The evidence was: (1) in October 2008, Plaintiff's treating physician recommended he refrain from driving because he was wearing a neck brace and his neck was fragile (AR 517-18, 523-24); (2) in December 2008, Plaintiff was able to remove his neck brace and improve the range of motion in his neck (*id*. at 540); (3) in January 2009, Dr. Salehi, a non-treating physician hired by Risk Management to defend against Plaintiff's workers' compensation case, recommended that Plaintiff should refrain from driving until Plaintiff's physical therapist felt his range of motion was adequate for driving (*id*. at 542); (4) Dr. Salehi, Risk Management's doctor, never told Plaintiff he was restricted from driving (*id*. at 632); (5) in January 2009, the CCSO hired a private investigator to conduct surveillance to determine if Plaintiff was driving (*id*. at 462-64, 468); (6) the investigator first observed Plaintiff driving in February 2009 (*id*. at 468); (7)  Plaintiff testified he began driving in February 2009 (*id*. at 543); (8) Plaintiff had no medical restrictions that prohibited him from driving (*id*. at 587-88); (9) in May 2009, Plaintiff informed Dr. Salehi that he began driving in February 2009 when he regained some range of motion back in his neck (*id*. at 618, 625); and (10) in Dr. Salehi's opinion, there was nothing wrong with Plaintiff driving in February 2009. (*id*. at 620-22).

arbitrarily or selected a type of discipline unrelated to the needs of the service." *Sutton v. Civil Serv. Comm'n*, 91 Ill.2d 404, 413 (1982). Although an agency has broad discretion in determining what constitutes a proper cause for discharge, the discharge must be based upon substantial misconduct or incapacity which "does not include conduct which is so trivial as to be unreasonable and arbitrary." *Holden*, 324 Ill. App. 3d at 868. Indeed, a finding that an officer violated police department rules does not, standing alone, empower a board to terminate that officer. *Burgett v. Collinsville Bd. of Fire and Police Comm'rs*, 149 Ill. App. 3d 420, 423 (5th Dist. 1986). A finding of cause for discharging an employee should be overturned if it is arbitrary and unreasonable and "unrelated to the requirements of service." *Walsh*, 96 Ill.2d. at 105. This analysis requires a determination of whether the findings of fact provide a sufficient basis for the conclusion that cause for discharge does or does not exist. *Bell v. Civil Serv. Comm'n*, 161 Ill.App.3d 644, 649 (1st Dist. 1987). A court sitting in administrative review has the power to reverse a penalty and remand the case. *See* 735 ILCS 5/3-112.

### 1. Arbitrary & Capricious: Lesser Penalties Given to Other Employees

As discussed above, the Merit Board decided to uphold charges for termination against Plaintiff, while the record shows, in the past, employees who engaged in far worse violations of the secondary employment rules and provided untrue statements to OPR received only suspensions. *See* p. 11, *supra*; *Roman*, 2014 IL App (1st) 123308, ¶¶ 149-52. Even assuming, *arguendo* Plaintiff did engage in unauthorized secondary employment and/or provided a false statement, the decision to uphold charges for termination is excessive based on past practice of discipline. Moreover, the Merit Board entirely failed to consider Plaintiff's exceptional career of service and spotless disciplinary history. The selective enforcement, together with Plaintiff's

venerable career of service, lack of prior discipline, and specialized, elite skills, should have been considered mitigating factors in selecting the penalty, as in *Fox*. 66 Ill. App. 3d 381, 392.

In summary, there is no discernible basis in the record for the Merit Board's decision to uphold such harsh discipline. Accordingly, the decision should be reversed.

2.     <u>Arbitrary & Capricious: Excessive and Unrelated to Service Requirements</u>

The Illinois Supreme Court has emphasized that discipline is for sufficient cause if the underlying misconduct involves some substantial shortcoming rendering continued employment detrimental to the employer, that is, that discipline is necessitated by the requirements of service in the force. *Fantozzi*, 27 Ill.2d 357 at 360. The conduct must be something which "the law and sound public opinion recognize as good cause" for termination. *Id*. As discussed in part above, the Merit Board failed to give any meaningful explanation for its decision to uphold termination.

If there is a general statement of the rule regarding whether discipline is supported by just and sufficient cause, it is perhaps that the evidence must show that the misconduct is "sufficiently substantial or so significantly related to the performance" of duties as to demand it. *Kreiser v. Police Bd. of the City of Chicago*, 40 Ill. App. 3d 436, 441-442 (1st Dist. 1976). Courts have found cause for discipline on proof that the officer's actions worked substantial interference with the operations of the office, such as leaving an assigned post without permission and refusing to work, *Launius v. Bd. of Fire & Police Comm'rs*, 151 Ill.2d 419, 445 (1992), or where the misconduct undermined public confidence in the police force, *Jones v. Civil Serv. Comm'n*, 80 Ill. App. 3d 74, 76 (5th Dist. 1979). Courts will not uphold discipline where it is supported by allegations that are so trivial as to be unreasonable. *Fornuto v. Police Bd.*, 38 Ill. App. 3d 950, 957-58 (1st Dist. 1976); *see also, Kreiser*, 69 Ill.2d at 30 (factual findings that officer gave a false oral report to his superior were not "sufficiently substantial or related to the performance of the plaintiff's duties to call for

the maximum sanction of discharge."); *Christenson v. Bd. of Fire & Police Comm'rs of City of Oak Forest*, 83 Ill. App. 3d 472, 477 (1st Dist. 1980) (findings that an officer used a police vehicle without authority for personal business, knowingly gave a false statement, and omitted facts intending to mislead an investigator, did not amount to "substantial misconduct as to warrant the ultimate sanction of discharge").

Here, there is no evidence showing that Plaintiff was deficient in the performance of his duties for any reason related to his IOD status or his secondary employment. There is no evidence that the operations of the CCSO were impaired or impacted in any way by Plaintiff's secondary employment. There is no evidence that Plaintiff received any benefits he was not entitled to receive from his on-duty injury. There is no evidence that public confidence in the CCSO was at all undermined. It defies belief that "good public opinion" would find that working secondary employment—in service to the public, no less—should warrant such a harsh penalty as the one imposed here. *See Fantozzi*, 27 Ill.2d 357 at 360. There was also no evidence showing how there was a nexus between the alleged secondary employment and the workplace. There was no evidence that Plaintiff was on duty, or supposed to be on duty, at a time when he was allegedly working secondary employment.

In an effort to validate such a harsh punishment that is grossly disproportionate to other punishments imposed on other employees for the same conduct, the Merit Board claimed the "egregiousness of [Plaintiff's] acts set this matter apart from others" because Plaintiff "maliciously breached" the public trust of "not just the taxpayers of Cook County but also the public trust of the taxpayers of McHenry County" by lying to the CCSO and OPR "so to continue looting Cook County taxpayers by continuing to receive temporary disability checks from the Insurance Fund while getting paid as an attorney and while getting paid as a McHenry County Commissioner."

(AR 28.) Despite such exacting retort, as stated above, there is absolutely nothing in the record to indicate that Plaintiff asked for or received any benefits to which he was not entitled during the relevant time period. Nor is there any evidence that Risk Management ever sought to revoke or change Plaintiff's injury status or claimed he was not entitled to IOD benefits because he was working secondary employment.

Further, even if Plaintiff did not have proper authorization to work secondary employment, there is nothing to indicate that Plaintiff's application for secondary employment would have been denied while he was on IOD as there is nothing in the General Orders or rules that prohibit an officer from working secondary employment while on IOD. (AR 437). Accordingly, the Merit Board's purported reasoning for terminating Plaintiff is beyond unfounded. Accordingly, the decision should be reversed.

### V. **CONCLUSION**

For the forgoing reasons, the Merit Board's decision should be reversed and Plaintiff should be reinstated with full back pay and benefits.

Respectfully submitted,

/s/ Jeffrey R. Kulwin
One of the attorneys for Robert Bless

Jeffrey R. Kulwin
Rachel A. Katz
KULWIN, MASCIOPINTO & KULWIN, LLP.
161 N. Clark Street, Suite 2500
Chicago, IL 60601
312-641-0300

**CERTIFICATE OF SERVICE**

I, Jeffrey R. Kulwin an attorney, hereby certify that I caused copies of this pleading to be served on all counsel of record by electronically filing this document with the Clerk of the Court using the ECF system on November 12, 2019.

By: _/s/ Jeffrey R. Kulwin_

Jeffrey R. Kulwin

Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, LLP
161 N. Clark Street, Suite 2500
Chicago, Illinois 60601
312.641.0300 (Tel.); 312.855.0350 (Fax)
jkulwin@kmklawllp.com