## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BLESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13 CV 4271 |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE; | ) | Judge John Z. Lee |
| TOM DART in his official and | ) | |
| individual capacity; DEWAYNE | ) | |
| HOLBROOK; JOSEPH WAYS, SR.; | ) | |
| ZELDA WITTLER; SHERYL COLLINS; | ) | |
| EDWARD DYNER; HENRY HEMPHILL; | ) | |
| ROSEMARIE NOLAN; COOK COUNTY | ) | |
| SHERIFF'S MERIT COMMISSION; | ) | |
| COOK COUNTY, a unit of local | ) | |
| government, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Bless alleges that the Cook County Sheriff's Office ("Sheriff's Office") fired him because he is a white Republican. More specifically, he brings a reverse race discrimination claim against all Defendants under 42 U.S.C. § 1983 (Count I) and against the Sheriff's Office under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count V), along with a First Amendment retaliation claim (Count III) against all Defendants under § 1983. He also urges the Court to review the Cook County Sheriff's Merit Commission's ("Merit Board") decision to terminate him (Count IV), see 735 Ill. Comp. Stat. 5/3-102.

Defendants have moved for summary judgment as to Bless's § 1983 and Title VII claims. At the same time, Bless has asked the Court to set aside the Merit Board's

decision. The Court addresses Defendants' summary judgment motion here; it analyzes the administrative review claim in an accompanying order. For the reasons below, Defendants' motion for summary judgment is granted.

## I.    Background[1]

### A.    Factual Background

From 1997 to 2013, Bless served as a patrol officer with the Sheriff's Office. Defs.' LR 56.1(a) Stmt. ("Defs.' SOF") ¶¶ 1, 15, ECF No. 424. In 2004, Bless passed the bar exam and started his own law firm while remaining employed as a police officer. *Id.* ¶¶ 17, 18. Bless requested approval from the Sheriff's Office to engage in secondary employment as an attorney, and he received it through 2008. *Id.* ¶¶ 54–55.

That September, Bless suffered serious injuries as a result of a car accident that occurred while he was on duty. *Id.* ¶¶ 23–26. For the next two years, he collected temporary total disability payments. *Id.* ¶ 26. Soon after he went on disability leave, he was elected to serve as a McHenry County Commissioner, an office he campaigned for and held as a Republican.[2] *Id.* ¶ 19.

---

[1]    The following facts are undisputed except where noted. Any properly supported fact that a party disputes without "providing specific references to the affidavits, parts of the record, and other supporting materials relied upon," LR 56.1(b)(3)(B), is deemed admitted. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015).

[2]    During the campaign, Bless hosted events that he contends were attended by unspecified Sheriff's Office employees, Pl.'s Stmt. Additional Facts ("SOAF") ¶ 85, ECF No. 442. His campaign also was covered in a newspaper article and the McHenry County Blog—both of which indicated that Bless is a Republican, *see generally* Pl.'s Ex. 51, Candidate Profile, ECF No. 449-51.

Although Bless was paid to serve as a County Commissioner, he initially neglected to obtain approval to engage in that secondary employment. *Id.* ¶ 50. Indeed, while the parties contest whether Bless submitted any request forms during his leave, it is clear that he did not secure approval for employment as a lawyer or a Commissioner until November 23, 2010, shortly after he returned to work as a police officer.[3] Pl.'s Resp. Def.'s LR 56.1 Stmt. ("Pl.'s RSOF") ¶ 53, ECF No. 442; Pl.'s SOAF ¶¶ 100, 104.

Even though he was on disability leave from his police department job in March 2009, Bless felt well enough to drive his car to work as a County Commissioner and as an attorney.[4] Defs.' SOF ¶ 35. This was discovered as a result of an investigation initiated by the Cook County Department of Risk Management ("Risk Management"), a group that administers the Office's benefits.[5] *Id.* ¶¶ 36–43.

Shortly thereafter, Risk Management notified Defendant Rosemarie Nolan, Personnel Director for the Sheriff's Office, *id.* ¶ 10, that Bless was on Injured on Duty ("IOD") status, that he was driving despite that classification, and that he was working as a Commissioner and lawyer. *id.* ¶ 44. Nolan is Caucasian, *id.* ¶ 10, and

---

[3]     Although Bless concedes that he did not request approval to work as a Commissioner until November 2010, see Pl.'s RSOF ¶ 53, he later contradicts that admission by asserting that he submitted request forms in January 2009, see Pl.'s SOAF ¶ 100.

[4]     According to Bless, he asked to return to work at the police department in a light-duty capacity, but no assignments were available at the time. Pl.'s RSOF ¶¶ 101–03.

[5]     Bless questions the relevance of this investigation. *See* Pl.'s RSOF ¶¶ 38–43 (citing Fed. R. Evid. 403). But Risk Management's findings are relevant because they shed light on Defendants' reasons for firing Bless. This objection is thus overruled.

has supported Democrats for political office, including Sheriff Dart, Pl.'s SOAF ¶ 135.)

In turn, Nolan sent a memorandum to Defendant Joseph Ways, Executive Director of the Sheriff's Office's Office of Professional Review ("OPR"), Defs.' SOF ¶ 5, relaying this information and telling Ways to take whatever action he deemed appropriate. *Id.* ¶ 45. Ways also is Caucasian and identifies as a Republican. *Id.* ¶ 5; Pl.'s Ex. 2, Ways Dep., 4, 307, ECF No. 450-1.)

At around the same time, Risk Management also advised Defendant Dewayne Holbrook, Chief of Police for the Sheriff's Office's Police Department, *id.* ¶ 7, that Bless was driving and working two additional jobs even though he was on IOD status. *Id.* ¶ 47. Holbrook is African-American, *id.* ¶ 7, and he has supported Sheriff Dart for political office, Pl.'s SOAF ¶ 138.

Within a week, Holbrook wrote a memo to Ways stating that his office had been informed that Bless was working secondary jobs, but had filed no secondary employment request forms. Defs.' SOF ¶ 47. Holbrook was required to report this information to OPR, which is responsible for investigating wrongdoing by Sheriff's office employees. *Id.*

Based on the information provided by Holbrook, OPR commenced an investigation. *Id.* ¶ 48. Defendant Sheryl Collins, who is African-American and a political supporter of Sheriff Dart, Pl.'s SOAF ¶ 144, acted as the lead investigator. Defs.' SOF ¶ 49. She was assisted by Defendant Henry Hemphill. Defs.' SOF ¶ 49.

Hemphill also is African-American and had supported certain Democratic political candidates. Pl.'s SOAF ¶ 145.

As part of its investigation, OPR determined that there were no records of secondary employment requests (or approvals of those requests) for Bless for the period covering January 31, 2009, to December 9, 2010, even though he was working two other jobs. Defs.' SOF ¶¶ 50, 56. When Collins and Hemphill interviewed Bless, he told them he had submitted a request form for that time, which they interpreted as a lie. *Id*. ¶¶ 51, 60, 61. Bless retorts that he had submitted forms by the time of the interview and that the Sheriff's Office lost them. Pl.'s Resp. Def.'s LR 56.1 Stmt. ("Pl.'s RSOF") ¶ 51, ECF No. 442. OPR initially had pursued the matter as a criminal investigation, but the State's Attorney's Office declined to file charges. Pl.'s SOAF ¶ 106.

Ways, Holbrook, and Defendant Zelda Whittler, Undersheriff of the Sheriff's Office, reviewed and affirmed OPR's findings. Defs.' SOF ¶ 57. Whittler is African-American, *id*. ¶ 4, and has made campaign contributions to Democrats, including Sheriff Dart, Pl.'s SOAF ¶ 137.

Acting on behalf of the Sheriff's Office, Whittler filed a complaint against Bless with the Merit Board on October 6, 2011. Defs.' SOF ¶ 60. The Board is charged with conducting hearings on serious disciplinary matters involving Sheriff's Office police officers, and it has the exclusive authority to make findings of guilt and to order termination. *Id*. ¶ 11.

While the Board was reviewing his case, Bless returned to work as a police officer. Pl.'s SOAF ¶ 103. Bless typically had worked the day shift in Rolling Meadows, relatively close to where he lived. *Id.* ¶¶ 121–22. But, shortly after his return from leave, he was assigned to the night shift near the Markham Courthouse, far from his home. *Id.*

Approximately two years after the initiation of its proceedings against Bless, the Board issued its decision. *Id.* ¶¶ 60–61. After conducting three days of hearings and listening to testimony from ten witnesses, the Board determined that Bless had engaged in unauthorized secondary employment, had violated his doctors' orders against driving, and had lied to OPR investigators about submitting a secondary employment request. *Id.* Based upon those reasons, the Board directed the Sheriff's Office to fire Bless. *Id.*

## B. Procedural History

Convinced that the investigation and subsequent firing were motivated by his race and political views, Bless filed this lawsuit. *See generally* 3d Am. Compl., ECF No. 140. At the outset, the Court vacated the Merit Board's decision based upon a ruling by an Illinois appellate court that the Board was illegally constituted. *See* 7/19/2018 Order at 9, ECF No. 352 (citing *Taylor v. Dart*, 81 N.E.3d 1 (Ill. App. Ct. 2017)). Shortly thereafter, another Illinois appellate court limited *Taylor* to its facts. *See Lopez v. Dart*, 118 N.E.3d 580, 594–95 (Ill. App. Ct. 2018). Because of that change in Illinois law, the Court reconsidered its prior ruling and reinstated the Merit Board's decision. *See* 9/12/2019 Order at 23, ECF No. 414. Defendants then filed the

motion for summary judgment that is now before the Court. *See* Mot. Summ. J., ECF No. 422.

## II.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). The Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

## III.    Analysis

### A.    Section 1983 First Amendment Retaliation Claim against Defendants Sued in their Individual Capacities

Bless first argues that the Defendants sued in their individual capacity ("individual Defendants") advocated for his termination because he is a Republican.

7

"To make out a *prima facie* claim for a violation of First Amendment rights, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was at least a motivating factor in the employer's actions." *Yahnke v. Kane Cty.*, 823 F.3d 1066, 1070 (7th Cir. 2016) (citation omitted).

If a plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to show that the harm would have occurred anyway." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). If the defendant makes that showing, "the burden [of production] shifts back to the plaintiff to demonstrate that the proffered reason was a mere pretext and that the real reason was retaliatory animus." *Thayer v. Chiczewski,* 705 F.3d 237, 252 (7th Cir. 2012). To do so, the employee must "prove that a defendant's proffered justification is unworthy of credence by 'providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate' the employment action.'" *Yahnke*, 823 F.3d at 1071 (quoting *Carter v. Chi. State Univ.*, 778 F.3d 651, 659 (7th Cir. 2015)).

Here, Defendants concede that Bless's political expression as a Republican is protected by the First Amendment. *See id.* at 1070 (citing *Branti v. Finkel*, 445 U.S. 507, 516–17 (1980)). And it is clear that dismissal is the sort of deprivation likely to deter the exercise of First Amendment rights. *See id.* (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 73–74 (1990)). To be sure, the Court's accompanying order vacates the Merit Board's discharge decision. Still, even if the Board reinstates Bless

8

on remand, his 2013 firing—accompanied by a loss of pay and other benefits—may well discourage political expression. *See Rutan*, 497 U.S. at 74 (observing that the prospect of lost pay, benefits, or promotions may deter the exercise of First Amendment rights); *see, e.g.*, *Molnar v. Booth*, 229 F.3d 593, 600–01 (7th Cir. 2000) (finding, in the Title VII context, that "[t]he mere fact that the [adverse employment action] was reversed more than six months later . . . does not diminish its importance"). Thus, the only element at issue is whether Defendants' efforts to terminate Bless was because of his political affiliation.[6]

### 1. Motivating Factor

Defendants maintain that Bless has presented insufficient evidence to prove that any of them were even aware of his political affiliation, much less that it motivated them to promote his firing. In response, Bless advances two arguments.[7] First, as to Defendants' awareness of his political affiliation, he contends that they must have realized that he was a Republican—if not during his campaign, then at least during Risk Management's investigation. Pl.'s Resp. at 15–17. Second, as to

---

[6]    It is undisputed that the Merit Board—which is not a Defendant to the § 1983 claims—ultimately decided to terminate Bless's employment. But Defendants have made only a perfunctory argument that this would insulate the individual Defendants from liability. *See* Defs.' Mem. Supp. at 16, ECF No. 423 (raising this argument without citing any supporting authority). For the purpose of Defendants' motion for summary judgment, the Court assumes (without deciding) that the individual Defendants' role in the investigation is enough for them to be held liable.

[7]    Bless also observes that several Merit Board members (including the person who presided over the hearing) "financially supported Sheriff Dart and Democratic candidates." Pl.'s Resp. at 21, ECF No. 449; *see* Pl.'s SOAF ¶ 143. But, as the Seventh Circuit has recognized, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004).

Defendants' motivation, Bless makes much of the timing of the investigation, which began a few months after he was elected as a Republican Commissioner. *Id*. at 18–20. In the same vein, Bless argues that the individual Defendants stalled the investigation for over a year and only restarted it after the Cook County Sheriff's Office was dismissed from the "*Shakman* decree." *Id*. at 23–25; *see* Pl.'s RSOF ¶ 84.[8]

But even if the individual Defendants knew about Bless's political affiliation, no reasonable jury could conclude based upon this record that his political views motivated the investigation. In fact, the record reveals several other reasons why OPR thought fit to initiate the investigation. For example, it is undisputed that Bless acted as a McHenry County official and as an attorney without first obtaining approval to do so, contrary to the Sheriff's Office's policy. Def.'s SOF ¶ 50.

For his part, Bless's primary argument is that Risk Management's investigation began shortly after his election to county office. But "evidence regarding suspicious timing alone, without more, is generally insufficient to support a reasonable inference of retaliation." *Harper v. C.R. England, Inc.*, 687 F.3d 297,

---

[8]     By way of background, in 1969, *Michael L. Shakman, et al. v. Democratic Organization of Cook County, et al.*, Case No. 69 C 2145, was filed in federal court. In 1972, multiple government entities, including Cook County, entered a consent decree to resolve the lawsuit. The consent decree prohibited Cook County from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." Another consent decree was entered in 1994 that covered various hiring practices. These consent decrees are commonly referred to as the "Shakman Decrees." *See* http://www.countyshakman.com/background.htm (last visited on Feb. 23, 2020).

In September 2008, a federal monitor was appointed to review the Sheriff's Office employment actions, including the OPR's investigation practices. Pl.'s SOAF ¶ 84. On December 2, 2010, the court entered an order finding the Sheriff's Office to be in "substantial compliance" and dismissed the case as to the Sheriff's Office on January 31, 2011. *Shakman*, Case No. 69 C 2145, ECF No. 1984.

309 (7th Cir. 2012). Besides, months passed between Bless's November 2008 election victory and the start of the investigation in February 2009. *See* Defs.' SOF ¶ 36; Pl.'s SOAF ¶ 85. That delay undermines the inference that Bless's election prompted Defendants to investigate him. *See, e.g., Kelly v. Mun. Courts of Marion Cty., Ind.,* 97 F.3d 902, 912 (7th Cir. 1996) (concluding that a "four-month delay . . . seems to undercut any inference that [the employee's conduct] was a substantial or motivating factor in [the employer]'s decision to fire him").

As for the fact that the investigation began after changes to the *Shakman* Decrees, Bless fails to explain why that matters.[9] This argument thus is waived. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman–Spencer Agency, Inc.,* 845 F.3d 313, 321 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). In any event, to the extent Bless implies that Defendants delayed discriminatory conduct until the Sheriff's Office was no longer subject to the *Shakman* Decrees, that theory is implausible given that the investigation began in 2009, more than a year before the Office was dismissed in the *Shakman* case.

---

[9]    Bless offers a more thorough argument about the *Shakman* decree to press his argument that the municipal Defendants had a widespread custom or practice of political retaliation. *See* Pl.'s Resp. at 23–35. But because Bless has failed to make out a *prima facie* First Amendment retaliation claim, the Court sees no reason to reach his *Monell* claim. *See Horton v. Pobjecky,* 883 F.3d 941, 954 (7th Cir. 2018) ("[A] municipality cannot be liable under *Monell* where there is no underlying constitutional violation by a municipal employee.")

In sum, because Bless has failed to establish that the individual Defendants were motivated by political animus when they initiated the investigation of his secondary jobs, he has not made out a *prima facie* First Amendment retaliation claim.

## 2.    Pretext

Even assuming, *arguendo*, that Bless were able to establish a *prima facie* case, Defendants would still be entitled to summary judgment because he cannot show that their stated reasons for firing him were pretextual.  To demonstrate that Bless would have been fired anyway, Defendants point out that the Merit Board ordered Bless's termination because it found that he: (1) had violated secondary employment rules, (2) regularly had driven his car despite medical restrictions to do so as part of his leave, and (3) had lied to OPR investigators.  Defs.' SOF ¶ 61.[10]

In response, Bless casts the Board's justifications as pretext for retaliatory animus.  *See* Pl.'s Resp. at 9.  For this argument to succeed, Bless must raise triable issues of fact as to all the stated rationales for terminating his employment.  *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001) (citation omitted); *see Hudson v. Chi. Transit Auth.,* 375 F.3d 552, 561 (7th Cir. 2004) ("Where a defendant has proffered

---

[10]    Bless criticizes this summary of the reasons for his termination as "misleading and incomplete."  Pl.'s RSOF ¶ 61.  In support, Bless directs the Court to his memorandum in support of his prior motion to reverse the Merit Board's decision, but fails to cite a particular page in that memorandum or any facts in the record.  *See id*. (citing Pl.'s Mem. Supp. Admin. Review, ECF No. 291).  Because a party disputing a factual statement must "provid[e] specific references to the affidavits, parts of the record, and other supporting materials relied upon," *see* LR 56.1(b)(3)(B), Defendants' assertion as to the stated reasons for termination is deemed admitted.  *See, e.g., Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015).  In any event, as we shall see, the record contains no support of this theory.

more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons.").

First, Bless insists that the decision to terminate his employment was predicated on a baseless finding that he "deliberately violated secondary employment rules so that he could receive workers' compensation benefits to which he might not have been entitled." Pl.'s Resp. at 9. Bless then goes on to argue that he was entitled to disability benefits under the Workers' Compensation Act. *See id.* But that argument misses the point. The reason Bless was fired is not that he was trying to obtain worker's compensation benefits to which he was not entitled, but that he earned compensation from unauthorized second jobs while *also* collecting total disability benefits.[11] Accordingly, Bless's qualifications for benefits says little about whether retaliatory animus motivated his dismissal. *See Yahnke*, 823 F.3d at 1071.

Second, Bless suggests that he was not restricted from driving while on disability leave from the Sheriff's Office and that, because the investigation began in large part because he was driving while on leave, this stated reason for starting the investigation and terminating him was pretext for political motivation. Pl.'s RSOF ¶¶ 31–35. As Bless sees it, a physician hired by Cook County Risk Management advised him to refrain from driving, but no one ever told him that he would face employment consequences if he chose to do so. *Id.* ¶¶ 29–34.

---

[11]    To the extent that Bless argues that his termination was based entirely on this reason, that is inaccurate. *See* Defs.' SOF ¶ 61.

However, even drawing all inferences in Bless's favor, the most that he has demonstrated is that Defendants may have misinterpreted his doctor's order and erroneously believed that Bless should not be driving to or from work. That falls far short of demonstrating that Defendants' actions against Bless were motivated by retaliatory animus. *See, e.g., Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006) ("Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair.").

Third, Bless submits that the Merit Board's determination that he lied to OPR investigators about having submitted secondary employment forms in 2009 was pretextual because, according to Bless, he did file those forms.[12] As the Court explains in the accompanying order, the administrative record does show that Bless had submitted a request form in 2009 regarding employment as an attorney (although he never did received approval for it). And so, the Board's conclusion that Bless had lied was erroneous. However, a mistaken conclusion is not equivalent to "a phony excuse." *Hudson*, 375 F.3d at 561. Indeed, the record is devoid of any evidence that the Board's finding was the product of bad faith. *See Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389–90 (7th Cir. 2020) (holding that pretext is "not

---

[12]     Bless also cites *Walker v. Dart*, where an Illinois appellate court noted that "testimony at the [Merit Board] hearing showed that plaintiff was repeatedly interrupted and threatened by Hemphill during [an] interview." 30 N.E.3d 426, 439 (Ill. App. Ct. 2015). But *Walker* does not "corroborate" Bless's evidence. Pl.'s Resp. at 13. Unlike the *Walker* plaintiff, Bless has not alleged that Hemphill threatened him—or engaged in any other misconduct—during the interview.

just faulty reasoning or mistaken judgment . . . it is a lie, specifically a phony reason")
(citation and internal quotation marks omitted). Regardless, even if Bless could
convince a jury to disbelieve this justification, he has failed to cast doubt on
Defendants' other grounds for firing him.[13]

As a fallback position, Bless suggests that even if he had committed these
infractions, they would not justify dismissal. Under some circumstances, "grossly
excessive" punishment may "cast[ ] doubt on [an employer]'s true motive." *Stalter v.
Wal-Mart Stores, Inc.*, 195 F.3d 285, 290 (7th Cir. 1999). But the Seventh Circuit has
only endorsed this argument in unusual circumstances, such as when an employer:
(1) "change[s] its story" about why the employee was fired, *id.* at 291, (2) adopts an
"unpersuasive interpretation of its [own] code", *Williams v. Bristol-Myers Squibb Co.*,
85 F.3d 270, 275 (7th Cir. 1996), or (3) has a history of imposing minimal discipline
for similar offenses, see *Stalter*, 195 F.3d at 290–91.

This case does not fit into any of those categories. Defendants have
consistently offered the same explanations for Bless's termination; they embrace a
plausible reading of the secondary employment rules; and, as detailed below, Bless
has failed to identify a comparable employee who received milder punishment. As
such, the Board's decision to discharge Bless is not so "grossly excessive" as to cast
doubt on the reasons for that decision. *Id.* at 290.

In sum, Bless has not established a *prima facie* case of First Amendment
retaliation and has not made a sufficient showing that the stated reasons for firing

---

[13]    In addressing Bless's administrative review claim, the Court sustained the Board's
other factual findings. *See* 8/3/2020 Order, ECF No. 467.

him were pretextual. *See, e.g., Guerrero*, 253 F.3d at 313. Thus, the individual Defendants' motion for summary judgment as to this claim is granted.

**B.     Race Discrimination Claim Against Defendants Sued in their Individual Capacities under § 1983 and Against Sheriff's Office under Title VII**

Bless also raises a reverse race discrimination claim against the individual Defendants under 42 U.S.C. § 1983 and against the Cook County Sheriff's Office under Title VII. Employment discrimination claims brought under Title VII and § 1983 are governed by the same legal standards. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004); *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). To support those claims, Bless must show that the evidence, considered as a whole, would permit a reasonable fact finder to conclude that his race caused his termination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "One of the ways—though not the exclusive way—that [Bless] can make this showing is by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *See Johnson v. Chi. Transit Auth.*, No. 14 C 9432, 2017 WL 1105446, at *2 (N.D. Ill. Mar. 24, 2017) (citing *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)).

"In a 'reverse discrimination' case, *McDonnell Douglas* asks the plaintiff to make a *prima facie* case of discrimination by establishing that: '(1) background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites . . . or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate

16

performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class.'" *Id.* (quoting *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016)).

"If the plaintiff establishes these *prima facie* elements, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citing *Formella*, 817 F.3d at 511). "In turn, if the defendant meets this burden, the burden [of production] shifts back to the plaintiff to show that the defendant's asserted nondiscriminatory reason is mere pretext for discrimination." *Id.* Here, the parties agree that Bless's dismissal counts as an adverse employment action, but dispute the remaining elements.[14]

### 1.    Background Circumstances and Pretext

The Seventh Circuit first adopted the "background circumstances" approach in *Mills v. Health Care Service Corp.* There, the Court reasoned that because the plaintiff was a white male, he "clearly does not satisfy prong one" of the *McDonnell*

---

[14]    The Seventh Circuit has held that where, as here, those who evaluated the plaintiff's conduct are the same persons accused of discrimination, the legitimate-expectations element merges with the inquiry as to whether Defendants treated similarly-situated individuals differently. *See Ismail v. Brennan*, 654 F. App'x 240, 243 (7th Cir. 2016); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (stating that if "a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to establish a *prima facie* case . . ."). Accordingly, the Court will not address the legitimate-expectations requirement as an independent element of Bless's *prima facie* case.

*Douglas* burden-shifting test. 171 F.3d at 454. Still, the Court recognized that it was "well settled law that the protections of Title VII are not limited to members of historically discriminated-against groups." *Id.* Starting from the premise that "invidious discrimination against white [men] is relatively uncommon in our society," the Court modified the *McDonnell Douglas* test to require white and/or male plaintiffs to demonstrate "background circumstances" indicating that the employer had some reason or inclination to discriminate invidiously against whites or men. *Id.* at 455 (quoting *Harding v. Gray,* 9 F.3d 150, 152–53 (D.C. Cir.1993)).

On this front, Bless's main argument is that the stated reasons for his termination were pretextual, and that this satisfies the heightened requirement in *Mills.* Yet, as noted above, Defendants have advanced a number of legitimate reasons for terminating his employment, and Bless has not offered evidence from which a reasonable jury could question them.

Bless also contends that he has presented evidence of similarly-situated non-white comparators who suffered lesser forms of discipline, and that this is sufficient to show "fishy" facts. But, even assuming (without deciding) that such a comparison is sufficient under *Mills*, Bless's reliance upon these comparators is misplaced—as we shall shortly see.

In short, Bless cannot make a showing of the requisite background circumstances or "fishy" facts required to make out a *prima facie* reverse-discrimination case under the *McDonnell-Douglas* framework.

18

## 2.     Similarly-Situated Individuals

Next, Bless submits that similarly situated, non-white Sheriff's Office employees were punished less harshly for similar or more serious misconduct. "A similarly situated employee must be directly comparable to plaintiffs in all material respects." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014). That said, "precise equivalence is not required; the parties must be comparable, not clones." *See Andy Mohr Truck Ctr. v. Volvo Trucks N. Am.*, 869 F.3d 598, 604 (7th Cir. 2017) (citation omitted).

Unfortunately for Bless, the undisputed facts distinguish materially each of the non-white comparators he highlights.[15] For example, Bless points to Officers Parks and Carrey, who worked unauthorized secondary jobs but received lesser forms of discipline. Defs.' SOF ¶ 74. But there is no evidence that either officer received disability benefits at the same time they worked these jobs or took on multiple other jobs. *See id*. Similar considerations also distinguish Tamika Smith, Felicia Sparkman, and Hubert Thompson. Again, although those officers violated the secondary employment rules, none of them were accused of working while on disability leave or working in multiple jobs. Pl.'s SOAF ¶ 124–32; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ("Def.'s RSOF") ¶¶ 124–32, ECF No. 452.

---

[15]     In an attempt to support this argument, Bless invokes an Illinois appellate court opinion that considered the testimony of an investigator who reported that "in his experience, the usual discipline imposed for an officer's unauthorized secondary employment is a three-to five-day suspension." *Roman v. Cook Cty. Sheriff's Merit Bd.*, 17 N.E.3d 130, 170 (Ill. App. Ct. 2014). Because Bless failed to include that testimony in his Rule 56.1 statement or explain how the Court could consider such statements as admissible testimony in this case, it is not properly before this Court.

Those distinctions matter. First, when an officer receiving total disability benefits takes on a second job, it usually signals that he is either overstating his injuries or disobeying his doctors' orders and, thus, prolonging the recovery necessary to return to work. Either way, an employer may rationally conclude that greater discipline is necessary. Second, neglecting to secure approval for two jobs, rather than one, naturally warrants heightened sanctions. In light of these "confounding variables," Parks, Carrey, Smith, Sparkman, and Thompson are not comparable to Bless. *See Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007).

In a parting shot, Bless invokes Dion Trotter, a black officer who contributed to Dart's political campaigns.[16] Pl.'s SOAF ¶ 123. When Trotter returned from disability leave, he was placed in his previous assignment, *id.,* while Bless was directed to work a different shift in a different district, *id.* ¶ 121. Although Bless does not spell out his argument on this point, he seems to suggest that Trotter received better treatment because of his race. But nothing in the record indicates that Trotter was found to have violated any Sheriff's Office policies. *Id.* ¶ 123. Thus, Trotter is not a comparable employee.

The result is that Bless has not established that any similarly-situated officer was treated more favorably. As such, he cannot support a *prima facie* case under the *McDonnell-Douglas* framework.

### 3. The Evidence as a Whole

---

[16] Bless also mentions Antonio McDonald, but provides no evidence of McDonald's comparable conduct. *Id.* ¶ 128.

Even when considered as a whole, the record is devoid of facts from which a reasonable jury could find that Bless's dismissal was motivated by race. *See Ortiz*, 834 F.3d at 765. First, Bless puts forward no direct evidence of reverse race discrimination. Nor has he highlighted any comparators that provide indirect evidence to support his claim. And, for the reasons set forth in the Court's analysis of the First Amendment retaliation claim, Bless also has failed to invoke any evidence that Defendants' justifications for his discharge were dishonest.

The fact that the Merit Board's determination that Bless had lied to investigators was erroneous, as found in the accompanying order, does not change this conclusion. Nothing in the record suggests that the Board's finding on that issue was anything other than a good faith mistake. *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."). In fact, the Board's error seems to spring from a misreading of Bless's statement to investigators, rather than a calculated choice fueled by animus. *See* 8/3/2020 Order, ECF No. 467.

What is more, even if that mistake betrayed bad faith, that alone would not save Bless's race discrimination claim. To survive summary judgment, it is not enough to show that "the employer's proffered nondiscriminatory reason is a lie." *Hobbs v. City of Chi.*, 573 F.3d 454, 462 (7th Cir. 2009). Rather, the employee also needs to establish that "the real reason is based on discriminatory intent." *Id*. For

21

the reasons explained, Bless has not done so, and the individual Defendants are entitled to summary judgment as to Bless's reverse race discrimination claims.

## C.  Section 1983 *Monell* Liability for Municipal Defendants

Bless also seeks *Monell* liability on his § 1983 claims against Defendants Cook County, the Cook County Sheriff's Office, and Sheriff Thomas Dart in his official capacity.  But because Bless has failed to establish a triable issue of fact against any of the individual Defendants as to either his First Amendment retaliation or reverse discrimination claims, he has "no viable *Monell* claim based on the same allegations."[17] *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018) ("[A] municipality cannot be liable under *Monell* where there is no underlying constitutional violation by a municipal employee.") (citing *Sallenger v. City of Springfield,* 630 F.3d 499, 504 (7th Cir. 2010)). Accordingly, Defendants' motion for summary judgment on Bless's § 1983 claims against Cook County, the Cook County Sheriff's Office, and Sheriff Thomas Dart in his official capacity also is granted.

---

[17]     The Court recognizes that a municipality may be liable if its "officers were acquitted based on a defense of good faith, because there is still an argument that the city's policies caused the harm." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012).  As Defendants do not raise a good faith defense in their summary judgment motion, that exception is not at issue here.

### IV.   <u>Conclusion</u>

For the reasons stated above, Defendants' motion for summary judgment is granted.

**IT IS SO ORDERED**          **ENTER:** 8/3/20

_____
**JOHN Z. LEE**
**United States District Judge**

23