IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT BLESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 4271 |
| | ) |
| COOK COUNTY SHERIFF'S OFFICE; | ) Judge John Z. Lee |
| TOM DART in his official and individual | ) |
| capacity; DEWAYNE HOLBROOK; | ) |
| JOSEPH WAYS, SR.; ZELDA WITTLER; | ) |
| SHERYL COLLINS; EDWARD DYNER; | ) |
| HENRY HEMPHILL; ROSEMARIE | ) |
| NOLAN; COOK COUNTY SHERIFF'S | ) |
| MERIT COMMISSION; COOK COUNTY, | ) |
| a unit of local government, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In 2013, the Cook County Sheriff's Merit Commission ("Merit Board") issued an administrative decision directing the Cook County Sheriff's Office ("Sheriff's Office") to terminate Police Officer Robert Bless. Invoking Illinois's Administrative Review Law, 735 Ill. Comp. Stat. 5/3-102, Bless asks the Court to vacate that decision and order the Sheriff's Office to reinstate him. For the reasons below, Bless's motion is granted in part and denied in part.[1]

---

[1] Bless also has filed claims under 18 U.S.C. §1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the Cook County Sheriff's Office and numerous individual defendants, alleging race discrimination and First Amendment retaliation. Accordingly, the Court has supplemental jurisdiction over this state law claim. Defendants have moved for summary judgment as to these claims, and the motion is granted for the reasons discussed in the accompanying order.

## I. Background

### A. Factual Background

Bless served as a police officer with the Sheriff's Office until the Merit Board voted to fire him on May 6, 2013. R.² at 24–28. During the last few years of his employment with the Sheriff's Office, Bless also worked secondary employment as a lawyer and as a McHenry County Board Commissioner. *Id.* at 488, 496–97.

In September 2008, Bless suffered serious injuries as a result of a car accident that occurred while he was on duty. *Id.* at 435, 512–15. At the time, Bless was placed on injured on-duty status and granted temporary disability benefits. *Id.* For the next two years, Bless collected those benefits; at the same time, he continued to work as a lawyer and Commissioner. *Id.* at 489–98.

Under the Sheriff's Office's rules, an employee may only work other jobs if he or she submits a secondary employment request form and receives authorization. *Id.* at 1083–91. Bless claims that he properly submitted secondary employment forms for both his law practice and his role with McHenry County. *Id.* at 499, 507–08. Defendants dispute this, asserting that Bless had not submitted any requests from early 2009 through late 2010. *Id.* at 498–500, 509, 511, 560–61.

For that reason, the Office of Professional Review ("OPR"), a division of the Sheriff's Office, brought administrative charges against Bless in May 2011. *Id.* at 692–93. Following an investigation, the Sheriff's Office filed formal charges before

---

² For convenience's sake, the Court cites to the Administrative Review Record, filed as ECF Nos. 26–29, as "R." followed by the relevant page numbers.

the Merit Board in October 2011. *Id.* at 18–23. In its complaint, the Sheriff's Office accused Bless of driving without first obtaining authorization from his physician, engaging in unapproved secondary employment, and lying to investigators. *Id.*

**B.     The Merit Board's Decision**

After holding a three-day evidentiary hearing that featured testimony from ten witnesses, the Merit Board issued a written decision on May 6, 2013. R. at 24–28. Among other factual findings, the Board concluded that:

- "[Bless] was classified as injury duty status. . . .; [s]uch status precluded [him] from driving. . . . ; [and] he was in fact driving . . . in violation of his classification." *Id.* at 26.

- "[Neither] Respondent's Department nor designee gave authorization to the Respondent to engage in secondary employment in 2009 through and including November 23, 2010." *Id.* at 27.

- "[T]he Respondent made an inaccurate and false statement when [he told investigators] that he did submit a secondary employment [form] each year for Bless & Associates [his law firm]." *Id.* at 26 (internal quotation marks omitted).

Based on those findings, the Merit Board ordered the Sheriff's Office to terminate Bless. *Id.* at 27. In reaching that result, the Board emphasized that "the egregiousness of Respondent's acts set[ ] this matter apart from others." *Id.* "The evidence clearly demonstrates that the Respondent lied," the Board explained, "so [as] to continue looting Cook County taxpayers by continuing to receive temporary disability checks." *Id.* "This Respondent was sworn to uphold the public trust of not just the taxpayers of Cook County," the Board continued, "but also the public trust of the taxpayers of McHenry County." *Id.* Shortly after the Merit Board released its decision, Bless filed suit in this Court.

3

## II.    Legal Standard

Illinois's Administrative Review Law governs this claim and empowers courts to review agency decisions. *See* 735 Ill. Comp. Stat. 5/3-110. In doing so, courts must take agencies' factual findings as "prima facie true and correct" and refrain from reweighing the evidence. *Id.*; *see Launis v. Bd. of Fire & Police Comm'rs*, 603 N.E.2d 477, 481 (Ill. 1992). "Rather, review is limited to determining whether findings of fact are against the manifest weight of the evidence, and if not, whether those findings supported the administrative decision." *Wright v. Vill. of Franklin Park*, No. 05 C 3696, 2008 WL 820560, at *8 (N.D. Ill. Mar. 25, 2008) (citing *Launis*, 603 N.E.2d at 484).

Still, the deference owed to an agency's decision is not "boundless." *Kouzoukas v. Ret. Bd. of the Policemen's Annuity & Benefit Fund*, 917 N.E.2d 999, 1011 (Ill. 2009) (citation omitted). "Although a decision may be supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence, the finding is against the manifest weight." *McRay v. Ross*, No. 17 C 01588, 2018 WL 2432164, at *3 (N.D. Ill. May 30, 2018) (citing *Bowlin v. Murphrysboro Firefighters Pension Bd. of Trs.*, 857 N.E.2d 777, 782 (Ill. App. Ct. 2006)). That means that review "cannot amount to a rubber stamp of proceedings below." *Bowlin*, 857 N.E.2d at 782.

In reviewing "an administrative agency's decision to discharge an employee," courts follow "a two-step process." *Marzano v. Cook Cty. Sheriff's Merit Board*, 920 N.E.2d 1205, 1208 (Ill. App. Ct. 2009). At the first step, courts ask whether an

4

agency's "findings of fact are contrary to the manifest weight of the evidence." *Walker v. Dart*, 30 N.E.3d 426, 435 (Ill. App. Ct. 2015) (citation omitted). At the second step, courts analyze whether those "findings of fact provide a sufficient basis for [the agency's] conclusion that cause for discharge exists." *Id.*

### III. <u>Analysis</u>

The threshold question is whether this Court retains jurisdiction to hear Bless's administrative review claim. In the accompanying order, the Court granted summary judgment in Defendants' favor as to Bless's federal claims. *See* 8/3/2020 Order, ECF No. 466. When "all federal claims have been dismissed prior to trial," the Seventh Circuit has held that "the usual practice is to dismiss . . . state supplemental claims." *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999). One exception is when "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Sharp Electronics Corp.* v. *Metropolitan Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (citation omitted).

That exception applies here. Under Illinois law, courts may only consider an administrative review claim if it is filed within thirty-five days of an agency's decision. *See* 735 Ill. Comp. Stat. 5/3-103. But Bless lodged his claim here, rather than in state court. And, because Illinois courts reject equitable tolling in this context, Bless's filing of the claim in federal court within thirty-five days would not toll the limitations period. *See Van Milligen v. Dep't of Emp't* Sec., 868 N.E.2d 1083, 1093 (Ill. App. Ct. 2007); *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (in deciding questions of supplemental jurisdiction, federal courts should consider

5

whether a state court would apply "a rule of tolling"). Given that an Illinois court would likely refuse to hear Bless's administrative review claim, the Court exercises its discretion to retain supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(a). With that, the Court turns to the merits.

Bless argues that the Court should set aside the Merit Board's decision for three reasons.[3] First, the Board's decision is too vague to permit proper review; second, each of the Board's factual findings contradict the manifest weight of the evidence; third, even if the Board's findings were accurate, those findings would not justify discharge.

**A.     Vagueness**

At the outset, Bless casts the Board's decision as so vague as to preclude meaningful review. An agency must provide "in writing, a reasoned explanation for its decision in [each] case, complete with findings and conclusions." *Medina Nursing Ctr., Inc. v. Health Facilities & Servs. Review Bd.*, 992 N.E.2d 616, 621 (Ill. App. Ct. 2013). In doing so, the agency must "adequately articulate the bases of their action, showing a rational connection between the facts found and the choice made." *Id.* at 620.

---

[3]     Bless also suggests that the Merit Board was biased against him because some of its members were political supporters of Sheriff Dart, a Democrat. Mot. Admin. Rev. at 9–10, ECF No. 434. But "[a] party must raise a claim of bias by the administrative agency soon after learning of it because it would be improper to allow a party to withhold a claim of bias until it obtained an unfavorable ruling." *Royal Towing, Inc. v. City of Harvey*, No. 03 C 4925, 2005 WL 1563198, at *4 (N.D. Ill. June 24, 2005) (citing *A.R.F. Landfill, Inc. v. Pollution Control Bd.*, 528 N.E.2d 390, 394 (Ill. App. Ct. 1988)). Seeing no reason for Bless's delay, the Court concludes that he has waived this argument.

To the extent that Bless casts the Board's entire decision as vague, that objection is unsubstantiated. While brief, the four-page opinion summarizes the evidence presented, arrives at factual findings, and links those findings with legal conclusions. And, contrary to Bless's suggestion, the Board had no obligation to discuss each exhibit entered and witness tendered. What matters is that the decision is sufficiently detailed for a court to "conduct a meaningful review of the issues." *Roman v. Cook Cty. Sheriff's Merit Bd.*, 17 N.E.3d 130, 156 (Ill. App. Ct. 2014). Read as a whole, the Board's opinion clears that hurdle.

This result accords with *Roman*, the case upon which Bless relies. In *Roman*, a court chastised the Board for "fail[ing] to provide *any* analysis or explanation whatsoever in its initial decisions." *Id.* at 156 (emphasis added). Here, by contrast, the Board outlined the evidentiary basis for its findings and the legal conclusions they support. Taken as a whole, the Board's decision is not so vague that this Court cannot review it.

**B.     Factual Findings**

When reviewing an administrative decision under Illinois law, the first step is to decide whether the agency's "findings of fact are contrary to the manifest weight of the evidence." *Walker*, 30 N.E.3d at 435. In essence, the Board's decision boils down to four factual determinations: (1) Bless drove a car when his injury status precluded him from doing so, (2) Bless worked several second jobs without prior authorization, (3) Bless lied to investigators, and (4) Bless flouted a series of other rules. *See* R. at 26–27.

7

### 1. Driving Restriction

First, the Board found that Bless's "duty injury status . . . prevented him from driving" between September 2008 and November 2010, and that he did so anyway. R. at 26. The parties agree that Bless began driving in February 2009, *id*. at 467–69, but disagree as to whether his leave status prevented him from doing so.

During the evidentiary hearing, Rosemarie Nolan, the Sheriff's Office's personnel director, testified that Bless's "injured on duty status" included a driving restriction. *Id*. at 426–27. Similarly, in an April 2009 memorandum, Nolan wrote that Bless "had a driving restriction documented and on file with the Risk Management Office." *Id*. at 1043. Although Nolan later admitted that she never saw that file herself, she clarified that a contact in Risk Management told her about its contents.[4] *Id*. at 438.

The Board also heard evidence from medical professionals who treated Bless. Doctor Salehi, who examined Bless on behalf of Risk Management, stated that he warned Bless against driving during a November 2008 appointment. *Id*. at 611. And in early 2009, Salehi again cautioned Bless not to drive until a physical therapist or doctor determined that his range of motion had returned. *Id*. at 614–15. For the first few months of that year, a physical therapist named Chris Wallace worked with

---

[4] Bless failed to raise any evidentiary objections to Nolan's testimony about the contents of the file before the Merit Board. Nor does he advance any such arguments here. Thus, any such objections are deemed waived. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (noting that "perfunctory and undeveloped arguments . . . are waived").

Bless. *Id*. at 358–61. Although Bless exhibited some improvement in his range of motion, Wallace never told him "when he could drive or should start to drive," because he preferred to leave that decision to Bless's doctors. *Id*. at 360–61.

Based on this record, the Court cannot say that the Merit Board clearly erred in finding that Bless drove in violation of his duty status. Bless did testify that his driving had not been restricted in February 2009. *Id*. at 587–88. But, considering Nolan, Salehi, and Wallace's testimony, the Merit Board could reasonably have disbelieved Bless. That Salehi later reviewed a video of Bless driving in early 2009 and opined that it was safe for him to do so makes little difference. *Id*. at 620. The question is not whether Bless had the ability to drive. Rather, the question is whether he violated his duty status by doing so. Given Nolan's testimony that Bless's file included such a restriction, and given that none of his healthcare providers lifted that restriction before February 2009, the Board's conclusion is not contrary to the manifest weight of the evidence. Accordingly, this finding against Bless is sustained.

### 2. Secondary Employment

The Board also found that Bless had engaged in secondary employment without obtaining authorization from the Sheriff's Office.[5] R. at 26–27. At the time, the Office's rules required employees to secure permission to work secondary jobs. *Id.* at 209–10. Moreover, these rules put the onus on police officers to obtain approval

---

[5] More specifically, the Board concluded that Bless disobeyed the "Secondary Employment" and "Knowledge of Rules, Orders, Procedures, and Bulletins" general orders. R. at 25; *see also id*. at 20–22 (listing the relevant sections of the rules). Although Bless casts those conclusions as vague, that is incorrect. As discussed in the paragraphs that follow, the Board adequately explained its conclusion that Bless had violated the cited rules.

9

before accepting or starting another job. *Id.* at 209–10, 246; *see also id.* at 412–413 ("Q: Is it [employees'] responsibility to ensure that approval is obtained before they start working? [Nolan]: Yes").

According to Nolan, the personnel department maintains a database that "identifies all of the employees in the Sheriff's Office that have submitted a secondary employment form to their department head that has been forwarded on to us." *Id.* at 411. When the Office started to investigate Bless, Nolan searched the database for secondary request forms. *Id.* at 415. But she says that she discovered no requests from Bless—approved or unapproved—for the relevant time period. *Id.* 420. Based on that testimony, the Board concluded that Bless had failed to obtain approval to work as a lawyer and elected official from early 2009 until late 2010. *Id.* at 26–27.

In challenging that determination, Bless points to evidence that he had submitted a request for that period. For example, he cites the testimony of three patrol officers and a sergeant who recalled that Bless had filed a request form in early 2009. *Id.* at 370–66, 378–82, 386–93, 590–91. Additionally, Bless complains that he "was never informed that his ability to engage in secondary employment was not approved." Mot. Admin. Rev. at 18. That misses the point. The rules make employees responsible for securing approval before starting a second job, not just for submitting a request. R. at 209–10. And, as Bless admitted to the Board, he "never received approval" for his work as a lawyer and Commissioner during 2009. *Id.* 560–61. That is enough to support the Board's factual finding.

10

Equally unavailing is Bless's argument that the Board should have disregarded Nolan's testimony entirely.[6] During the trial, Nolan stated that Bless had no secondary employment requests on file from before 2008; this was incorrect. *Id.* at 429, *see id.* at 814–39. But that error does not necessarily discredit Nolan's other testimony; after all, her review was focused on whether Bless's file contained request forms for 2009 and 2010. What is more, "it is not the function of [a reviewing] court to reevaluate witness credibility." *Nwaokocha v. Ill. Dep't of Fin. & Prof'l Regulation*, 105 N.E.3d 16, 30 (Ill. App. Ct. 2018) (citation omitted). And that is especially true here, where nothing in the record indicates that anyone in the Sheriff's Office approved Bless's requests for secondary employment in 2009 or 2010.

The Board did not clearly err in concluding that Bless disobeyed the Office's secondary employment rules, and Bless's objections to this finding are rejected.

### 3. Statement to Investigators

Next, the Board found that Bless had lied in a written statement to OPR investigators regarding his work as an attorney by falsely stating that "he had a secondary employment request *on file*." *Id.* at 27 (emphasis added).[7] R. at 26–27. But that is not exactly what Bless wrote in his statement. Rather, as the Board

---

[6] Bless also attempts to discredit Nolan's testimony by referring to information not contained in the administrative record, including her deposition in this case. But the Board could only consider the evidence before it, and the Court's review is confined to the administrative record. *See* 735 Ill. Comp. Stat. 5/3-110.

[7] Specifically, the Board determined that Bless's allegedly false statement violated a rule providing that "no member of the Department will make false official record(s), reports or report any inaccurate, false or improper information." R. at 26.

11

acknowledges elsewhere in its decision, Bless actually told investigators that "he did *submit* a secondary employment application each year for [his law firm]." *Id.* at 699–700 (emphasis added). The question then is whether the Board clearly erred in finding that Bless had lied when he said that he had submitted a secondary employment form for his legal practice. *Id.* at 26.

To reach that conclusion, the Board relied on the testimony of Nolan, the personnel director, and Henry Hemphill, an OPR investigator. *Id.* at 26. As noted, Nolan attested that the Office did not have any secondary employment request forms on file for Bless for 2009 or 2010. *Id.* 409–39. Likewise, Hemphill testified that he had asked several employees at the Sheriff's Office to check whether Bless had any requests on file for that period. *Id.* at 449–50. When that search failed to turn up any request forms, Hemphill decided that Bless's statement that he had submitted such a request in 2009 was a lie. *Id.* 452, 455.

But the Board heard other evidence that undermines Hemphill's hypothesis. Most important, Sergeant Larry King said that he met with Bless at a Dunkin' Donuts in late 2008 or early 2009. *Id.* at 570. During that meeting, King says, Bless handed him a secondary employment request form for his legal work. *Id.* According to King, he forwarded those forms up the chain of command, just as the Office's policies required. *Id.* at 571–72. "I surrendered the forms to the Lieutenant," King explained, "and then I believe either he put them in the admin box or they got turned in with the paper." *Id.* at 572. The record is silent as to what happened to the forms after that.

12

Three other officers were present at the Dunkin' Donuts and corroborated King's account. Officer Francisco Ruiz stated that, in early 2009, he had witnessed Bless hand King a secondary employment request form. *Id.* at 388–89. Officer Christopher Garcia represented that, although he did not see the form itself, he had heard Bless tell King that "he was turning in his secondary employment form." *Id.* 373–74. And Officer Jose Del Valle testified to hearing the same statement. *Id.* at 381–82.

The Court is mindful that the Merit Board's determinations deserve "the benefit of the doubt." *Coyne v. Milan Police Pension Bd.,* 807 N.E.2d 1276, 1285 (Ill. App. Ct. 2004). Still, the manifest weight of the evidence contradicts the Board's conclusion that Bless had lied when he said that he submitted a request form in 2009. *See Royal Towing*, 2005 WL 1563198, at *5 (emphasizing that "the manifest weight standard is not a mere stamp of approval for agency decisions") (citation omitted). Here, four other police officers corroborated Bless's story that he had submitted an authorization form in early 2009.

This is not a case where the Board faced a choice between conflicting evidence. *See Launius*, 603 N.E.2d at 481 (warning that "it is not the court's function to resolve factual inconsistencies"). Notably, Nolan's assertion that Bless's personnel file had contained no relevant request forms is not inconsistent with the officers' testimony. As Nolan acknowledged, each form must pass through six different supervisors before it arrives at the personnel office. R. at 432. Although supervisors were told to forward files to Nolan's office, there was no system in place to make sure that happened. *Id.*

13

at 432. Thus, the most plausible reading of the record is that Bless had submitted a request form in 2009, but it was misplaced before it reached his personnel file. The Board failed to consider that possibility, let alone explain why it was rejected. *See Coyne*, 807 N.E.2d at 1285 (noting that, while the Board's "prerogative undoubtedly includes making credibility determinations," it "must articulate the findings underlying [those] choice[s] to facilitate meaningful review"). Because the finding that Bless lied to investigators contradicts the manifest weight of the evidence, that aspect of the Board's decision is vacated.

Furthermore, as Bless points out, the decision suggests that the Board may have believed that Bless had engaged in other deliberate conduct to conceal his secondary employment. For example, the Board faulted Bless for "looting Court County taxpayers" and described his conduct as "extremely egregious." *Id*. at 27. That language can be interpreted in two ways. One reading is that it follows from the Board's conclusion that Bless had lied to OPR investigators. Another reading is that the Board understood Bless to have engaged in other acts of concealment. If so, such a finding also must be vacated, because the Board failed to specify those acts or articulate how the record supports them. *See Medina*, 992 N.E.2d at 621 (recognizing that an agency must provide "a reasoned explanation for its decision"). On remand, the Board should clarify whether it determined that Bless practiced other forms of deliberate concealment, and if so, should explain that conclusion.

14

#### 4. Other Rule Violations

Aside from the factual findings discussed above, the Board also concluded that that Bless disobeyed the Office's general orders related to (1) "Absence Due to Injuries Received While on Duty," (2) "Conduct Regarding the Performance of Duty," and (3) "Standard of Conduct." R. at 25; *see also id*. at 20–22 (listing the relevant sections of the rules). But the Board does not explain why it decided that Bless broke those rules. Indeed, even after reviewing the Board's decision, the Court is left to guess the factual support for these conclusions. *See Medina*, 922 N.E.2d at 620 (requiring "a rational connection" between factual findings and an agency's choices). Accordingly, the Court vacates the Board's determination that Bless had violated the enumerated rules. To the extent that those rules factor into the Board's decision on remand, the Board should articulate what led it to believe that Bless had violated them.

### C. Discharge Decision

"[When] an important pillar of the Board's discharge decision [is] vacated, the next question is whether the affirmed findings provide 'cause' for the firing." *McRay*, 2018 WL 2432164, at *10; *see Walker*, 30 N.E.3d at 435 (asking whether an agency's "findings of fact provide a sufficient basis for [its] conclusion that cause for discharge exists"). In voting to dismiss Bless, the Board placed great weight on its determination that he had made a false statement to the investigators. Indeed, the Board described Bless's alleged lie as "extremely troubling" and found that it contributed to a "malicious[ ] breach of the public trust." *Id*. at 26–27. Given that

15

the Board's discharge decision depended in large part on its finding that Bless had lied, that decision must be revisited.

Under the Act, a reviewing court may "reverse and remand [an agency's] decision in whole or in part, and, in that case, . . . state the questions requiring further hearing or proceedings." 735 Ill. Comp. Stat 5/3-111(a)(6). Furthermore, because "[t]he Merit Board, not the reviewing court, is in the best position to determine the effect of an employee's conduct," that approach is appropriate here. *Lopez v. Dart*, 118 N.E.3d 580, 598 (Ill. App. Ct. 2019). Therefore, the Court remands this case to the Board for it to decide whether the vacatur of the false-statement finding alters its conclusion that discharge is warranted. *See, e.g.*, *McRay*, 2018 WL 2432164, *10 ("[R]ather than deciding in the first instance . . . the Court will exercise its discretion under the Illinois Administrative Review Act and remand to the Board.").

In doing so, the Board should keep in mind that the "[Illinois] Supreme Court has discussed a special need for uniformity or consistency in sanctions in disciplinary proceedings." *Siddiqui v. Ill. Dep't of Prof'l Regulation*, 718 N.E.3d 217, 228 (Ill. App. Ct. 1999) (citing *In re Wigoda*, 395 N.E.2d 571, 575 (Ill. 1979)). In deciding to discharge Bless, the Board declined to consider "other respondents' disciplinary results." R. at 27. Perhaps the Board will permit Bless to introduce those disciplinary records on remand. Or perhaps not. Either way, it should explain that choice in a way that enables a court to "conduct a meaningful review." *Roman*, 17 N.E.3d at 156; *see also Royal Towing*, 2005 WL 1563198, at *6 (noting that a court must be able to "discern from *the record* why the Board disregarded . . . evidence").

16

## IV. Conclusion

For the reasons above, Plaintiff's administrative review claim is granted in part and denied in part. The Merit Board's finding that Bless had lied to the investigators is not supported by the manifest weight of the evidence and is vacated. Furthermore, because the finding was material to the Board's conclusion that Bless be terminated, the matter is remanded to the Board.

**IT IS SO ORDERED.**  ENTERED 8/3/20

_/s/ John Z. Lee_

**John Z. Lee**
**United States District Judge**