In the
# United States Court of Appeals
### For the Seventh Circuit



CERTIFIED COPY

No. 20-2733

ROBERT BLESS,

*Plaintiff-Appellant,*

v.

COOK COUNTY SHERIFF'S OFFICE *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-c-4271 — **John Z. Lee**, *Judge.*

_____

ARGUED MAY 11, 2021 — DECIDED AUGUST 17, 2021

_____

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Robert Bless, a police officer for the Cook County Sheriff's Office, was fired after an internal review board determined that he had violated office policies and then lied to investigators about his misconduct. Bless sued his employer, alleging race discrimination and political retaliation against him as a white Republican. The district court granted summary judgment in favor of Defendants

Case: 1:13-cv-04271 Document #: 480 Filed: 09/08/21 Page 2 of 15 PageID #:22843
Case: 20-2733     Document: 00713873850     Filed: 09/08/2021     Pages: 15

2                                                                    No. 20-2733

because Bless failed to carry his burden of proof under either theory. We affirm the district court's decision.

## I. BACKGROUND

Robert Bless was employed by the Cook County Sheriff's Office from 1996 to 2013. In 2004, Bless earned his law degree and began practicing law in addition to working as a police officer. The Sheriff's Office requires its employees to request and receive authorization before engaging in secondary employment. From 2004 through 2008, Bless duly submitted the required forms and received approval.

In September 2008, Bless was involved in a head-on collision in his squad car while on duty. He sustained injuries to his neck and right shoulder. After the accident, he was placed on disability leave and began receiving temporary disability benefits because he was unable to return to work as a police officer.

Shortly after the accident, Bless ran as a Republican for a McHenry County Commissioner seat. He won the election in November 2008 and began serving in that role in addition to working as an attorney and collecting disability payments from the Sheriff's Office. The parties dispute whether Bless submitted secondary employment requests for both jobs while on disability leave, but it is undisputed that he did not receive approval until November 2010, after he was medically cleared and returned to work as a police officer.

Soon after his return, Bless was transferred from his previous north-side day shift in Rolling Meadows (close to his home) to a less desirable south-side night shift. In February 2011, he was transferred back to Rolling Meadows.

Meanwhile, in early 2009, the Cook County Department of Risk Management began investigating Bless's activities while on disability leave. It discovered that Bless was driving his car to work as an attorney and County Commissioner even though he was classified as "Injured on Duty" ("IOD") and had a driving restriction on file. Risk Management notified the Sheriff's Office, and the internal Office of Professional Review ("OPR") began its own investigation.

OPR determined that the Sheriff's Office had no records of secondary employment requests (or approvals) for Bless from January 31, 2009, to December 9, 2010. In an interview with OPR, Bless told the investigators that he had submitted request forms during that time. OPR concluded that he was lying.

OPR brought administrative charges against Bless in May 2011 and, in October, filed a complaint with the Merit Board. The complaint alleged that Bless had been driving while on IOD status and working two other jobs without authorization from the Sheriff's Office. It also alleged that he had falsely reported to OPR investigators that he had secondary employment requests on file.

As it happens, around this same time, the Cook County Sheriff's Office was released from a consent decree governing its hiring practices. Thomas Dart, running as a Democrat, was elected Cook County Sheriff in December 2006. Two years later, under the various consent decrees, the district court appointed a federal monitor to review political considerations in the Sheriff's Office's employment practices. In January 2011, the court released the Sheriff's Office from the decrees after finding that it was in "substantial compliance." *Shakman v. Democratic Org. of Cook Cnty.*, No. 69-cv-2145, ECF No. 1984.

Between November 2012 and January 2013, the Merit Board heard evidence on the charges against Bless. In May 2013, the Board issued its decision. It found that Bless had engaged in unauthorized secondary employment, violated driving restrictions, and lied to OPR investigators about submitting secondary employment requests. For those reasons, the Board directed the Sheriff's Office to fire Bless. It did.

After his termination, Bless filed this lawsuit against the Sheriff's Office, Sheriff Dart, and other county employees, alleging political retaliation under 42 U.S.C. § 1983 and race discrimination under § 1983 and Title VII, 42 U.S.C. §§ 2000e, *et seq*.[1]

During discovery, Bless sent interrogatories to Sheriff Dart and sought to compel his deposition. Dart responded to the interrogatories and moved to quash the deposition. The magistrate judge denied Bless's motion and granted Dart's motion, and the district court overruled Bless's objections to the magistrate judge's order.

Defendants then moved for summary judgment, which the district court granted as to both the political retaliation and race discrimination claims. Bless now appeals that decision, in addition to the district court's order denying his attempt to depose Sheriff Dart.

## II. ANALYSIS

This appeal boils down to two issues: (1) was Bless entitled to depose Sheriff Dart, and (2) were Defendants entitled to

---

[1] Bless also requested administrative review of the Merit Board decision under state law. 735 ILCS 5/3-102. That claim was dealt with separately and is not before us in this appeal.

No. 20-2733 5

summary judgment on Bless's discrimination and retaliation claims. The answers are no and yes, respectively.

*A. Deposing Sheriff Dart*

District courts may limit discovery "to protect a … person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1). We will overturn a district court's discovery determination only if it abused its discretion. *Stagman v. Ryan*, 176 F.3d 986, 993–94 (7th Cir. 1999).

A party generally has the right to depose witnesses during discovery. Fed. R. Civ. P. 30(a). But "depositions of public officials create unique concerns." *Stagman*, 176 F.3d at 994–95. Thus, public officials, even those named in a lawsuit, need not "giv[e] depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Olivieri v. Rodriguez*, 122 F.3d 406, 409–10 (7th Cir. 1997). The district court found no reason to believe so here.

The court determined that Bless failed to provide "a sufficient reason to believe that a deposition of Dart would create or lead to unique, admissible evidence" or "explain[] why the discovery tools that were available to him (and which he declined to use) were an insufficient means of developing the evidence he sought." That was not an abuse of discretion.

There is no dispute that Sheriff Dart was not involved in the OPR investigation of Bless or the Merit Board proceedings reviewing Bless's actions. And all that could be elicited from Sheriff Dart's deposition was information about one conversation with Bless at an event. Although Bless alleges that he

Case: 1:13-cv-04271 Document #: 480 Filed: 09/08/21 Page 6 of 15 PageID #:22847
Case: 20-2733      Document: 00713873850      Filed: 09/08/2021      Pages: 15

6     No. 20-2733

told Sheriff Dart about his 2008 accident, his positions as an attorney and County Commissioner, and his affiliation with the Republican Party, Sheriff Dart responded to Bless's interrogatories that he has "no recollection" of these events. It is hard to see what more could be gained from a deposition, and the court did not abuse its discretion in refusing to compel a deposition when "a written interrogatory would do just as well." *Olivieri*, 122 F.3d at 410; *see also Stagman*, 176 F.3d at 994 ("We do not conclude that the district court abused its discretion when, considering the evidence before it at that time, it determined that deposing [the Illinois Attorney General] would serve no useful purpose.").

We therefore conclude that the district court did not abuse its discretion in denying Bless's attempt to depose Sheriff Dart.

*B. Summary Judgment on Bless's Claims*

"We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to [Bless] and construing all reasonable inferences from the evidence in his favor." *Yahnke v. Kane County*, 823 F.3d 1066, 1070 (7th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Summary judgment is appropriate when the admissible evidence shows that there is no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law." *Monroe v. Ind. Dep't of Trans.*, 871 F.3d 495, 503 (7th Cir. 2017) (quoting *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 488 (7th Cir. 2014)).

No. 20-2733                                                    7

*1. Political Retaliation*

"The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1416 (2016).

We apply a burden-shifting analysis to determine whether this First Amendment liberty has been denied. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) ("[A]t summary judgment, the burden of proof is split between the parties."). "To make out a *prima facie* claim for a violation of First Amendment rights, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was at least a motivating factor in the employer's actions." *Yahnke*, 823 F.3d at 1070. There is no dispute that Bless established the first two elements of his *prima facie* case, so we zero in on the third.[2]

Establishing the third element requires evidence of a "causal connection … show[ing] 'that the protected activity and the adverse action are not wholly unrelated.'" *Kidwell*, 679 F.3d at 966 (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). Circumstantial evidence, from which the trier of fact can infer retaliation, can satisfy a plaintiff's burden. *Greengrass v. Int'l Monetary Sys.*, 776 F.3d 481, 486 (7th Cir. 2015).

---

[2] At summary judgment, the district court assumed, without deciding, that the individual defendants could be liable for the Merit Board's decision to terminate Bless. We do the same here.

In this case, Bless relies solely on circumstantial evidence—namely, the timing of certain events—to show that his political activity was a motivating factor in the decision to terminate his employment. *See Kidwell*, 679 F.3d at 966 ("Circumstantial evidence may include suspicious timing … ."). Bless was elected to the McHenry County Board as a Republican in November 2008; he submitted secondary employment forms for his county seat to the Sheriff's Office in January 2009; Bless returned to work and submitted secondary employment forms for the county seat in November 2010; the Sheriff's Office transferred him to a night shift further from his home upon his return to work; the Sheriff's Office was released from a consent decree monitor in January 2011; and administrative charges were filed against Bless in May 2011. The implication, Bless maintains, is that the Sheriff's Office essentially demoted him after it became aware of his position as a Republican county commissioner and then initiated his removal as soon as it was free of a federal monitor's oversight.

"[F]or a suspicious-timing argument alone to give rise to an inference of causation, the plaintiff must demonstrate that 'an adverse employment action follows close on the heels of protected expression, and the plaintiff [must] show that the person who decided to impose the adverse action knew of the protected conduct.'" *Id.* (alteration in original) (quoting *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001)).

The district court was skeptical that the decisionmakers here even *knew* about Bless's political activity, much less that they were motivated by it. But even assuming that they were aware of his political activity, nothing about this timeline suggests to us that his political activity was a motivating factor in the Merit Board's decision because the adverse employment

action is too distant from the protected activity to fairly be considered "close on [its] heels." Indeed, "it is clear from our case law that the time period between the protected activity and the adverse action must be 'very close,'"—as in "no more than a few days." *Id.* (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). Given the lapse of several months between Bless's election to office and the adverse actions, this evidence—without more—is not enough to satisfy his burden under the third element.

Furthermore, "allowing such an inference would be even more inappropriate when we consider the context in which the various complained-of actions were taken." *Id.* at 967. "[W]here a 'significant intervening event separat[es]' an employee's protected activity from the adverse employment action he receives, a suspicious-timing argument will not prevail." *Id.* (alteration in original) (quoting *Davis v. Time Warner Cable of Se. Wis.*, 651 F.3d 664, 675 (7th Cir. 2011)). The context here involves Bless's actions in continuing to collect disability benefits while working two other jobs without having authorization for his secondary employment, and these actions occurred closer in time to the adverse employment action than his protected activity.

Bless also failed to present evidence rebutting the defendants' nonpolitical reasons for firing him. Even if Bless could establish a *prima facie* case, "the burden [would then] shift[] to the defendant[s] to show that the harm would have occurred anyway." *Hawkins v. Mitchell*, 756 F.3d 983, 996 n.10 (7th Cir. 2014) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251-52 (7th Cir. 2012)). And when the defendants make that showing of nonpolitical grounds for the adverse action, the burden shifts back to the plaintiff to demonstrate that the proffered grounds

Case: 1:13-cv-04271 Document #: 480 Filed: 09/08/21 Page 10 of 15 PageID #:22851
Case: 20-2733      Document: 00713873850      Filed: 09/08/2021      Pages: 15

10                                                        No. 20-2733

are "unworthy of credence 'by providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate' the employment action." *Yahnke*, 823 F.3d at 1070 (quoting *Carter v. Chi. State Univ.*, 778 F.3d 651, 659 (7th Cir. 2015)).

Here, Defendants point to several nonpolitical reasons for Bless's termination. The Merit Board found that Bless violated the Sheriff's Office's secondary employment rules, drove his car while medically restricted from doing so and on disability leave, and lied to OPR investigators.

The burden therefore would shift back to Bless to present evidence "demonstrat[ing] a material issue of fact as to pretext" for each of those proffered rationales. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). To meet this burden, he "must show that either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Id.* (citing *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001)). "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Id.* (citing *Debs v. Ne. Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998)). Bless has also failed to meet that burden.

Bless correctly points out that there is some evidence contradicting some of the Merit Board's reasons for firing him. For example, Bless's supervisors and three other officers have testified that Bless *did* submit a secondary employment request form in 2009, contrary to the Merit Board's findings. But an error alone does not show pretext. *See Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389–90 (7th Cir. 2020) ("[P]retext … is not 'just faulty reasoning or mistaken judgment on the

part of the employer; it is [a] "lie, specifically a phony reason for some action."'" (alteration in original) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008))). What's more, "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." *Hitchcock v. Angel Corps., Inc.*, 718 F.3d 733, 740 (7th Cir. 2013). Bless simply has not presented evidence that could lead a trier of fact to determine that the Merit Board's justifications for firing him were pretext for political retaliation.

For these reasons, we agree with the district court that Bless failed to meet his burden of establishing the elements of his *prima facie* retaliation case and establishing that the defendants' proffered nonpolitical reasons for firing him were pretextual.

*2. Race Discrimination*

Discrimination cases brought under § 1983 are governed by the same legal standards as those brought under Title VII. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004).

At summary judgment, the plaintiff must present evidence which, taken as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race … caused the discharge." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "[T]he protections of Title VII are not limited to members of historically discriminated-against groups." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 820 (7th Cir. 2006) (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005)). But we have modified the traditional *McDonnell-Douglas* burden-shifting framework in this context to require evidence of "background circumstances" supporting a race-

discrimination claim brought by a white plaintiff. *Id.* Thus, to make a prima facie case at summary judgment:

> [Bless] must show that (1) "background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand"; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class.

*Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (quoting *Ballance*, 424 F.3d at 617). As above, if Bless establishes the *prima facie* case, then the burden shifts to the defendants to offer a "legitimate, non-discriminatory reason for the [adverse employment] decision." *Id.* (alteration in original). And if the defendants make that showing, the burden shifts back to Bless to demonstrate that the reason is pretext for race discrimination. *Id.*

We begin and end our analysis at the first prong of the *prima facie* case: Bless failed to present evidence from which a jury could find that there were "background circumstances … show[ing] an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand." *Formella*, 817 F.3d at 511.

We have found that this prong can be satisfied by evidence that members of one race were fired and replaced by members of another race. *Hague*, 436 F.3d at 822. We have also explained that evidence that employers "are under pressure

No. 20-2733                                                                                   13

from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or corporate superiors imbued with belief in 'diversity'" may similarly satisfy this prong. *Preston v. Wis. Health Fund*, 397 F.3d 539, 542 (7th Cir. 2005) (citing *Hill v. Ross*, 183 F.3d 586 (7th Cir. 1999)). We have also suggested that "[a] gross disparity in qualifications might be such evidence." *Id.*

But Bless has failed to satisfy his burden under this prong. Bless points out that several people involved in his firing, including Sheriff's Office investigators Henry Hemphill and Sheryl Collins and officers Dwayne Holbrook and Zelda Whittler, are outside of his protected class. But those are not the only relevant actors. Other actors who were heavily involved in the investigation are of the same race, including Rosemarie Nolan, the Personnel Director, and Joseph Ways, the Executive Director of OPR. This makeup of individuals does not suggest that there was racial motivation in the investigation.

Bless also presents potential comparators—nonwhite employees who were purportedly treated better than Bless—to make this showing. But the circumstances involving these employees differ from Bless's situation and do not suggest anything "fishy" about the Sheriff's Office's disciplinary practices, much less any "reason or inclination to discriminate invidiously against whites." *Formella*, 817 F.3d at 511.

Although "precise equivalence is not required" in a comparator, *Andy Mohr Truck Ctr. v. Volvo Trucks N. Am.*, 869 F.3d 598, 604 (7th Cir. 2017), "[a] similarly situated employee must be 'directly comparable' to plaintiffs 'in all material respects.'" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th

Cir. 2014) (quoting *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 810 (7th Cir. 2011)).

Hubert Thompson, who is African American, was found to have been working one unauthorized job and lied to OPR about submitting request forms. Although he had a lengthy disciplinary history, he was not charged with giving a false statement, and OPR recommended a ten-day suspension. Notably, though, he differs in the number of secondary jobs—he worked one while Bless worked two—and in the facts that he was not collecting disability benefits at the time nor was medically restricted from driving. These are material differences when it comes to comparing their respective punishments.

The comparison to the other proffered employees is even more tenuous. Bless points to African-American individuals who, for example, violated the secondary employment rules but were not accused of working while on disability leave or working multiple jobs. Another was placed back in his previous assignment when he returned from leave, whereas Bless was transferred to a different shift in a different district, but there is no evidence that the comparator violated office policies, unlike Bless. Others worked unauthorized secondary jobs and received lesser forms of discipline than Bless—but there is no evidence that they were receiving disability benefits or worked more than one secondary job.

As it stands, there are clear differences between Bless's actions and those of the proposed comparators. Because Bless did not present evidence showing that there were background circumstances "show[ing] an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand," *Formella*, 817 F.3d at 511, he failed to

No. 20-2733                                                        15

meet his burden of establishing his *prima facie* case of race discrimination.

Even if Bless could establish the *prima facie* case, his claim fails for the additional reason that Bless failed to present evidence showing that the proffered nonracial reasons for firing him were pretextual. As explained above, the defendants' reasons for firing Bless were that he (1) violated the Sheriff's Office's rules about secondary employment; (2) regularly drove his car while medically restricted; and (3) lied to OPR investigators while making a sworn statement. Even if those conclusions were mistaken, Bless failed to present evidence that they were dishonest. *See Steward v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."). Nor is there any evidence suggesting that these reasons were otherwise a pretext for racial discrimination. *See Hitchcock*, 718 F.3d at 740.

Ultimately, there is no evidence from which a jury could conclude that race was a factor in the decision to fire Bless, so he failed to meet his burden of establishing the prima facie case for race discrimination. We therefore conclude that the district court did not err in granting summary judgment to the defendants on this claim.

### III. Conclusion

For the reasons above, the district court did not err in denying Bless the opportunity to depose Sheriff Dart, and Defendants are entitled to summary judgment on Bless's claims of political retaliation and race discrimination. We AFFIRM.